**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KERRY BRANSON and SHELLEY DOTSON, individually and on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>CATERPILLAR INC.,<br><br>        Defendant. | Case No. _____ |

## <u>NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(a), 1332(d), 1441, and 1446, Defendant Caterpillar Inc. ("Caterpillar") hereby removes this action from the Circuit Court of Cook County, Illinois, Chancery Division, to the United States District Court for the Northern District of Illinois, Eastern Division. Removal is proper because this Court has diversity jurisdiction and jurisdiction under the Class Action Fairness Act ("CAFA"). In support of this Notice of Removal, Caterpillar states as follows:

## I.    PROCEDURAL HISTORY

1.        On August 14, 2023, Plaintiffs Kerry Branson and Shelley Dotson ("Branson" and "Dotson" or collectively, "Plaintiffs") filed a class action complaint in the Circuit Court of Cook County, No. 2023-CH-07406, individually and on behalf of all others similarly situated, based on alleged violations of the Illinois Genetic Information Privacy Act, 410 ILCS 513 *et seq.* ("GIPA"). Caterpillar is the only named Defendant.

2.        Caterpillar was served with a copy of the summons and Complaint on September 1, 2023. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders that have been filed and served in the state court action are attached hereto as **Exhibit A**.

3.      This Notice of Removal is timely under 28 U.S.C. § 1446(b)(1) because it is filed within 30 days of the date that Caterpillar was served with the Complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

4.      Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Because this action was brought in the Circuit Court of the First Judicial Circuit, Cook County, Illinois, venue for purposes of removal is proper in this Court. Pursuant to 28 U.S.C. § 93(a)(1), this District and this Division embrace Cook County, Illinois, the place where this removed action has been pending.

5.      Written notice of the filing of this Notice of Removal is being delivered to Plaintiffs through their counsel of record. A copy of this Notice of Removal will be filed with the Clerk of the Circuit Court of Cook County, Illinois.

6.      Pursuant to 28 U.S.C. § 1332, and as explained further below, this Court has original jurisdiction over the instant action based on diversity of the parties.

## II.    ALLEGATIONS IN THE COMPLAINT

7.      Branson alleges that he submitted an employment application for full-time employment with Caterpillar, at its Decatur facility, on or around March 1, 2020. (Compl. ¶ 26.) On or around March 14, 2020, Branson further alleges that "Caterpillar directly or indirectly solicited, requested, or required Mr. Branson to disclose his family medical history as a condition of employment." (*Id*. ¶ 27.) On or around that same day, Branson also alleges that, during a pre-employment physical at the Caterpillar Decatur facility, he was asked "to prepare handwritten responses to paperwork which, among other things, asked about his medical history, including hypertension, cancer, diabetes, and cardiac issues, among other ailments. The paperwork also

asked Mr. Branson to disclose medical conditions which had manifested in his family members, including hypertension, cancer, diabetes, and cardiac issues." (*Id*. ¶ 30.) According to Branson, Caterpillar did not inform him, "either verbally or in writing, to not disclose the solicited genetic information." (*Id*. ¶ 34.)

8.     Dotson alleges that she submitted an employment application for full-time employment with Caterpillar, at its Decatur Facility, on or around May 1, 2023. (*Id*. ¶ 40.) On or around May 14, 2023, Dotson alleges that "Caterpillar directly or indirectly solicited, requested, or required Ms. Dotson to disclose her family medical history as a condition of employment." (*Id*. ¶ 41.) On or around that same day, Dotson also alleges that, during a pre-employment physical at the Caterpillar Decatur facility, she was asked "to prepare handwritten responses to paperwork which, among other things, asked about her medical history, including hypertension, cancer, diabetes, and cardiac issues, among other ailments. The paperwork also asked Ms. Dotson to disclose medical conditions which had manifested in her family members, including hypertension, cancer, diabetes, and cardiac issues." (*Id*. ¶ 44.) According to Dotson, Caterpillar did not inform her, "either verbally or in writing, to not disclose the solicited genetic information." (*Id*. ¶ 48.)

9.     As a result of allegations above (*supra*, ¶¶ 4, 5), Plaintiffs allege that Caterpillar "was or should have been aware of its obligations under GIPA" and that it "intentionally and/or recklessly captured, collected, and/or retained Plaintiffs' genetic information in the form of their family medical histories in violation of Illinois law." (*Id*. ¶ 57.) Plaintiffs allege that Caterpillar did the same with respect to the putative class members. (*Id*. ¶¶ 59-66.)

10.     Based on the above, Plaintiffs filed a complaint alleging that Caterpillar violated GIPA because it "failed to direct Plaintiffs, either verbally or in writing, to not provide genetic information when requested to provide their family medical history." (*Id*. ¶ 73.) Plaintiffs further

allege that they "and the proposed Class Members were aggrieved by [Caterpillar's] violations of their statutory protected rights to privacy in their genetic information, as set forth in GIPA, when [Caterpillar] directly or indirectly solicited or requested them to disclose their genetic information as a condition of ongoing employment or a condition of a pre-employment application." (*Id.* ¶ 74.) For these alleged violations of GIPA, Plaintiffs seek, both individually and on behalf of a putative class, $15,000 for "each" intentional and/or reckless violation and $2,500 for "each" negligent violation, as well as attorneys' fees and costs incurred in this litigation. (*Id.* ¶ 77; Prayer for Relief.) Plaintiffs also seek injunctive and equitable relief. (*Id.*)

11.　　Plaintiffs seek to represent a class of individuals, and Plaintiffs state that Caterpillar "employs *over one thousand people in Illinois*, and it is believed that all or most of those individuals will fall within the proposed Class." (*Id.* ¶ 62, emphasis added.) Plaintiffs seek to certify the following class:

> All individuals in Illinois, within five years prior to the date of class certification, (1) who applied for employment with Defendant or were employed by Defendant, and (2) from whom Defendant, or an agent acting on behalf of Defendant, requested and/or obtained genetic information, including family medical history, in connection with the person's application of employment or the person's employment with Defendant.

(*Id.* ¶ 60.)

## III.　REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

### A.　Complete Diversity of Citizenship Exists Between Plaintiffs and Caterpillar.

12.　　Removal is proper under 28 U.S.C. §§ 1332(a) and 1441 where there is complete diversity between a plaintiff and a defendant, and the amount in controversy exceeds $75,000. *Carroll v. Stryker Corp.*, 658 F.3d 675, 680-81 (7th Cir. 2011).

13. For purposes of diversity jurisdiction, a corporation is a citizen of the state in which it is incorporated and where it has a principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

14. Caterpillar is incorporated in Delaware and has its principal place of business in Irving, Texas. (**Exhibit B,** Abby Damery Decl., ¶ 3.) Accordingly, Caterpillar is a citizen of Delaware and Texas.

15. Both Branson and Dotson are citizens of Illinois. (Compl. ¶¶ 10, 11.)

16. Accordingly, there is complete diversity of citizenship between Plaintiffs and Caterpillar. Neither are residents of the same state.

**B.     The Amount in Controversy Exceeds $75,000.**

17. The amount in controversy exceeds the sum of $75,000, as required by 28 U.S.C. § 1332(a). Caterpillar's burden to satisfy the amount in controversy requirement is low; Caterpillar need show only that there is "a reasonable probability" that the stakes exceed $75,000. *Smith v. American General Life and Acc. Ins. Co. Inc.*, 337 F.3d 888, 892 (7th Cir. 2003). Further, "[t]he party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Bloomberg v. Service Corp. Intern.*, 639 F.3d 761, 763 (7th Cir. 2011), citing *Brill v. Countrywide Home Loans, Inc.* 427 F.3d 446, 448 (7th Cir. 2005).

18. Simply stated, Caterpillar's burden at this stage is "a pleading requirement, not a demand for proof." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) ("When a plaintiff invokes federal . . . jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith . . . . Similarly, when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted . . . .").

19.     While Plaintiffs fail to identify the amount of damages sought, Caterpillar has a reasonable, good-faith belief that Plaintiffs seek damages in excess of the jurisdictional requirement of $75,000. As discussed above, Plaintiffs seek an award of $15,000 in statutory damages for "each" intentional or reckless violation of GIPA, and $2,500 in statutory damages for "each" negligent violation of GIPA, in addition to attorneys' fees and costs incurred in this litigation. (Compl. ¶ 77; Prayer for Relief.) On the face of the Complaint, and without certainty as to how many violations each Plaintiff could be awarded under GIPA, it is reasonable to conclude that the amount in controversy is satisfied for purposes of removal.

20.     Moreover, taking as true Plaintiffs' allegation that Caterpillar "employs *over one thousand people in Illinois*, and it is believed that all or most of those individuals will fall within the proposed Class" (*id*. ¶ 62, emphasis added), even if each class member is awarded damages for just one negligent violation under GIPA, such damages would exceed $2.5 million, and damages would exceed $15 million if each class member was awarded damages for just one reckless violation of GIPA each.[1]

21.     Even so, as of the date of the approximate date of removal, Caterpillar currently employs more than 7,000 production employees in Illinois, which exceeds the number of employees Plaintiffs allege are part of the putative class. (Damery Decl., ¶ 7.)

IV.     **REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT**

22.     This putative class action is also subject to the Court's jurisdiction under CAFA, 28 U.S.C. § 1332(d), because minimal diversity exists and the amount in controversy exceeds $5,000,000.

---

[1] To be clear, this is an illustration and not a suggestion or admission that Plaintiffs, or the putative class, are entitled to any relief whatsoever.

23. CAFA was enacted "to facilitate adjudication of certain class actions in federal court." *Dart*, 574 U.S. at 89. Accordingly, CAFA expands jurisdiction for diversity class actions by creating federal subject-matter jurisdiction if: (1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant ("minimal diversity"); and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate. 28 U.S.C. § 1332(d); *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017).

24. "The language and structure of CAFA … indicate[ ] that Congress contemplated broad federal court jurisdiction with only narrow exceptions." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 621 (7th Cir. 2012) (quotation marks omitted).

25. The "party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Roppo*, 849 F.3d at 579 Further, the removing defendant "need not 'confess liability in order to show that the controversy exceeds the threshold.'" *Id.*, quoting *Spivey*, 528 F.3d 982 at 986. "When a defendant seeks federal-court jurisdiction, the amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 579.

26. This case meets all the requirements for jurisdiction under CAFA and 28 U.S.C. § 1332(d)(2).

**A.     This matter is a "class action" under CAFA.**

27. A "class action" for purposes of CAFA is defined as "any civil action filed in a district court of the United States under Rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Here, Plaintiffs seek to certify a class of all individuals in Illinois, within five years prior to the date of class certification, who

applied for employment with Caterpillar and for whom Caterpillar "requested and/or obtained genetic information, including family medical history, in connection with the person's application for employment or the person's employment with [Caterpillar]." (Compl. ¶ 60.) Therefore, this action is properly considered a "class action" under CAFA.

**B.      The requirement of minimal diversity is met.**

28.      CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2)(A). In the instant case, Plaintiffs are a citizen of a state (Illinois) that is different from the state of citizenship of Caterpillar (Delaware and Texas).

29.      For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Morgan, Lewis & Bockius LLP v. City of East Chicago*, 2008 WL 4812658, at \*1 (N.D. Ill. Oct. 29, 2008) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State.")). Residence is *prima facie* evidence of domicile. *Seaboard Finance Co. v. Davis*, 276 F. Supp. 507, 509 (N.D. Ill. 1967) ("The domicile is the state in which a person resides with the intention of remaining."). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Ner Tamid Congregation of North Town v. Krivoruchko*, 620 F. Supp. 2d 924, 931 (N.D. Ill. 2009) (citing *Newman-Green, Inc.*, 490 U.S. at 830 ("To determine an individual's citizenship for diversity purposes, courts look to the state of the individual's domicile when the complaint was filed.")).

30.      Plaintiffs allege that they are, "and was at all relevant times of employment with [Caterpillar], an individual citizen of the State of Illinois," and that they both currently reside in Decatur, Illinois. (Compl. ¶¶ 10-11.)

31.     The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test if the "nerve center" test. *Hertz Corp.*, 559 U.S. at 80-81. Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis. *Id*. ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities").

32.     Under the "nerve center" test, Texas emerges as Caterpillar's principal place of business. Caterpillar's corporate headquarters are located in Irving, Texas where Caterpillar's high level officers direct, control, and coordinate Defendant's activities. (Damery Decl., ¶ 4.) Caterpillar's high level corporate officers maintain offices in Texas, and many of Caterpillar's corporate level functions are performed in the Texas office, including the CEO, CFO, Group Presidents, Chief Legal Officer, and various other business functions. *Id*. Therefore, for purposes of diversity citizenship, Caterpillar is, and has been at all times since this action commenced, a citizen of the State of Texas. 28 U.S.C. § 1332(c)(1).

### C.     The "amount in controversy" exceeds the CAFA threshold.

33.     The amount in controversy under CAFA is satisfied "if the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2). For purposes of determining the amount in controversy in class actions, CAFA expressly requires that "the claims of the individual members shall be aggregated . . . ." 28 U.S.C. § 1332(d)(6).

34.     Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. Rep. 109-14, at 42. Moreover, any doubts

regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(s) is intended to expand substantially federal jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

35. Caterpillar's burden to demonstrate the amount in controversy is low and it need show only that there is "a reasonable probability that the stakes exceed" $5,000,000. *Brill*, 427 F.3d at 448. If the party opposing federal jurisdiction contests the amount in controversy, the proponent must "prove those jurisdictional facts by a preponderance of the evidence." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (quoting *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006); *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006)).

36. The Seventh Circuit has acknowledged "the difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims." *Blomberg*, 639 F.3d at 763. Accordingly, "[t]he party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id*. (citing *Brill*, 427 F.3d at 448). This burden thus "'is a pleading requirement, not a demand for proof.'" *Id*. (quoting *Spivey*, 528 F.3d at 986). "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000, [citation omitted] the case belongs in federal court unless it is legally impossible for

the plaintiff to recover that much." *Id.* at 764 (citing *Spivey*, 528 F.3d at 986; *Brill*, 427 F.3d at 448).

37.     If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claim which would narrow the scope of the putative class or the damages sought. She did not.

*Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

38.     Caterpillar denies the validity and merit of the entirety of Plaintiffs' alleged claims, the legal theories upon which they are based, and the alleged claims for monetary and other relief that flow therefrom. For purposes of removal, however, and without conceding that Plaintiffs or the putative class are entitled to damages or penalties, it is readily apparent that the aggregated claims of the putative class establish, by a preponderance of evidence, that the amount in controversy well exceeds the jurisdictional minimum of $5,000,000 as detailed below.

39.     For the class member and amount in controversy elements of CAFA, Plaintiffs allege that Caterpillar "employs over one thousand people in Illinois, and it is believed that all or most of those individuals will fall within the proposed Class." (*Id.* ¶ 62.) Moreover, Plaintiffs seek for themselves and for each putative Class Member $15,000 for "each" violation intentional and/or reckless violation of GIPA. (Compl. ¶ 77; Prayer for Relief.) Even taking Plaintiffs' allegations as true, and assuming that there are over 1,000 employees in Illinois that will fall within the proposed Class, and each class member was awarded $15,000 for a single reckless and/or intentional

violation of GIPA, such damages would total $15 million.[2] That said, and as stated above, as of the date of the approximate date of removal, Caterpillar currently employs more than 7,000 production employees in Illinois, which exceeds the number in Plaintiffs' allegations. (Ex. B, Damery Decl., ¶ 7.) Therefore, assuming that each employee falls within the definition of the putative class, and that Caterpillar recklessly and/or intentionally violated GIPA, which Caterpillar will ultimately dispute, and which is to be assumed per *Muniz*--the 100 class member and over $5 million amount in controversy thresholds of CAFA are met.

## V. PLAINTIFFS' COMPLAINT ALLEGATIONS ESTABLISH THE ARTICLE III STANDING REQUIRED FOR FEDERAL COURT JURISDICTION.

40. "[A]s always, 'subject-matter jurisdiction is the first issue in any case.'" *Woods v. FleetPride, Inc.*, 2022 WL 900163, at *3 (N.D. Ill. Mar. 27, 2022) (quoting *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019)). If, after removal of a case from a state court, it "appears that the court lacks subject matter jurisdiction, the case shall be remanded." *Id*. (quoting 28 U.S.C. ¶ 1447(c)) (citations omitted). It is the party seeking removal that "bears the burden of establishing federal jurisdiction." *Id*. (quoting *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017).

41. Article III of the Constitution requires an actual case or controversy between the parties. *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994). Three requirements must be met for Article III standing: "(1) plaintiff must have suffered an actual or imminent, concrete or particularized injury-in-fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) there must be a likelihood that the injury will be redressed by a favorable decision." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 621-22 (7th Cir. 2020), *as amended* (June 30, 2020) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992)).

---

[2] 1,000 employees x $15,000 intentional and/or reckless violation of BIPA = $15,000,000.

42.     In *Spokeo v. Robins*, the Supreme Court explained that a "concrete" injury must actually exist but need not be tangible. 578 U.S. 330, 340-41 (2016). A legislature may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id*. (quoting *Lujan*, 504 U.S. at 578.) But "a bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III." *Id*. "Instead, the plaintiff must show that the statutory violation presented an 'appreciable risk of harm' to the underlying concrete interest that [the legislature] sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (quoting *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016)).

43.     Analogous to a GIPA claim is a claim under the similar Illinois Biometric Information Privacy Act ("BIPA," 740 ILCS 14/ *et seq*.), which prohibits a private entity from capturing or collecting an aggrieved person's biometric information or identifiers without first providing a publicly available retention schedule, a written notice, and obtaining written consent. *See id*. The Seventh Circuit has already analyzed whether a plaintiff bringing a BIPA claim has Article III standing when it decided *Bryant*. In *Bryant*, the court analyzed, among other claims, whether a concrete harm is inflicted under Section 15(b) of BIPA when a private entity fails to provide written notice or obtain written consent before capturing or collecting an aggrieved person's biometric information or identifiers. *See Bryant*, 958 F.3d at 619. The *Bryant* court analyzed the *Spokeo* decision and focused on Justice Thomas's concurring opinion, which drew a useful distinction between two types of injuries. The first, he said, arises when a private plaintiff asserts a violation of her own rights; the second occurs when a private plaintiff seeks to vindicate public rights. *Id*. at 624. Applying Justice Thomas's rubric, the *Bryant* court concluded that plaintiff's 15(b) BIPA claim was a violation of her own rights, such that her claim had Article III

13

standing. *See id.* ("[W]e have no trouble concluding that Bryant was asserting a violation of her own rights—her fingerprints, her private information—and that is enough to show an injury-in-fact without further tangible consequences.").

44.     Similarly here, Plaintiffs allege that their own rights, namely their own genetic information, was required to be disclosed in violation of GIPA. (*See* Compl. ¶¶ 73-74.) Plaintiffs further allege that Caterpillar violated GIPA by "intentionally and/or recklessly captur[ing], collect[ing], and/or retain[ing] Plaintiffs' genetic information in the form of their family medical histories in violation of Illinois law." (*Id.* ¶ 57). Additionally, Plaintiffs allege that Caterpillar "failed to direct Plaintiffs, either verbally or in writing, to not provide genetic information when requested to provide their family medical history." (*Id.* ¶ 73.) In other words, Plaintiffs allege that Caterpillar did not provide information to Plaintiffs sufficient for them to know that they could refuse to provide family medical history if asked – just as the plaintiffs in *Bryant* alleged substantive information was withheld from them, resulting in them providing biometric information without informed consent. *Bryant*, 958 F.3d at 626.

45.     These allegations are nearly identical to those made to establish a 15(b) claim under BIPA. Therefore, consistent with the *Bryant* court's Article III decision on a 15(b) claim under BIPA, the allegations in Plaintiffs' Complaint establish Article III standing.

46.     The Seventh Circuit has similarly concluded that other intangible, yet concrete, purported invasions of privacy or unconsented conduct satisfies Article III standing. *See, e.g., Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) (holding that a claim under the Telephone Consumer Protection Act for unconsented text messages satisfies Article III standing); *Remijas v. Nieman Marcus Grp., LLC*, 794 F.3d 688, 692 (7th Cir. 2015) (holding that a data breach claim for the increased risk of fraudulent credit- or debit-card charges was not a mere

"allegation[] of future injury, but instead were the type of 'certainly impending' future harm that the Supreme Court requires for standing."); *Santangelo v. Comcast Corp.*, 341 F. Supp. 3d 830, 835 (N.D. Ill. 2018), citing *Evans v. Portfolio Recovery Assoc., LLC*, 889 F.3d 337, 344-46 (7th Cir. 2018) (consumer suffered an injury-in-fact that was fairly traceable to internet service prover's actions in pulling his credit score without consent, in violation of the Fair Credit Reporting Act.)).

47.     Plaintiffs' allegations also satisfy the second and third prongs for Article III standing under *Lujan* because any injury Plaintiffs purportedly suffered was caused directly by Caterpillar's alleged failure to comply with GIPA, and the prospect of statutory damages shows that such an injury is redressable. *See, e.g., Bryant*, 958 F.3d at 621.

## VI.    CONCLUSION

48.     Accordingly, the above facts and the relevant allegations in Plaintiffs' Complaint establish that the parties are diverse, the amount in controversy exceeds $75,000, and that the U.S. District Court for the Northern District of Illinois has subject matter jurisdiction over this matter. Caterpillar's invocation of diversity jurisdiction is therefore proper, as required by 28 U.S.C. § 1332(a). Removal is also proper under CAFA because, while liability is denied, the class exceeds 100 individuals and the $5 million amount in controversy threshold is met.

49.     Should Plaintiffs seek to remand this case to state court, Caterpillar respectfully asks that it be permitted to brief and argue the issue of this removal prior to any order remanding this case. In the event the Court decides remand is proper, Caterpillar asks that the Court retain jurisdiction and allow Caterpillar to file a motion asking this Court to certify any remand order for interlocutory review by the Seventh Circuit Court of Appeals, pursuant to 28 U.S.C. § 1292(b).

WHEREFORE, Defendant CATERPILLAR INC. states that this action is properly removable and respectfully notifies this Court, Plaintiffs, and the Circuit Court of the First Judicial Circuit, Cook County, Illinois, that this action has been removed to the United States District Court,

Northern District of Illinois. Caterpillar further requests that this Court accept this Notice of Removal and assume jurisdiction over this matter for all further proceedings.

WHEREFORE, Defendant CATERPILLAR INC. hereby removes this civil action to this Court on the basis of diversity jurisdiction and the Class Action Fairness Act.

DATED: September 29, 2023                    Respectfully submitted,


By: */s/ Ada W. Dolph*
       One of Its Attorneys

Ada W. Dolph
adolph@seyfarth.com
Paul J. Yovanic Jr.
pyovanic@seyfarth.com
Tara E. Shinall
tshinall@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448
Telephone:   (312) 460-5000
Facsimile:    (312) 460-7000

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2023, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail address denoted on the electronic Mail Notice List.

I also certify, pursuant to 28 U.S.C. § 1446(d), Federal Rules of Civil Procedure 5(b), and Local Rule 5.5, that a copy of the foregoing was sent via electronic mail to the adverse party in this matter at:

> Edward Wallace
> Mark R. Miller
> Molly C. Wells
> WALLACE MILLER
> 150 N. Wacker Dr., Suite 1100
> Chicago, IL 60606
> eaw@wallacemiller.com
> mrm@wallacemiller.com
> mcw@wallacemiller.com

*/s/ Ada W. Dolph*

17