# EXHIBIT A

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 10

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | **SUMMONS** | For Court Use Only |
|---|---|---|
| Cook ▼ COUNTY | | FILED 8/14/2023 4:35 PM IRIS Y. MARTINEZ CIRCUIT CLERK COOK COUNTY, IL 2023CH07406 Calendar, 10 23955016 |

FILED DATE: 8/14/2023 4:35 PM   2023CH07406

| **Instructions ▼** | |
|---|---|
| Enter above the county name where the case was filed. | Kerry Branson et. al. **Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v. Caterpillar, Inc. **Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

2023CH07406
**Case Number**

| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
|---|---|

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.

Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org.

| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help. |
|---|---|

If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent.

| In **1a**, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1. Defendant/Respondent's address and service information:** a. Defendant/Respondent's primary address/information for service: Name *(First, Middle, Last):* Caterpillar, Inc. Registered Agent's name, if any: Illinois Corporation Service Company Street Address, Unit #: 801 Adlai Stevenson Drive City, State, ZIP: Springfield, IL 62703 Telephone: _____ Email: _____ |
|---|---|
| In **1b**, enter a second address for Defendant/ Respondent, if you have one. | b. If you have more than one address where Defendant/Respondent might be found, list that here: Name *(First, Middle, Last):* _____ Street Address, Unit #: _____ City, State, ZIP: _____ Telephone: _____ Email: _____ |
| In **1c**, check how you are sending your documents to Defendant/ Respondent. | c. Method of service on Defendant/Respondent: ☑ Sheriff   ☐ Sheriff outside Illinois: _____ *County & State* ☐ Special process server   ☐ Licensed private detective |

SU-S 1503.2                               Page 1 of 4                               (06/21)

Enter the Case Number given by the Circuit Clerk: <u>2023CH07406</u>

FILED DATE: 8/14/2023 4:35 PM   2023CH07406

| | |
|---|---|
| In **2**, enter the amount of money owed to you. | **2.** **Information about the lawsuit:** |
| | Amount claimed: $ 50,000.00 |
| In **3**, enter your complete address, telephone number, and email address, if you have one. | **3.** **Contact information for the Plaintiff/Petitioner:** |
| | Name *(First, Middle, Last):* Mark R. Miller |
| | Street Address, Unit #: 150 N Wacker Dr. Suite 1100 |
| | City, State, ZIP: Chicago, IL 60606 |
| | Telephone: (312) 261-6193    Email: mrm@wallacemiller.com |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*. To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
|---|---|

| | |
|---|---|
| Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4.** **Instructions for person receiving this *Summons* (Defendant):** |
| | ☑ a.   To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at: |
| | Address:   Richard J. Daley Center 50 W Washington St. |
| | City, State, ZIP:   Chicago, IL 60602 |
| In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response.* | ☐ b.   Attend court: |
| | On: _____ at _____ ☐ a.m. ☐ p.m. in _____ |
| | *Date*          *Time*                   *Courtroom* |
| | **In-person at:** |
| In **4b**, fill out: | |
| • The court date and time the clerk gave you. | _____ |
| | *Courthouse Address*    *City*              *State*    *ZIP* |
| • The courtroom and address of the court building. | OR |
| • The call-in or video information for remote appearances (if applicable). | **Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"): |
| | By telephone: _____ |
| | *Call-in number for telephone remote appearance* |
| • The clerk's phone number and website. All of this information is available from the Circuit Clerk. | By video conference: _____ |
| | *Video conference website* |
| | _____ |
| | *Video conference log-in information (meeting ID, password, etc.)* |
| | Call the Circuit Clerk at: _____ or visit their website |
| | *Circuit Clerk's phone number* |
| | at: _____ to find out more about how to do this. |
| | *Website* |

| | |
|---|---|
| **STOP!** The Circuit Clerk will fill in this section. | Witness this Date: _____ |
| | Clerk of the Court: 8/14/2023 4:35 PM IRIS Y. MARTINEZ |
| **STOP!** The officer or process server will fill in the Date of Service. | This *Summons* must be served within 30 days of the witness date. |
| | Date of Service: _____ |
| | *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* |

Seal of Court

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.**

| STATE OF ILLINOIS, CIRCUIT COURT | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|
| Cook ⬛ COUNTY | | |

FILED DATE: 8/14/2023 4:35 PM    2023CH07406

| Instructions | | |
|---|---|---|
| Enter above the county name where the case was filed. | Kerry Branson et. al. | |
| | **Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v. | |
| | Caterpillar, Inc. | |
| | **Defendant / Respondent** *(First, middle, last name)* | |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | 2023CH07406 **Case Number** |

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

**My name is** _____ **and I state**
*First, Middle, Last*

☐ **I served the *Summons* and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

    ☐ Personally on the Defendant/Respondent:
    Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____ Race: _____
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address, Unit#: _____
    City, State, ZIP: _____

    ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family
    member or lives there:
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address, Unit#: _____
    City, State, ZIP: _____
    And left it with: _____
        *First, Middle, Last*
    Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____ Race: _____
    and by sending a copy to this defendant in a postage-paid, sealed envelope to the
    above address on _____ , 20 _____ .
    ☐ On the Corporation's agent, _____
        *First, Middle, Last*
    Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____ Race: _____
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____

Enter the Case Number given by the Circuit Clerk: 2023CH07406

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

2.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

3.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

| DO NOT complete this section. The sheriff or private process server will complete it. |
| --- |

**If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.**

| Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. |
| --- |

**By:**

_____

*Signature by:*  ☐ Sheriff
                  ☐ Sheriff outside Illinois:

_____
*County and State*
                  ☐ Special process server
                  ☐ Licensed private detective

**FEES**

Service and Return: $ _____
Miles _____    $ _____
Total               $ 0.00

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

FILED DATE: 8/14/2023 11:47 AM   2023CH07406

FILED
8/14/2023 11:47 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH07406
Calendar, 10
23945553

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

KERRY BRANSON and SHELLEY
DOTSON, individually and on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

CATERPILLAR, INC.

Defendant.

Case No. 2023CH07406

**CLASS ACTION COMPLAINT**

Jury Trial Demanded

## CLASS ACTION COMPLAINT

Plaintiffs Kerry Branson and Shelley Dotson ("**Plaintiffs**"), by their undersigned attorneys,

on their own behalf and on behalf of all others similarly situated, upon personal knowledge as to

themselves and their own acts, and upon information and belief as to all other matters, bring this

Class Action Complaint against Caterpillar, Inc. ("**Caterpillar**" or "**Defendant**") for its violations

of Plaintiffs' privacy rights guaranteed under the Illinois Genetic Information Privacy Act, 410

Illinois Compiled Statute ("**ILCS**") 513 *et seq.* (hereinafter "**GIPA**"), and allege as follows:

## NATURE OF THE ACTION

1.    Unlocking the human genetic code came with it the potential for hitherto

unfathomable medical development. It permitted individuals to learn in detail the possibilities that

were hidden within their genome. For the first time, women can now learn whether they are

predisposed to get breast cancer; families can trace their genetic lineage back thousands of years,

and law enforcement can use DNA samples to identify criminals.

2.    However, all of this information can only be obtained if people are willing to allow

sharing of genetic information, and that is only possible if people know that their genetic

information will not be used against them in future employment, insurance or other situations. For example, few women would want to learn about a predisposition to breast cancer if that meant that they could be barred from certain jobs or prevented from obtaining life insurance.

3. The Illinois Legislature enacted GIPA in 1998 with the goal to protect Illinois residents from having their genetic information being used against them in employment settings.

4. Consistent with this goal, GIPA provides strong legal protections to ensure that Illinois residents can take advantage of the knowledge that can be gained from obtaining personal genetic information, without fear that this same information could be used by employers to discriminate against them.

5. Among its other valuable protections, GIPA prohibits employers from learning or using genetic information in making employment decisions. GIPA bars employers from asking about employees or potential employees' genetic information, prevents employers from obtaining this information from third parties, and forbids employers from using such information to affect the terms and conditions of employment.

6. To accomplish this goal, GIPA employs a comprehensive definition of "genetic information" that includes information regarding an individual's family medical history.

7. Despite GIPA's prohibitions, some companies in Illinois still ask their employees or applicants to provide protected family medical history when making hiring determinations and job assignments in blatant violation of the law.

8. Defendant chose to repeatedly disregard Illinois' genetic privacy laws by asking its employees to provide genetic information in the form of family medical history to assist the companies in making employment decisions.

FILED DATE: 8/14/2023 11:47 AM   2023CH07406

9.      Accordingly, Plaintiffs seek on behalf of themselves, and all of Defendant's other similarly situated employees in the state, an order: (i) requiring Defendant to cease the unlawful activities discussed herein; and (ii) awarding actual and/or statutory damages to Plaintiffs and the members of the proposed Class.

## PARTIES

10.     Plaintiff Kerry Branson is and was at all relevant times of employment with Defendant, an individual citizen of the State of Illinois. Mr. Branson currently resides in Decatur, Illinois.

11.     Plaintiff Shelley Dotson is and was at all relevant times of employment with Defendant, an individual citizen of the State of Illinois. Ms. Dotson currently resides in Decatur, Illinois.

12.     Defendant is a Delaware corporation. Caterpillar is headquartered in Irving, Texas and conducts business throughout this County, the State of Illinois, and the United States. Upon information and belief, Caterpillar employs over 1,000 employees within the State of Illinois. Caterpillar operates throughout Illinois across numerous locations, including "key offices" in Chicago, Peoria, Aurora, East Peoria, and Mossville.[1] Caterpillar also operates a component manufacturing facility at 27th & Pershing Road, Decatur, IL 62525 (the **"Decatur Facility"**).

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 of the Illinois Code of Civil Procedure because Defendant conducts business transactions in Illinois and has committed tortious acts in Illinois.

---

[1]   *See* Caterpillar's website of U.S. Locations, *available at* https://www.caterpillar.com/en/company/global-footprint/americas/united-states.html#accordion-1bd183d3ed-item-fe2f7b0c44-button.

3

FILED DATE: 8/14/2023 11:47 AM 2023CH07406

14.     Venue is proper in Cook County because Defendant operates throughout this County and "resides" in Cook County within the meaning of 735 ILCS 5/2-102(a).

## ILLINOIS GENETIC INFORMATION PRIVACY ACT ("GIPA")

15.     During the 1990s, the U.S. government poured billions of dollars into the Human Genome Project in an attempt to map the entire human genetic code. When President Clinton announced the first successful "rough draft" of the Project in 2000, he hailed it as one of the great achievements of human history, and said: "Today we are learning the language with which God created life[.]"[2]

16.     However, like any great leap in human understanding, learning the meaning of people's genetics came with many concerns. One movie released around this time, the dystopian science fiction movie *Gattaca*, attempted to show how this new technology could be abused. The movie conjured a not-too-distant future where genetic discrimination was rampant. In the movie, companies segregated people based on their genetic profiles, those with better genetic profiles (i.e., genetically engineered humans) were eligible for professional employment, while others with less desirable genetics (e.g., susceptibility to heart disease or cancer) were unemployable or relegated to menial jobs. Since its release, the film has been regularly used in schools to show the possible misuses of genetic information.[3]

17.     Illinois stood at the forefront of protecting its citizens from the abuse of this technology when it first passed GIPA in 1998. According to the Illinois Legislature, the intent of GIPA is to protect an individual from their genetic information (such as family medical history)

---

[2] *Scientists Complete Rough Draft of Human Genome* (N.Y. Times June 26, 2000) *available at* https://archive.nytimes.com/www.nytimes.com/library/national/science/062600sci-human-genome.html?amp;sq=francis%252520collins&st=cse&scp=23.

[3] *What Do People Who Work in Genetics Think About Gattaca 25 Years After Its Release* (Slate Aug. 15, 2022) *available at* https://slate.com/technology/2022/08/gattaca-25th-anniversary-genetics-crispr.html.

FILED DATE: 8/14/2023 11:47 AM 2023CH07406

being used against them in a discriminatory manner. Limiting the use or requests for protected genetic information is a key component of health information privacy. 410 ILCS 513/5(1)-(5).

18.     The Illinois Legislature amended GIPA in 2008 to increase its protections and harmonize Illinois state law with the then-recently passed Federal Genetic Information Nondiscrimination Act of 2008 ("**GINA**"), 110 P.L. 233; *see also* 42 U.S.C. § 2000ff. The 2008 amendments to GIPA sought to further prohibit discriminatory practices of employers through the use of genetic information of employees, including such employees' family medical history.

19.     During discussions of the 2008 GIPA amendments, the Illinois Legislature recognized the importance of safeguarding family medical history due to the fact that it is akin to knowledge of genetic predispositions:

> I hope the [legislature] understands the importance of [family medical history]; it's becoming more and more important. Back in '96 or '97, I had a third generation ovarian cancer survivor that came to me with this issue. ... If a woman has ... the gene that causes breast cancer, she can have up to an 84 percent probability that she will develop breast cancer sometime in her life ... it's important that we help people be able to know that information and know they won't be discriminated against in their employment .... Quite honestly, with genetic information we have today, we could identify a pool of people that ... no one would want to employ. [GIPA] helps guarantee that we don't have that kind of discrimination occur.

Illinois House Transcript, 2008 Reg. Sess. No. 276, pp. 33-34.

20.     To accomplish the Illinois Legislature's goal of ensuring that genetic information is not used to discriminate against employees, GIPA adopted Congress' definition of "genetic information" that includes not just the narrow results of an individual's genetic tests, but also information regarding "[t]he manifestation of a disease or disorder in family members of such individual[.]" 410 ILCS 513/10; *see* 45 C.F.R. § 160.103.

FILED DATE: 8/14/2023 11:47 AM   2023CH07406

21.     GIPA bars employers from directly or indirectly requesting or using genetic information in hiring, firing, demoting, or in determining work assignment or classifications of applicants or employees. Specifically, GIPA states: "An employer ... shall not directly or indirectly do any of the following:

> (1) solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, ... as a condition of employment, preemployment application...;
>
> (2) affect the terms, conditions, or privileges of employment, preemployment application, ... or terminate the employment, ... of any person because of genetic testing or genetic information with respect to the employee or family member...;
>
> (3) limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee because of genetic testing or genetic information with respect to the employee or a family member, ...; and
>
> (4) retaliate through discharge or in any other manner against any person alleging a violation of this Act or participating in any manner in a proceeding under this Act.

410 Ill. Comp. Stat. 513/25(c). Nor may an employer or prospective employer enter into an agreement with a person to take a genetic test. 410 ILCS 513/25(d).

22.     Even if an employer otherwise obtains genetic information lawfully, it still may not use or disclose the genetic information in violation of GIPA. 410 ILCS 513/25(j).

23.     In order to enforce these and other requirements, GIPA provides individuals with a broad private right of action, stating: "Any person aggrieved by a violation of this Act shall have a right of action ... against an offending party." 410 ILCS 513/40(a). Under this private right of action, a party may recover, for each violation: (a) $2,500 or actual damages, whichever is greater, for a negligent violation, or $15,000 or actual damages, whichever is greater, for a willful violation;

FILED DATE: 8/14/2023 11:47 AM  2023CH07406

(b) reasonable attorneys' fees; and (c) "[s]uch other relief, including an injunction, as the … court may deem appropriate." *Id.*

24.     Plaintiffs are not required to allege or prove actual damages in order to state a claim under GIPA, and they can seek statutory damages under GIPA as compensation for the injuries caused by Defendant. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, at ¶ 40, 432 Ill. Dec. 654, 129 N.E.3d 1197 (holding by the Illinois Supreme Court that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under [the Illinois Biometric Privacy Act ("**BIPA**")] in order to qualify as an 'aggrieved person' under BIPA); *see also Bridges v. Blackstone Grp., Inc.*, 2022 U.S. Dist. LEXIS 121205, at *8 (S. D. Ill. July 8, 2022) (holding that it is appropriate to apply BIPA's definition of "aggrieved person" used by the *Rosenbach* court to alleged violations of GIPA).

25.     Thus, GIPA provides valuable privacy rights, protections, and benefits to the citizens of Illinois and provides those citizens with the means to aggressively enforce those rights.

## PLAINTIFF SPECIFIC ALLEGATIONS

### PLAINTIFF KERRY BRANSON

26.     On or around March 1, 2020, Mr. Branson submitted an application for the full-time, permanent position of Material Handler at the Decatur Facility.

27.     On or around March 14, 2020, during the application and hiring process, Caterpillar directly or indirectly solicited, requested, or required Mr. Branson to disclose his family medical history as a condition of employment.

28.     Specifically, on or around March 14, 2020, an individual who upon information and belief was an employee of Caterpillar directly solicited, requested, or required Mr. Branson to disclose his family medical history during a pre-employment physical. Mr. Branson was required

FILED DATE: 8/14/2023 11:47 AM 2023CH07406

to submit to a pre-employment physical as a requirement of the hiring process. The physical was conducted at the Decatur Facility by Caterpillar's in-house medical staff. During the physical, Caterpillar's medical staff requested Mr. Branson to disclose his family medical history.

29.     On or around March 7, 2020, Mr. Branson received a phone call from an individual who upon information and belief was an employee of Caterpillar's human resources department. During the call, the Caterpillar employee instructed Mr. Branson to present to the Decatur Facility for a pre-employment physical.

30.     On or around March 14, 2020, Mr. Branson presented to the Decatur Facility for the physical. He met with an individual from Caterpillar's security staff and was directed to Caterpillar's medical offices at the Decatur Facility. The medical offices were organized similar to an emergency room at a hospital and contained a central waiting room with a nurse's station as well as multiple examination rooms. The medical staff at the central nursing station requested Mr. Branson to prepare handwritten responses to paperwork which, among other things, asked about his medical history, including hypertension, cancer, diabetes, and cardiac issues, among other ailments. The paperwork also asked Mr. Branson to disclose medical conditions which had manifested in his family members, including hypertension, cancer, diabetes, and cardiac issues. After completing the paperwork, Mr. Branson was directed to meet with a member of Caterpillar's medical staff one-on-one in a physical examination room within the medical offices at the Decatur Facility.

31.     During this examination, Caterpillar's medical staff tested Mr. Branson's eyesight and the flexibility of various body parts. After completing the physical portions of the examination, the medical staff verbally asked Mr. Branson questions about his medical conditions and history.

When asking these questions, the medical staff had a file in front of them on their desk and made handwritten notes on the papers in the file as they asked these questions.

32.     Among other questions, the medical staff verbally asked Mr. Branson to provide his family medical history. The medical staff listed various medical conditions and asked Mr. Branson to respond by stating whether Mr. Branson had any of those conditions, or whether any family members on Mr. Branson's maternal or paternal bloodlines had these conditions. These medical conditions included hypertension, cancer, diabetes, and cardiac issues, among other ailments.

33.     In response, Mr. Branson disclosed genetic information, including conditions that his family members had been diagnosed with. Mr. Branson would not have volunteered his family members' medical histories if the medical staff had not asked Mr. Branson to do so.

34.     Mr. Branson was not directed by the medical staff, or anyone else from Caterpillar, either verbally or in writing, to not disclose the solicited genetic information. Nor did Mr. Branson provide prior, knowing, voluntary, and written authorization to Caterpillar for the use of his genetic information in furtherance of a workplace wellness program.

35.     This physical was a condition of employment and/or pre-employment application because Caterpillar required Mr. Branson to attend this physical in order to be hired.

36.     Mr. Branson was required to disclose his genetic information at the physical examination as a condition of employment with Caterpillar.

37.     Mr. Branson's family medical history was used by Caterpillar to affect the terms and conditions of his employment.

38.     Mr. Branson was hired by Caterpillar for the Material Handler position after completing all required steps in the hiring process. Mr. Branson's job duties involved strenuous

physical labor. His job duties included performing a variety of functions to check, receive, and verify accuracy of Caterpillar's product, checking, storing, disbursing or filling orders for parts, materials, tools, equipment and supplies, and working with various source documents to verify the accuracy and conditions of parts.

39. Mr. Branson left Caterpillar's employment at the Decatur Facility in or around March 2023.

### PLAINTIFF SHELLEY DOTSON

40. On or around May 1, 2023, Ms. Dotson submitted an application for the full-time, permanent position of Material Handler at the Decatur Facility.

41. On or around May 14, 2023, during the application and hiring process, Caterpillar directly or indirectly solicited, requested, or required Ms. Dotson to disclose her family medical history as a condition of employment.

42. Specifically, on or around May 14, 2023, an individual who upon information and belief was an employee of Caterpillar directly solicited, requested, or required Ms. Dotson to disclose her family medical history during a pre-employment physical. Ms. Dotson was required to submit to a pre-employment physical as a requirement of the hiring process. The physical was conducted at the Decatur Facility by Caterpillar's in-house medical staff. During the physical, Caterpillar's medical staff requested Ms. Dotson to disclose her family medical history.

43. On or around May 7, 2023, Ms. Dotson received a phone call from an individual who upon information and belief was an employee of Caterpillar's human resources department. During the call, the Caterpillar employee instructed Ms. Dotson to present to the Decatur Facility for a pre-employment physical.

FILED DATE: 8/14/2023 11:47 AM 2023CH07406

44. On or around May 14, 2023, Ms. Dotson presented to the Decatur Facility for the physical. She met with an individual from Caterpillar's security staff and was directed to Caterpillar's medical offices at the Decatur Facility. The medical offices were organized similar to an emergency room at a hospital and contained a central waiting room with a nurse's station as well as multiple examination rooms. The medical staff at the central nursing station requested Ms. Dotson to prepare handwritten responses to paperwork which, among other things, asked about her medical history, including hypertension, cancer, diabetes, and cardiac issues, among other ailments. The paperwork also asked Ms. Dotson to disclose medical conditions which had manifested in her family members, including hypertension, cancer, diabetes, and cardiac issues. After completing the paperwork, Ms. Dotson was directed to meet with a member of Caterpillar's medical staff one-on-one in a physical examination room within the medical offices at the Decatur Facility.

45. During this examination, Caterpillar's medical staff tested Ms. Dotson's eyesight and the flexibility of various body parts. After completing the physical portions of the examination, the medical staff verbally asked Ms. Dotson questions about her medical conditions and history. When asking these questions, the medical staff had a file in front of them on their desk and made handwritten notes on the papers in the file as they asked these questions.

46. Among other questions, the medical staff verbally asked Ms. Dotson to provide her family medical history. The medical staff listed various medical conditions and asked Ms. Dotson to respond by stating whether Ms. Dotson had any of those conditions, or whether any family members on Ms. Dotson's maternal or paternal bloodlines had these conditions. These medical conditions included hypertension, cancer, diabetes, and cardiac issues, among other ailments.

11

FILED DATE: 8/14/2023 11:47 AM   2023CH07406

47.     In response, Ms. Dotson disclosed genetic information, including conditions that her family members had been diagnosed with. Ms. Dotson would not have volunteered her family members' medical histories if the medical staff had not asked Ms. Dotson to do so.

48.     Ms. Dotson was not directed by the medical staff, or anyone else from Caterpillar, either verbally or in writing, to not disclose the solicited genetic information. Nor did Ms. Dotson provide prior, knowing, voluntary, and written authorization to Caterpillar for the use of her genetic information in furtherance of a workplace wellness program.

49.     This physical was a condition of employment and/or pre-employment application because Caterpillar required Ms. Dotson to attend this physical in order to be hired.

50.     Ms. Dotson was required to disclose her genetic information at the physical examination as a condition of employment with Caterpillar.

51.     Ms. Dotson's family medical history was used by Caterpillar to affect the terms and conditions of her employment.

52.     Ms. Dotson was hired by Caterpillar for the Material Handler position after completing all required steps in the hiring process. Ms. Dotson's job duties involved strenuous physical labor. Her job duties included performing a variety of functions to check, receive, and verify accuracy of Caterpillar's product, checking, storing, disbursing or filling orders for parts, materials, tools, equipment and supplies, and working with various source documents to verify the accuracy and conditions of parts.

53.     Ms. Dotson left Caterpillar's employment at the Decatur Facility in or around June 2023.

FILED DATE: 8/14/2023 11:47 AM   2023CH07406

## CATERPILLAR VIOLATES GIPA AS A MATTER OF COURSE

54. Based on Plaintiffs' experiences, they believe that, during the hiring process, Caterpillar asks employees and/or prospective employees to provide family medical histories as a condition of employment and/or as part of its hiring process.

55. Plaintiffs understand, on information and belief, that Caterpillar, or agents on its behalf, requests this family medical history information for the purpose of evaluating the risk that the individual may have inherited genetic conditions from family members, and then improperly uses that information when making its hiring decisions and staffing assignments.

56. On information and belief, Caterpillar requests this family medical history information as part of an effort to avoid risk and/or liability for workplace injuries and/or deaths caused by genetic conditions, including but not limited to hypertension, cancer, heart conditions, diabetes, and stroke, which Caterpillar believes could be inherited and that could be exacerbated by workplace conditions, especially if these conditions are high-stress and/or physically demanding.

57. Caterpillar was or should have been aware of its obligations under GIPA. Nevertheless, Caterpillar intentionally and/or recklessly captured, collected, and/or retained Plaintiffs' genetic information in the form of their family medical histories in violation of Illinois law.

58. As a result, Caterpillar's violations were willful because it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of GIPA.

13

FILED DATE: 8/14/2023 11:47 AM   2023CH07406

## CLASS ACTION ALLEGATIONS

59.     **Proposed Class Definition**: Plaintiffs bring this action pursuant 735 ILCS 5/2-801

on behalf of themselves and the following class (the "**Class**") of similarly situated individuals,

defined as follows:

60.     The Class brought by Plaintiffs consists of:

> All individuals in Illinois, within five years prior to the date of class
> certification of this action, (1) who applied for employment with
> Defendant or were employed by Defendant, and (2) from whom
> Defendant, or an agent acting on behalf of Defendant, requested
> and/or obtained genetic information, including family medical
> history, in connection with the person's application for employment
> or the person's employment with Defendant.

Excluded from the class are Defendant's officers and directors, Plaintiffs' counsel, and any

member of the judiciary presiding over this action.

61.     Plaintiffs reserve the right to modify this class definition as they obtain relevant

information, including employment records, through discovery.

62.     **Numerosity:** The exact number of class members is unknown and is not available

to Plaintiffs at this time, but Defendant employs over one thousand people in Illinois, and it is

believed that all or most of those individuals will fall within the proposed Class. Therefore, it is

clear that individual joinder in this case is impracticable. Proposed Class members can easily be

identified through Defendant's employment records.

63.     **Common Questions:** There are several questions of law and fact common to the

claims of Plaintiffs and the proposed Class members, and those questions predominate over any

questions that may affect individual proposed Class members. Common questions include, but are

not limited to, the following:

a.   whether Defendant, or an agent acting on behalf of Defendant, solicited,

14

FILED DATE: 8/14/2023 11:47 AM    2023CH07406

requested, captured or collected family medical history of prospective employees;

b. whether Defendant, or an agent acting on behalf of Defendant, solicited, requested, captured or collected family medical history of existing employees;

c. whether Defendant obtained genetic information from Plaintiffs and the Class by asking for family medical history; and

d. whether Defendant's solicitation, request, collection, or use of genetic information constituted a violation of GIPA.

64. **Typicality**: Plaintiffs' claims are typical of the claims of the proposed Class members. Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

65. **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

66. **Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Even if proposed Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

FILED DATE: 8/14/2023 11:47 AM    2023CH07406

### COUNT I
### VIOLATION OF 410 ILCS 513/25
### SOLICIT, REQUEST, AND/OR REQUIRE GENETIC INFORMATION OF A PERSON
### OR A FAMILY MEMBER OF A PERSON AS A CONDITION OF EMPLOYMENT OR
### PRE-EMPLOYMENT APPLICATION

67.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

68.     Defendant is a corporation that directly or indirectly employs individuals within the State of Illinois and therefore meets the definition of an "employer" under 410 ILCS 513/10.

69.     Family medical history includes the "manifestation or possible manifestation of a disease or disorder in a family member of [an] individual" and is incorporated into the definition of "genetic information" under 410 ILCS 513/10 and 45 C.F.R. § 160.103.

70.     Plaintiffs were individually asked to provide, and did provide, their family medical history as a condition of employment during the application and hiring process to work for Defendant.

71.     Defendant, or an agent acting on its behalf, solicited, requested, or required Plaintiffs to disclose family medical history as a condition of employment during the application and hiring process to work for Defendant.

72.     Defendant directly solicited or requested Plaintiffs to disclose family medical histories during a pre-employment physical and interview as a condition of employment during the application and hiring process to work for Defendant.

73.     Defendant failed to direct Plaintiffs, either verbally or in writing, not to provide genetic information when requested to provide their family medical history.

74.     Plaintiffs and the proposed Class members were aggrieved by Defendant's violations of their statutorily protected rights to privacy in their genetic information, as set forth in

FILED DATE: 8/14/2023 11:47 AM   2023CH07406

GIPA, when Defendant directly or indirectly solicited or requested them to disclose their genetic information as a condition of ongoing employment or a condition of a pre-employment application.

75.     By indirectly or directly soliciting or requesting Plaintiffs and the proposed Class members to provide their genetic information as described herein, Defendant violated Plaintiffs' and the proposed Class members' rights to privacy in their genetic information as set forth in GIPA.

76.     Because Defendant knew, or reasonably should have known, that soliciting or requesting family medical history from an employee in Illinois violated GIPA, its actions in violating GIPA were willful.

77.     On behalf of themselves and the proposed Class members, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the proposed Class by requiring Defendant to comply with GIPA as described herein; (3) statutory damages of $15,000 or actual damages, whichever is greater, for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2) or, in the alternative, statutory damages of $2,500 or actual damages, whichever is greater, for each negligent violation of GIPA pursuant to 410 ILCS 513/40(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(3).

## **PRAYER FOR RELIEF**

**Wherefore**, Plaintiffs, individually and on behalf of the proposed Class of similarly situated individuals, pray for an Order as follows:

A.      Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801 and certifying the proposed Class as defined herein;

B.      Designating and appointing Plaintiffs as representatives of the proposed Class and Plaintiffs' undersigned counsel as Class Counsel;

17

FILED DATE: 8/14/2023 11:47 AM   2023CH07406

C.    Declaring that Defendant's actions, as set forth above, violate GIPA;

D.    Awarding Plaintiffs and the proposed Class members statutory damages of $15,000 or actual damages, whichever is greater, for *each* intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2), or statutory damages of $2,500 or actual damages, whichever is greater, for *each* negligent violation of GIPA pursuant to 410 ILCS 513/40(1);

E.    Declaring that Defendant's actions, as set forth above, were intentional or reckless and/or declaring that Defendant's actions, as set forth above, were negligent;

F.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the proposed Class, including an Order prohibiting Defendant from soliciting, requesting and/or requiring genetic information as a condition of employment or in a pre-employment application pursuant to GIPA;

G.    Awarding Plaintiffs and the proposed Class members reasonable attorneys' fees and costs incurred in this litigation pursuant to 410 ILCS 513/40(3);

H.    Awarding Plaintiffs and the proposed Class pre- and post-judgment interest, to the extent allowable; and

I.    Granting all such other and further relief as the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a jury trial on all issues so triable.

Dated: August 14, 2023                  Respectfully submitted,

*/s/ Edward Wallace*
Edward A. Wallace
Mark R. Miller
Molly C. Wells
WALLACE MILLER
150 N. Wacker Drive, Suite 1100
Chicago, IL 60606
T. (312) 261-6193
E. eaw@wallacemiller.com
  mrm@wallacemiller.com
  mcw@wallacemiller.com
Firm ID: 65958

Elizabeth A. Brehm*

18

FILED DATE: 8/14/2023 11:47 AM   2023CH07406

Kyle McLean (SBN 6344126)
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
T. (212) 532-1091
E. ebrehm@sirillp.com
   kmclean@sirillp.com

*COUNSEL FOR PLAINTIFFS AND THE PROPOSED CLASS*

*(Pro Hac Vice* To Be Filed)

19