**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KERRY BRANSON and SHELLEY DOTSON, individually and on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br> v.<br><br>CATERPILLAR, INC.<br><br>        Defendant. | Case No. 1:23-cv-14329<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

**FIRST AMENDED CLASS ACTION COMPLAINT**

   Plaintiffs Kerry Branson and Shelley Dotson ("**Plaintiffs**"), by their undersigned attorneys, on their own behalf and on behalf of all others similarly situated, upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, bring this First Amended Class Action Complaint against Caterpillar, Inc. ("**Caterpillar**" or "**Defendant**") for its violations of Plaintiffs' privacy rights guaranteed under the Illinois Genetic Information Privacy Act, 410 Illinois Compiled Statute ("**ILCS**") 513 *et seq.* (hereinafter "**GIPA**"), and allege as follows:

**NATURE OF THE ACTION**

   1.  Unlocking the human genetic code came with it the potential for hitherto unfathomable medical development. It permitted individuals to learn in detail the possibilities that were hidden within their genome. For the first time, women can now learn whether they are predisposed to get breast cancer; families can trace their genetic lineage back thousands of years, and law enforcement can use DNA samples to identify criminals.

2.      However, all of this information can only be obtained if people are willing to allow sharing of genetic information, and that is only possible if people know that their genetic information will not be used against them in future employment, insurance or other situations. For example, few women would want to learn about a predisposition to breast cancer if that meant that they could be barred from certain jobs or prevented from obtaining life insurance.

3.      The Illinois Legislature enacted GIPA in 1998 with the goal to protect Illinois residents from having their genetic information being used against them in employment settings.

4.      Consistent with this goal, GIPA provides strong legal protections to ensure that Illinois residents can take advantage of the knowledge that can be gained from obtaining personal genetic information, without fear that this same information could be used against them by employers.

5.      Among its other valuable protections, GIPA prohibits employers from learning or using genetic information in making employment decisions. GIPA bars employers from asking about employees or potential employees' genetic information, prevents employers from obtaining this information from third parties, and forbids employers from using such information to affect the terms and conditions of employment.

6.      To accomplish this goal, GIPA employs a comprehensive definition of "genetic information" that includes information regarding an individual's family medical history.

7.      Despite GIPA's prohibitions, some companies in Illinois still ask their employees or applicants to provide protected family medical history when making hiring determinations and job assignments in blatant violation of the law.

8.     Defendant chose to repeatedly disregard Illinois' genetic privacy laws by asking its employees to provide genetic information in the form of family medical history to assist the companies in making employment decisions.

9.     Accordingly, Plaintiffs seek on behalf of themselves, and all of Defendant's other similarly situated employees in the state, an order: (i) requiring Defendant to cease the unlawful activities discussed herein; and (ii) awarding actual and/or statutory damages to Plaintiffs and the members of the proposed Class.

## PARTIES

10.     Plaintiff Kerry Branson is and was at all relevant times of employment with Defendant, an individual citizen of the State of Illinois. Mr. Branson currently resides in Decatur, Illinois.

11.     Plaintiff Shelley Dotson is and was at all relevant times of employment with Defendant, an individual citizen of the State of Illinois. Ms. Dotson currently resides in Decatur, Illinois.

12.     Defendant is a Delaware corporation. Caterpillar is headquartered in Irving, Texas and conducts business throughout this County, the State of Illinois, and the United States. Upon information and belief, Caterpillar employs over 1,000 employees within the State of Illinois. Caterpillar operates throughout Illinois across numerous locations, including "key offices" in Chicago, Peoria, Aurora, East Peoria, and Mossville.[1] Caterpillar also operates a component manufacturing facility at 27th & Pershing Road, Decatur, IL 62525 (the "**Decatur Facility**").

---

[1]  *See* Caterpillar's website of U.S. Locations, *available at* https://www.caterpillar.com/en/company/global-footprint/americas/united-states.html#accordion-1bd183d3ed-item-fe2f7b0c44-button.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

14.     The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

15.     This Court has jurisdiction over the Defendant because it conducts business in this District, and a substantial part of the unlawful events and practices which give rise to this action occurred in this District.

16.     This Court may exercise jurisdiction over the Defendant because it has sufficient minimum contacts in Illinois and purposefully avails itself of the markets within Illinois through the manufacture, processing and distribution of their products, and hiring of employees, thus rendering jurisdiction by this Court proper and necessary.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this judicial district and because Defendant has conducted the unlawful practices at issue in this action within this judicial district and has done business within this judicial district. Venue is also proper in this court pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to the Court's personal jurisdiction with respect to this action.

## ILLINOIS GENETIC INFORMATION PRIVACY ACT ("GIPA")

~~19.~~18.  During the 1990s, the U.S. government poured billions of dollars into the Human Genome Project in an attempt to map the entire human genetic code. When President Clinton announced the first successful "rough draft" of the Project in 2000, he hailed it as one of the great achievements of human history, and said: "Today we are learning the language with which God created life[.]"[2]

~~20.~~19.  However, like any great leap in human understanding, learning the meaning of people's genetics came with many concerns. One movie released around this time, the dystopian science fiction movie *Gattaca*, attempted to show how this new technology could be abused. The movie conjured a not-too-distant future where genetic discrimination was rampant. In the movie, companies segregated people based on their genetic profiles, those with better genetic profiles (i.e., genetically engineered humans) were eligible for professional employment, while others with less desirable genetics (e.g., susceptibility to heart disease or cancer) were unemployable or relegated to menial jobs. Since its release, the film has been regularly used in schools to show the possible misuses of genetic information.[3]

~~21.~~20.  Illinois stood at the forefront of protecting its citizens from the abuse of this technology when it first passed GIPA in 1998. According to the Illinois Legislature, the intent of GIPA is to encourage the public to embrace genetic testing by eliminating any perception that genetic information gleaned from those tests (such as family medical history) could later be used

---

[2] *Scientists Complete Rough Draft of Human Genome* (N.Y. Times June 26, 2000) *available at* https://archive.nytimes.com/www.nytimes.com/library/national/science/062600sci-human-genome.html?amp;sq=francis%252520collins&st=cse&scp=23.

[3] *What Do People Who Work in Genetics Think About Gattaca 25 Years After Its Release* (Slate Aug. 15, 2022) *available at* https://slate.com/technology/2022/08/gattaca-25th-anniversary-genetics-crispr.html.

against them. Limiting the use or requests for protected genetic information is a key component of health information privacy. 410 ILCS 513/5(1)-(5).

~~22.~~21.  The Illinois Legislature amended GIPA in 2008 to increase its protections and harmonize Illinois state law with the then-recently passed Federal Genetic Information Nondiscrimination Act of 2008 ("**GINA**"), 110 P.L. 233; *see also* 42 U.S.C. § 2000ff. The 2008 amendments to GIPA sought to further bar the practices of employers relating to the use of genetic information of employees, including such employees' family medical history.

~~23.~~22.  During discussions of the 2008 GIPA amendments, the Illinois Legislature recognized the importance of safeguarding family medical history due to the fact that it is akin to knowledge of genetic predispositions:

> I hope the [legislature] understands the importance of [family medical history]; it's becoming more and more important. Back in '96 or '97, I had a third generation ovarian cancer survivor that came to me with this issue. … If a woman has … the gene that causes breast cancer, she can have up to an 84 percent probability that she will develop breast cancer sometime in her life … it's important that we help people be able to know that information and know they won't be discriminated against in their employment …. Quite honestly, with genetic information we have today, we could identify a pool of people that … no one would want to employ. [GIPA] helps guarantee that we don't have that kind of discrimination occur.

Illinois House Transcript, 2008 Reg. Sess. No. 276, pp. 33-34.

~~24.~~23.  To accomplish the Illinois Legislature's goal of ensuring that genetic information is not used to negatively impact employees, GIPA adopted Congress' definition of "genetic information" that includes not just the narrow results of an individual's genetic tests, but also information regarding "[t]he manifestation of a disease or disorder in family members of such individual[.]" 410 ILCS 513/10; *see* 45 C.F.R. § 160.103.

6

25.24.  GIPA bars employers from directly or indirectly requesting or using genetic information in hiring, firing, demoting, or in determining work assignment or classifications of applicants or employees. Specifically, GIPA states: "An employer … shall not directly or indirectly do any of the following:

> (1) solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, … as a condition of employment, preemployment application…;
>
> (2) affect the terms, conditions, or privileges of employment, preemployment application, … or terminate the employment, … of any person because of genetic testing or genetic information with respect to the employee or family member…;
>
> (3) limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee because of genetic testing or genetic information with respect to the employee or a family member, …; and
>
> (4) retaliate through discharge or in any other manner against any person alleging a violation of this Act or participating in any manner in a proceeding under this Act.

410 Ill. Comp. Stat. 513/25(c).

26.25.  Section 25(e) of GIPA also bars employers from using genetic information in furtherance of a workplace wellness program benefitting employees unless:

> (1) health or genetic services are offered by the employer;
>
> (2) the employee provides written authorization in accordance with Section 30 of this Act;
>
> (3) only the employee or family member if the family member is receiving genetic services and the licensed health care professional or licensed genetic counselor involved in providing such services receive individually identifiable information concerning the results of such services; and

> (4) any individually identifiable information is only available for purposes of such services and shall not be disclosed to the employer except in aggregate terms that do not disclose the identity of specific employees.

410 Ill. Comp. Stat. 513/25(e).

~~27.~~26.  Even if an employer otherwise obtains genetic information lawfully, it still may not use or disclose the genetic information in violation of GIPA. 410 ILCS 513/25(j).

~~28.~~27.  In order to enforce these and other requirements, GIPA provides individuals with a broad private right of action, stating: "Any person aggrieved by a violation of this Act shall have a right of action … against an offending party."  410 ILCS 513/40(a). Under this private right of action, a party may recover, for each violation: (a) $2,500 or actual damages, whichever is greater, for a negligent violation, or $15,000 or actual damages, whichever is greater, for a willful violation; (b) reasonable attorneys' fees; and (c) "[s]uch other relief, including an injunction, as the … court may deem appropriate."  *Id.*

~~29.~~28.  Plaintiffs are not required to allege or prove actual damages in order to state a claim under GIPA, and they can seek statutory damages under GIPA as compensation for the injuries caused by Defendant. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, at ¶ 40, 432 Ill. Dec. 654, 129 N.E.3d 1197 (holding by the Illinois Supreme Court that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under [the Illinois Biometric Privacy Act ("**BIPA**")] in order to qualify as an 'aggrieved person' under BIPA); *see also Bridges v. Blackstone Grp., Inc.*, 2022 U.S. Dist. LEXIS 121205, at *8 (S. D. Ill. July 8, 2022) (holding that it is appropriate to apply BIPA's definition of "aggrieved person" used by the *Rosenbach* court to alleged violations of GIPA).

30.29.  Thus, GIPA provides valuable privacy rights, protections, and benefits to the citizens of Illinois and provides those citizens with the means to aggressively enforce those rights.

## PLAINTIFF SPECIFIC ALLEGATIONS

### PLAINTIFF KERRY BRANSON

31.30.  In or around March 2019, Mr. Branson submitted an application for the full-time, permanent position of Material Handler at the Decatur Facility.

32.31.  On or around March 4, 2019, during the application and hiring process, Caterpillar directly or indirectly solicited, requested, or required Mr. Branson to disclose his family medical history as a condition of employment.

33.32.  Specifically, on or around March 4, 2019, an individual who upon information and belief was an employee of Caterpillar indirectly or directly solicited, requested, or required Mr. Branson to disclose his family medical history as a condition of employment by requiring Mr. Branson to provide preexisting medical records from outside providers but failing to warn Mr. Branson that Caterpillar was not entitled to genetic information contained within such records.

34.33.  On or around March 4, 2019, Mr. Branson received an offer of employment conditioned upon successfully completing a pre-employment physical. The physical was conducted at the Decatur Facility by Caterpillar's in-house medical staff.

35.34.  On or around March 4, 2019, Mr. Branson presented to the Decatur Facility for the physical. Mr. Branson met with an individual from Caterpillar's security staff and was directed to Caterpillar's medical offices at the Decatur Facility. The medical offices were organized similar to an emergency room at a hospital and contained a central waiting room with a nurse's station as well as multiple examination rooms. Caterpillar's medical staff at the central nursing station requested medical information from Mr. Branson by requiring him to prepare handwritten

responses to a "Post Offer Medical Questionnaire" form which, among other things, asked about his medical history, including hypertension, cancer, diabetes, and cardiac issues, among other ailments. After completing the paperwork, Mr. Branson was directed to meet with a member of Caterpillar's medical staff one-on-one in a physical examination room within the medical offices at the Decatur Facility.

36.35.  After completing the physical portions of the examination, the medical staff verbally asked Mr. Branson questions about his medical conditions and history. When asking these questions, the medical staff had a file in front of them on their desk and made handwritten notes on the papers in the file as they asked these questions.

37.36.  After the physical was completed, Caterpillar's medical staff made an additional request for medical information from Mr. Branson by requesting Mr. Branson to provide copies of past medical records. The medical staff prepared an internal "Report of Medical Evaluation" form which confirmed that the staff member requested medical records from Mr. Branson. At the time that Caterpillar's medical staff requested such records, the Caterpillar employee never informed Mr. Branson that Caterpillar was not entitled to any genetic information within such records.

38.37.  Mr. Branson was not directed by the medical staff, or anyone else from Caterpillar, either verbally or in writing, to redact or refrain from providing genetic information on the medical records required to be produced to Caterpillar.

39.38.  The request for the production of medical records was a condition of employment and/or pre-employment application because Caterpillar required Mr. Branson to provide these records in order to be hired.

40.39.  Mr. Branson was hired by Caterpillar for the Material Handler position after completing all required steps in the hiring process. Mr. Branson's job duties involved strenuous physical labor. His job duties included performing a variety of functions to check, receive, and verify accuracy of Caterpillar's product, checking, storing, disbursing or filling orders for parts, materials, tools, equipment and supplies, and working with various source documents to verify the accuracy and conditions of parts.

41.40.  Also, on or around October 10, 2019, Mr. Branson underwent a physical examination by Caterpillar's medical staff as part of Caterpillar's workplace wellness program. During this workplace wellness program examination, Caterpillar's medical staff requested Mr. Branson to complete a "Caterpillar Health Screening History and Review" form. This form requested Mr. Branson's genetic information in the form of diseases which had manifested in his family members. Specifically, the form stated: "Please list any family history (parents or siblings) of coronary artery disease, diabetes, or cancer and age of onset[.]" In response, Mr. Branson disclosed genetic information, including conditions that his family members had been diagnosed with. Mr. Branson would not have volunteered his family members' medical histories if the medical staff had not asked Mr. Branson to do so.

42.41.  Mr. Branson did not provide prior, knowing, voluntary, and written authorization to Caterpillar for the use of his genetic information in furtherance of the workplace wellness program.

43.42.  Mr. Branson left Caterpillar's employment at the Decatur Facility in or around March 2023.

**PLAINTIFF SHELLEY DOTSON**

~~44.~~43.  In or around May 2023, Ms. Dotson submitted an application for the full-time, permanent position of Material Handler at the Decatur Facility.

~~45.~~44.  On or around May 23, 2023, during the application and hiring process, Caterpillar directly or indirectly solicited, requested, or required Ms. Dotson to disclose her family medical history as a condition of employment.

~~46.~~45.  Specifically, on or around May 23, 2023, an individual who upon information and belief was an employee of Caterpillar directly or indirectly solicited, requested, or required Ms. Dotson to disclose her family medical history as a condition of employment by requiring Ms. Dotson to provide preexisting medical records from outside providers but failing to warn Ms. Dotson that Caterpillar was not entitled to genetic information contained within such records.

~~47.~~46.  On or around May 23, 2023, Ms. Dotson received an offer of employment conditioned upon successfully completing a pre-employment physical. The physical was conducted at the Decatur Facility by Caterpillar's in-house medical staff.

~~48.~~47.  On or around May 23, 2023, Ms. Dotson presented to the Decatur Facility for the physical. Ms. Dotson met with an individual from Caterpillar's security staff and was directed to Caterpillar's medical offices at the Decatur Facility. The medical offices were organized similar to an emergency room at a hospital and contained a central waiting room with a nurse's station as well as multiple examination rooms. Caterpillar's medical staff at the central nursing station requested medical information from Ms. Dotson by requiring her to prepare handwritten responses to a "Post Offer Medical Questionnaire" form which, among other things, asked about her medical history, including hypertension, cancer, diabetes, and cardiac issues, among other ailments. After completing the paperwork, Ms. Dotson was directed to meet with a member of Caterpillar's

medical staff one-on-one in a physical examination room within the medical offices at the Decatur Facility.

49.48.  After completing the physical portions of the examination, the medical staff verbally asked Ms. Dotson questions about her medical conditions and history. When asking these questions, the medical staff had a file in front of them on their desk and made handwritten notes on the papers in the file as they asked these questions.

50.49.  After the physical was completed, Caterpillar's medical staff made an additional request for medical information from Ms. Dotson by requesting Ms. Dotson to provide copies of past medical records. The medical staff prepared an internal "Report of Medical Evaluation" form which confirmed that the staff member requested medical records from Ms. Dotson. At the time that Caterpillar's medical staff requested such medical records, the Caterpillar employee never informed Ms. Dotson that Caterpillar was not entitled to any genetic information within such records.

51.50.  Ms. Dotson was not directed by the medical staff, or anyone else from Caterpillar, either verbally or in writing, to redact or refrain from providing genetic information on the medical records required to be produced to Caterpillar.

52.51.  This request for the production of medical records was a condition of employment and/or pre-employment application because Caterpillar required Ms. Dotson to provide these records in order to be hired.

53.52.  Ms. Dotson was hired by Caterpillar for the Material Handler position after completing all required steps in the hiring process. Ms. Dotson's job duties involved strenuous physical labor. Her job duties included performing a variety of functions to check, receive, and verify accuracy of Caterpillar's product, checking, storing, disbursing or filling orders for parts,

materials, tools, equipment and supplies, and working with various source documents to verify the accuracy and conditions of parts.

54.53.  Ms. Dotson left Caterpillar's employment at the Decatur Facility in or around June 2023.

## **CATERPILLAR VIOLATES GIPA AS A MATTER OF COURSE**

55.54.  Based on Plaintiffs' experiences, they believe that, during the hiring process, Caterpillar asks employees and/or prospective employees to provide medical records from outside providers to Caterpillar as a condition of employment and/or as part of its hiring process but fails to inform those individuals that genetic information should be redacted from any records provided.

56.55.  Plaintiffs understand, on information and belief, that Caterpillar, or agents on its behalf, requests these records for the purpose of evaluating the risk that the individual may have inherited genetic conditions from family members, and then improperly uses that information when making its hiring decisions and staffing assignments.

57.56.  On information and belief, Caterpillar also requests genetic information from employees participating in a workplace wellness program in the form of family medical histories as part of an effort to avoid risk and/or liability for workplace injuries and/or deaths caused by genetic conditions, including but not limited to hypertension, cancer, heart conditions, diabetes, and stroke, which Caterpillar believes could be inherited and that could be exacerbated by workplace conditions, especially if these conditions are high-stress and/or physically demanding. Caterpillar does not obtain written authorizations from such employees for the use of this genetic information.

58.57.  Caterpillar was or should have been aware of its obligations under GIPA. Nevertheless, Caterpillar intentionally and/or recklessly requested Plaintiffs' genetic information in the form of their family medical histories in violation of Illinois law.

59.58.  The reckless and/or intentional nature of Caterpillar's violations of GIPA is evidenced by the instruction page for Caterpillar's "Post Offer Medical Questionnaire" form given to prospective employees during their pre-employment physicals. The form instructs prospective employees to refrain from providing genetic information in such individuals' handwritten responses on the history questionnaire in this form. However, Caterpillar did not provide this warning when it made an additional request for medical information in the form of medical records from outside treating providers.

60.59.  Moreover, Caterpillar failed to obtain written authorization from employees participating in its workplace wellness program for the use of genetic information in furtherance of the program, despite the fact that it was aware that it was prohibited from requesting this information as evidenced by the "Post Offer Medical Questionnaire" instructions.

61.60.  As a result, Caterpillar's violations were willful because it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of GIPA.

## CLASS ACTION ALLEGATIONS

62.61.  **Proposed Class Definition**: Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following class (the "**Class**") of similarly situated individuals, defined as follows:

63.62.  The Class brought by Plaintiffs consists of:

> All individuals in Illinois, within five years prior to the filing of this action, (1) who applied for employment with Defendant or were employed by Defendant, and (2) from whom Defendant, or an agent

> acting on behalf of Defendant, requested and/or obtained genetic
> information, including family medical history, in connection with
> the person's application for employment or the person's
> employment with Defendant.

Excluded from the class are Defendant's officers and directors, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

64.63.  Plaintiffs reserve the right to modify this class definition as they obtain relevant information, including employment records, through discovery.

65.64.  **Numerosity:** The exact number of class members is unknown and is not available to Plaintiffs at this time, but Defendant employs over 1,000 people in Illinois, and it is believed that all or most of those individuals will fall within the proposed Class. Therefore, it is clear that individual joinder in this case is impracticable. Proposed Class members can easily be identified through Defendant's employment records.

66.65.  **Common Questions:** There are several questions of law and fact common to the claims of Plaintiffs and the proposed Class members, and those questions predominate over any questions that may affect individual proposed Class members. Common questions include, but are not limited to, the following:

   a. whether Defendant, or an agent acting on behalf of Defendant, solicited, requested, captured or collected family medical history of prospective employees;

   b. whether Defendant, or an agent acting on behalf of Defendant, solicited, requested, captured or collected family medical history of existing employees;

   c. whether Defendant obtained genetic information from Plaintiffs and the Class by asking for family medical history; and

   d. whether Defendant's solicitation, request, collection, or use of genetic information constituted a violation of GIPA.

67.66.  **Typicality**: Plaintiffs' claims are typical of the claims of the proposed Class members. Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

68.67.  **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

69.68.  **Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Even if proposed Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

**COUNT I**
**VIOLATION OF 410 ILCS 513/25(C)(1)**
**SOLICIT, REQUEST, AND/OR REQUIRE GENETIC INFORMATION OF A PERSON OR A FAMILY MEMBER OF A PERSON AS A CONDITION OF EMPLOYMENT OR PRE-EMPLOYMENT APPLICATION**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

70.69.  Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

71.70.  Defendant is a corporation that directly or indirectly employs individuals within the State of Illinois and therefore meets the definition of an "employer" under 410 ILCS 513/10.

72.71.  Family medical history includes the "manifestation or possible manifestation of a disease or disorder in a family member of [an] individual" and is incorporated into the definition of "genetic information" under 410 ILCS 513/10 and 45 C.F.R. § 160.103.

73.72.  Plaintiffs were individually asked to provide their family medical history as a condition of employment during the application and hiring process to work for Defendant in the form of prior medical records from outside treating physicians.

74.73.  Defendant, or an agent acting on its behalf, solicited, requested, or required Plaintiffs to disclose family medical history as a condition of employment during the application and hiring process to work for Defendant.

75.74.  Defendant directly solicited or requested Plaintiffs to disclose family medical histories after completing a pre-employment physical and interview as a condition of employment during the application and hiring process to work for Defendant.

76.75.  Defendant failed to direct Plaintiffs, either verbally or in writing, not to provide genetic information when requested to provide medical records from outside physicians.

77.76.  Plaintiffs and the proposed Class members were aggrieved by Defendant's violations of their statutorily protected rights to privacy in their genetic information, as set forth in GIPA, when Defendant directly or indirectly solicited or requested them to disclose their genetic information as a condition of ongoing employment or a condition of a pre-employment application.

78.77.  By indirectly or directly soliciting or requesting Plaintiffs and the proposed Class members to provide their genetic information as described herein, Defendant violated Plaintiffs'

and the proposed Class members' rights to privacy in their genetic information as set forth in GIPA.

79.78. Because Defendant knew, or reasonably should have known, that soliciting or requesting family medical history from an employee in Illinois violated GIPA, its actions in violating GIPA were willful.

80.79. On behalf of themselves and the proposed Class members, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the proposed Class by requiring Defendant to comply with GIPA as described herein; (3) statutory damages of $15,000 or actual damages, whichever is greater, for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2) or, in the alternative, statutory damages of $2,500 or actual damages, whichever is greater, for each negligent violation of GIPA pursuant to 410 ILCS 513/40(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(3).

**COUNT II**
**VIOLATION OF 410 ILCS 513/25(E)**
**UNLAWFUL USE OF GENETIC INFORMATION IN FURTHERANCE OF A**
**WORKPLACE WELLNESS PROGRAM**
**(ON BEHALF OF PLAINTIFF KERRY BRANSON AND THE CLASS)**

81.80. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

82.81. Defendant is a corporation that directly or indirectly employs individuals within the State of Illinois and therefore meets the definition of an "employer" under 410 ILCS 513/10.

83.82. Family medical history includes the "manifestation or possible manifestation of a disease or disorder in a family member of [an] individual" and is incorporated into the definition of "genetic information" under 410 ILCS 513/10 and 45 C.F.R. § 160.103.

84.83.  Plaintiff Kerry Branson was individually asked to provide his family medical history in furtherance of a workplace wellness program.

85.84.  Defendant, or an agent acting on its behalf, used Mr. Branson's family medical history in furtherance of a workplace wellness program.

86.85.  Defendant directly solicited or requested Mr. Branson and the proposed Class members to disclose family medical histories on the "Caterpillar Health Screening History and Review" form related to their physical examination in furtherance of Defendant's workplace wellness program.

87.86.  Defendant failed to obtain written authorization from Mr. Branson and the proposed Class members for the use of their genetic information in furtherance of Defendant's workplace wellness program.

88.87.  Plaintiffs and the proposed Class members were aggrieved by Defendant's violations of their statutorily protected rights to privacy in their genetic information, as set forth in GIPA, when Defendant used their genetic information in furtherance of a workplace wellness program without obtaining written authorization to do so.

89.88.  By indirectly or directly soliciting or requesting Mr. Branson and the proposed Class members to provide their genetic information as described herein, Defendant violated Mr. Branson's and the proposed Class members' rights to privacy in their genetic information as set forth in GIPA.

90.89.  Because Defendant knew, or reasonably should have known, that soliciting or requesting family medical history from Illinois employees in furtherance of a workplace wellness program without written authorization violated GIPA, its actions in violating GIPA were willful.

91.90.  On behalf of Mr. Branson and the proposed Class members, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the proposed Class by requiring Defendant to comply with GIPA as described herein; (3) statutory damages of $15,000 or actual damages, whichever is greater, for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2) or, in the alternative, statutory damages of $2,500 or actual damages, whichever is greater, for each negligent violation of GIPA pursuant to 410 ILCS 513/40(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(3).

## PRAYER FOR RELIEF

**Wherefore**, Plaintiffs, individually and on behalf of the proposed Class of similarly situated individuals, pray for an Order as follows:

A.   Finding this action satisfies the prerequisites for maintenance as a class action set forth in Federal Rule of Civil Procedure 23 and certifying the proposed Class as defined herein;

B.   Designating and appointing Plaintiffs as representatives of the proposed Class and Plaintiffs' undersigned counsel as Class Counsel;

C.   Declaring that Defendant's actions, as set forth above, violate GIPA;

D.   Awarding Plaintiffs and the proposed Class members statutory damages of $15,000 or actual damages, whichever is greater, for *each* intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2), or statutory damages of $2,500 or actual damages, whichever is greater, for *each* negligent violation of GIPA pursuant to 410 ILCS 513/40(1);

E.   Declaring that Defendant's actions, as set forth above, were intentional or reckless and/or declaring that Defendant's actions, as set forth above, were negligent;

F.   Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the proposed Class, including an Order prohibiting Defendant from soliciting, requesting and/or requiring genetic information as a condition of employment or in a pre-employment application pursuant to GIPA;

G. Awarding Plaintiffs and the proposed Class members reasonable attorneys' fees and costs incurred in this litigation pursuant to 410 ILCS 513/40(3);

H. Awarding Plaintiffs and the proposed Class pre- and post-judgment interest, to the extent allowable; and

I. Granting all such other and further relief as the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a jury trial on all issues so triable.

Dated: November 17, 2023    Respectfully submitted,

        */s/ Kyle D. McLean*
        Kyle D. McLean (SBN 6344126)
        SIRI & GLIMSTAD LLP
        700 S. Flower Street, Suite 1000
        Los Angeles, CA 90017
        T. (213) 376-3739
        E. kmclean@sirillp.com

        David J. DiSabato
        SIRI & GLIMSTAD LLP
        745 Fifth Avenue, Suite 500
        New York, NY 10151
        T. 212-532-1091
        E. ddisabato@sirillp.com

        Edward A. Wallace
        Mark R. Miller
        Molly C. Wells
        WALLACE MILLER
        150 N. Wacker Drive, Suite 1100
        Chicago, IL 60606
        T. (312) 261-6193
        E. eaw@wallacemiller.com
         mrm@wallacemiller.com
         mcw@wallacemiller.com

        *COUNSEL FOR PLAINTIFFS AND THE PUTATIVE CLASS*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 17, 2023 I caused the foregoing First Amended Class Action Complaint to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

*/s/ Kyle D. McLean*