**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KERRY BRANSON and SHELLEY DOTSON, individually and on behalf of themselves and all others similarly situated, | Case No. 23-cv-14329 |
| Plaintiffs, | |
| v. | District Court Judge Manish S. Shah |
| CATERPILLAR INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CATERPILLAR INC.'S
RULE 12(B)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

DATED: January 22, 2024

By: _s/ Ada W. Dolph_

Ada W. Dolph
Paul Yovanic, Jr.
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
(p) 312-460-5000
(f) 312-460-7000
adolph@seyfarth.com
pyovanic@seyfarth.com

*Attorneys for Caterpillar Inc.*

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

        A.      The Illinois Genetic Information Privacy Act (GIPA) ........................... 3

        B.      The Caterpillar Inc. Employee Health, Life and Disability Benefit
                Program and Wellness Benefits Offered Under the Program ................ 4

        C.      Plaintiff Kerry Branson ........................................................................... 5

        D.      Plaintiff Shelley Dotson .......................................................................... 7

        E.      The Claims in the Complaint ................................................................... 7

III.    LEGAL STANDARD ........................................................................................ 8

IV.     ARGUMENT ................................................................................................... 10

        A.      Family medical history and medical conditions are not genetic information
                under GIPA. ........................................................................................... 10

        B.      Even if family medical history constitutes genetic information, it was not
                solicited *as a condition of employment,* as required to be actionable under
                GIPA. ..................................................................................................... 12

        C.      Branson's Purported State Law Claims And Remedies Under Count II Are
                Preempted By ERISA. ........................................................................... 15

                1.      ERISA Preempts All Claims Related To An Employee Benefit
                        Plan. ........................................................................................... 15

        D.      Plaintiffs Have Not Adequately Alleged That Caterpillar Violated GIPA
                Intentionally or Recklessly. .................................................................. 17

V.      CONCLUSION ................................................................................................ 19

**TABLE OF AUTHORITIES**

<b>Page(s)</b>

**Cases**

*Advanced Physical Med. of Yorkville, Ltd. v. Allied Benefit Sys., Inc.*,
No. 22-cv-02972, 2023 WL 2631723 (N.D. Ill. Mar. 24, 2023) ...............................................9

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)...............................................................................................................16

*Akinlemibola v. Penn. Higher Ed. Assistance*,
No. 16-cv-5291, 2016 WL 4191755 (N.D. Ill. Aug. 9, 2016) .................................................10

*Argenbright v. Hopewell Sch. Inc.*,
Case No. 2023 CH 10227 (Cir. Ct. of Cook Cnty., Illinois)....................................................1

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).........................................................9

*Baum v. Dunmire Prop. Mgmt., Inc.*,
No. 21-CV-00964, 2022 WL 889097 (D. Colo. 2022)............................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).................................................8, 9, 11

*Bell v. PSS World Medical, Inc.*,
No. 12-CV-381, 2012 WL 6761660 (M.D. Fla. Dec. 7, 2012).................................................10

*Berry v. Loretto Hosp.*,
Case No. 2023 CH 8032 (Cir. Ct. of Cook Cnty., Illinois).......................................................1

*Chemetall GMBH v. ZR Energy, Inc.*,
320 F.3d 714 (7th Cir. 2003) .....................................................................................................9

*Conner-Goodgame v. Wells Fargo Bank*,
No. 2:12-CV-03426, 2013 WL 5428448 (N.D. Ala. 2013)......................................................12

*Di Joseph v. Standard Ins. Co.*,
776 F. App'x. 343 (7th Cir. 2019) (unpublished) ...................................................................15

*Duignan v. City of Chicago*,
275 F. Supp. 3d 933 (N.D. Ill. 2017) ......................................................................................12

*Dumas v. Hurley Med. Ctr.*,
837 F. Supp. 2d 655 (E.D. Mich. 2011)...................................................................................11

*E.E.O.C. v. Concentra Health Servs., Inc.*,
    496 F.3d 773 (7th Cir. 2007) .........................................................................9

*Erdelt v. U.S.*,
    715 F.Supp. 278 (D.N.D. 1989) ....................................................................13

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
    463 U.S. 1 (1983) .........................................................................................15

*Graves v. Brookfield Suites Hotel & Convention Ctr.*,
    No. 11-CV-01060, 2012 WL 3941774 (E.D. Wis. Sept. 10, 2012)...............11

*Green v. Whataburger Rests. LLC*,
    No. 5:17-CV-243, 2018 WL 6252532 (W.D. Tex. 2018)..........................11, 12

*Jauquet v. Green Bay Area Cath. Educ., Inc.*,
    996 F.3d 802 (7th Cir. 2021) .......................................................................18

*Kanne v. Conn. Gen. Life Ins. Co.*,
    867 F.2d 489 (9th Cir. 1988), *cert. denied*, 492 U.S. 906 (1989)...............17

*Kukovec v. Estée Lauder Co., Inc.*,
    No. 22-CV-1988, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022) (Shah, J.) .....................18, 19

*Mazera v. Varsity Ford Mgmt. Svcs., LLC*,
    565 F.3d 997 (6th Cir. 2009) .......................................................................13

*Meeks v. United Parcel Serv. Inc.*,
    Case No. 2023 CH 8896 (Cir. Ct. of Cook Cnty., Illinois).........................1

*Metro. Life Ins. Co. v. Massachusetts*,
    471 U.S. 724 (1985).....................................................................................16

*Metro. Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987).......................................................................................16

*Mondovi Dairy Sys., Inc. Emp. Benefit Plan v. Blue Cross & Blue Shield United of Wis.*,
    No. 15-CV-826, 2016 WL 109965 (E.D. Wis. Jan. 8, 2016) ....................17

*Munnerlyn v. Installed Building Products, LLC, et al.*,
    No. 1:20-CV-225, 2020 WL 2528547 (W.D. Tx. May 18, 2020).............12

*Panaras v. Liquid Carbonic Indus. Corp.*,
    74 F.3d 786 (7th Cir. 1996) .........................................................................17

*Petropoulos v. City of Chicago*,
    448 F. Supp. 3d 835 (N.D. Ill. 2020) ...........................................................18

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987)........................................................................................................16

*Poore v. Peterbilt of Bristol, LLC.*,
852 F. Supp. 2d 727 (W.D. Va. 2012) .....................................................................12

*Post v. Commissioner of Internal Revenue*,
No. 15355-17S, 2021 WL 1911699 (T.C. May 12, 2021)......................................13

*Rice v. Panchal*,
65 F.3d 637 (7th Cir. 1995) .......................................................................................16

*Rose v. Vanity Fair Brands, LP*,
No. 13-cv-167, 2013 WL 1752705 (N.D. Ill. Apr. 23, 2013)................................10

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983)................................................................................................15, 16

*Smith v. Blue Cross & Blue Shield United of Wis.*,
959 F.2d 655 (7th Cir. 1992) .....................................................................................17

*Soto v. City of Chicago*,
No. 20 C 1805, 2020 WL 6321939 (N.D. Ill. Oct. 28, 2020).................................14

*Sound of Music Co. v. Minn. Mining & Mfg. Co.*,
477 F.3d 910 (7th Cir. 2007) .....................................................................................10

*Stewart v. Aramark Servs. Inc.*,
Case No. 23 CH 8859 (Cir. Ct. of Cook Cnty., Illinois)..........................................1

*Tedrow v. Franklin Twp. Cmty. Sch. Corp.*,
No. 1:21-CV-453, 2023 WL 3602712 (S.D. Ind. May 23, 2023)....................11, 14

*Tomczyk v. Blue Cross & Blue Shield of Wis.*,
715 F. Supp. 914 (E.D. Wisc. 1989), *aff'd*, 951 F.2d 771 (7th Cir. 1991)..............15

*Trochuk v. Patterson Companies, Inc.*,
851 F. Supp. 2d 1147 (S.D. Ill. 2012)...................................................................9, 13

*Troxtell v. Absopure Water Co.*,
Case No. 23 CH 8860  (Cir. Ct. of Cook Cnty., Illinois)..........................................1

*Venture Associates Corp. v. Zenith Data Systems Corp.*,
987 F.2d 429 (7th Cir. 1993) .......................................................................................9

*Whirlpool Fin. Corp. v. GN Holdings, Inc.*,
873 F. Supp. 111 (N.D. Ill. 1995), *aff'd*, 67 F.3d 605 (7th Cir. 1995) ...................14

**Statutes**

29 U.S.C. § 1002(1) ...................................................................................................17

29 U.S.C. § 1132 .......................................................................................................16

29 U.S.C. § 1144 .......................................................................................................15

29 U.S.C. § 1144(a) ..............................................................................................15, 16

29 U.S.C. § 1144(c)(1) ...............................................................................................15

Employee Retirement Income Security Act of 1974 ........................................... *passim*

Genetic Information Nondiscrimination Act in 2008, 122 Stat. 881 ..................... *passim*

Health Insurance Portability and Accountability Act of 1996 .....................................3

Illinois Biometric Information Privacy Act, 740 ILCS 14/*et seq.* ...............................19

Illinois Genetic Information Privacy Act, 410 ILCS 513/*et seq.* .......................... *passim*

**Other Authorities**

29 C.F.R. § 1635.8(b)(1)(i)(B) ...................................................................................14

45 C.F.R. 160.103 ........................................................................................................3

Fed. R. Civ. P. 8(a) .....................................................................................................8

Fed. R. Civ. P. 8(a)(2) .................................................................................................8

Fed. R. Civ. P. 9(b) ...................................................................................................19

Fed. R. Civ. P. 12(b)(6) ...........................................................................................8, 9

## I.    **INTRODUCTION**

Plaintiffs' First Amended Class Action Complaint ("Complaint" or "Compl.," Dkt. No. 17) should be dismissed with prejudice because even taking all well-pleaded factual allegations as true, Plaintiffs do not state viable claims under the Illinois Genetic Information Privacy Act ("GIPA," 410 ILCS 513).[1]

Plaintiffs Kerry Branson and Shelley Dotson, both former employees who worked at Caterpillar's Decatur, Illinois, facility, bring this class action lawsuit alleging that Caterpillar violated GIPA when it purportedly solicited their family medical history and asked them to obtain certain of their own medical documents so that it could determine their fitness to perform the jobs for which they had been hired. Branson further alleges that Caterpillar violated GIPA when it purportedly solicited family medical history in furtherance of a workplace wellness program.

*First*, Plaintiffs' claims fail as a matter of law because they fail to establish that the information purportedly sought falls under the definition of "genetic information," as defined by GIPA. A request that an employee obtain her own medical records pertaining to a past injury from his or her own physician is not a request for "genetic information" and neither is an alleged request for an employee's "family medical history." GINA—with which GIPA is required to adhere— provides that there is a clear distinction between common "medical conditions" and "genetic information." Here, the information allegedly sought from Plaintiffs was simply common "medical

---

[1] This lawsuit is but one of a recent campaign by Plaintiff's counsel to pursue putative class actions under the GIPA. In 2023 alone, Plaintiffs' counsel filed at least 33 cookie-cutter putative class actions under the statute, alleging that the employer violated GIPA by inquiring about an applicant's family medical history. *See, e.g., Argenbright v. Hopewell Sch. Inc.*, Case No. 2023 CH 10227  (Cir. Ct. of Cook Cnty., Illinois); *Meeks v. United Parcel Serv. Inc.*, Case No. 2023 CH 8896  (Cir. Ct. of Cook Cnty., Illinois); *Stewart v. Aramark Servs. Inc.*, Case No. 23 CH 8859 (Cir. Ct. of Cook Cnty., Illinois); *Troxtell v. Absopure Water Co.*, Case No. 23 CH 8860  (Cir. Ct. of Cook Cnty., Illinois); *Berry v. Loretto Hosp.*, Case No. 2023 CH 8032  (Cir. Ct. of Cook Cnty., Illinois). Plaintiffs' counsel also created an online survey designed to attract new GIPA clients: https://www.sirillp.com/gipa-survey/.

conditions" which are not protected from disclosure by GIPA.

*Second*, despite Plaintiffs' claim that they were never provided notice that they should not disclose genetic information prior to Caterpillar allegedly soliciting the information, both Plaintiffs signed questionnaires[2] at their post-offer examinations which specifically informed them that they should *not* disclose genetic information if asked. It is well settled that where the documents incorporated into the complaint contradict the allegations of the complaint, the documents control. Accordingly, Plaintiffs' claim that they were never on notice that they should not provide Caterpillar with genetic information can and should be rejected by the Court.

*Third*, Plaintiff Branson's claim alleging improper administration of a wellness exam is solidly preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA completely preempts all state law claims and remedies that relate to and attempt to regulate an ERISA plan.

*Fourth*, Plaintiffs' claim of reckless or intentional violations of GIPA should be dismissed because they are alleged only in conclusory fashion and contradicted by Plaintiffs' own signed questionnaires. This Court has previously concluded that a plaintiff must do more than merely parrot the statute that a defendant acted with intent or recklessly when it violated the statute. Consequently, Plaintiffs' claim of intentional and/or reckless conduct should also be dismissed from the Complaint.

In sum, Plaintiffs' allegations do not state a viable claim under GIPA and should be dismissed with prejudice.

---

[2] The questionnaires are referenced in, and central to Plaintiffs' claims, and not disputed, and therefore, the Court may consider them without changing the motion to dismiss to one for summary judgment. Further, to protect the privacy of Plaintiffs, only the first page of each questionnaire is attached, but Plaintiffs' counsel have been provided with the full questionnaire. Should the Court desire, Defendant could also file the entire questionnaires under seal.

## II.    <u>BACKGROUND</u>

### A.    The Illinois Genetic Information Privacy Act (GIPA)

The Illinois Legislature enacted GIPA in 1998 to protect individuals who "are deterred from seeking genetic testing because of fear that the result will be disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner." GIPA, 513/5(2). Following the federal enactment of the Genetic Information Nondiscrimination Act in 2008, 122 Stat. 881 ("GINA"), Illinois amended GIPA to align it with GINA. GIPA was amended to provide that covered entities "shall treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law, including … [GINA] . . . ." GIPA, 513/25(a). GIPA's definition of "genetic information" was modified to have "the meaning ascribed to it under HIPAA [the Health Insurance Portability and Accountability Act], as specified under 45 C.F.R. 160.103." *Id.*, 513/10. This federal regulation in turn defines "genetic information" as "information about: (i) the individual's genetic tests; (ii) the genetic tests of family members of the individual; (iii) the manifestation of a disease or disorder in family members of such individual; or (iv) any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual." 45 CFR 160.103.

GIPA states in relevant part that an employer shall not directly or indirectly:

(1) solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, or administer a genetic test to a person or a family member of the person as a condition of employment, preemployment application, labor organization membership, or licensure; . . .

GIPA, 513/25(c).

With respect to wellness programs, GIPA states that an employer shall not use genetic information or genetic testing in furtherance of a workplace wellness program unless:

(1)      health or genetic services are offered by the employer;

(2)     the employee provides written authorization in accordance with Section 30 of this Act;

(3)     only the employee or family member if the family member is receiving genetic services and the licensed health care professional or licensed genetic counselor involved in providing such services receive individually identifiable information concerning the results of such service; and

(4)     any individually identifiable information is only available for purposes of such services and shall not be disclosed to the employer except in aggregate terms that do not disclose the identity of specific employees.

GIPA, 513/25(e).

Under GIPA, as in GINA, "inadvertently requesting family medical history by an employer … does not violate this [statute]." GIPA, 513/25(g).

**B.     The Caterpillar Inc. Employee Health, Life and Disability Benefit Program and Wellness Benefits Offered Under the Program**

The Caterpillar Inc. Employee Health, Life and Disability Benefit Program (the "Program") clearly contemplates that it is governed by ERISA. (The plan document for the Program is attached as **Exhibit C**, and its correlated Summary Plan Description is attached as **Exhibit D**). For instance, Section 10.3 of the Program plan document regarding "Claims Procedure," provides:

Claims under the Program shall be administered in accordance with claims procedures adopted by the Plan Administrator, in its sole discretion. Such claims procedures shall comply with Section 503 of ERISA . . . .

Plan § 10.3, at p. 99. Section 10.5 explains that "any court action to enforce or clarify rights under the Program under section 502(a) of ERISA" must be brought within six months of exhausting the Program's claim procedures and in the U.S. District Court for the Central District of Illinois. *Id.* § 10.5, at p. 99. Section 11.1 of the Program plan document (the "Plan") explains that the Company administers the Program in its capacity as a named fiduciary and "in accordance with the applicable fiduciary standards."  Plan §§ 11.1, 11.2, at p. 100.

In turn, the Program's Summary Plan Description (SPD), a document required to be

provided to participants under ERISA, contains a "Statement of ERISA Rights," detailing a participant-employee's rights under the law. SPD at pp. 128-29.

The Plan further provides that wellness benefits may be offered under the Program to eligible Employee-participants:

> **Wellness Benefits**. The Plan Administrator, in its sole discretion, may provide certain eligible Employees with wellness benefits. If wellness benefits are offered, the Plan Administrator will provide such eligible Employees with a communication describing the wellness benefits.

Plan, § 5.3(gg) at p. 67. The SPD provides in turn:

> **WELLNESS EXAMS**
>
> The Company encourages employees to get periodic general medical wellness exams. For this reason, the Company provides you the opportunity to have a general medical wellness exam at no additional cost to you. . . . To determine if this benefit is offered to employees at your facility, contact the Wellness Exam Coordinator . . . or Corporate Medical.

SPD, at p. 33. Under a section titled "Incentives to You," the SPD explains that "[s]ometimes the Claims Administrator may offer coupons or other incentives to encourage you to participate in various wellness programs or certain disease management programs. The decision about whether to participate is yours alone but the Company recommends that you discuss participating in such programs with your Physician."  SPD, at p. 126.

### C.      Plaintiff Kerry Branson

Branson alleges that he submitted an employment application for full-time employment with Caterpillar, at its Decatur facility, in or around March 2019. Compl. ¶ 30. Branson further alleges that on or around March 4, 2019, "Caterpillar directly or indirectly solicited, requested, or required Mr. Branson to disclose his family medical history as a condition of employment." *Id*. ¶ 31. On or around that same day, Branson alleges that, during a pre-employment physical at the Caterpillar Decatur facility, he was *"requir[ed] []* to prepare handwritten responses to a 'Post-

Offer Medical Questionnaire' form which, among other things, asked about his medical history, including hypertension, cancer, diabetes, and cardiac issues, among other ailments." *Id*. ¶ 34 (emphasis added). Branson further alleges that, after completion of his physical, Caterpillar's medical staff made an additional request for his past medical records. *Id*. ¶ 36. Branson maintains that, at the time that Caterpillar purportedly requested the past medical records, he was never informed that Caterpillar was not entitled to any genetic information within such records. *Id*. He further maintains that the medical staff that examined him did not inform him, "either verbally or in writing, to redact or refrain from providing genetic information." *Id*. ¶ 37.

However, the Post Offer Medical Questionnaire that Branson completed that day (i.e. the day of the physical examination and request for past medical records), prominently features this statement:

> The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of employees or their family members. To comply with this law, we ask that you not provide any genetic information when responding to this request for medical information. "Genetic information", as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, and the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

*See* Compl. ¶ 34; *see also* **Exhibit A,** containing Branson's signature.

Branson alleges that on or around October 10, 2019, he underwent a physical examination by Caterpillar's medical staff as part of a workplace wellness program. *Id*. ¶ 40. Branson maintains that Caterpillar's medical staff requested him to complete a "Caterpillar Health Screening History and Review" form, which requested his "genetic information in the form of diseases which had manifested in his family members." *Id*. Again, and despite voluntarily participating in the wellness program, Branson alleges that he did not provide "prior, ___**knowing, voluntary,**___ and written authorization to Caterpillar for the use of his genetic information in furtherance of the workplace wellness program." *Id*. ¶ 41 (emphasis added).

### D.     Plaintiff Shelley Dotson

Dotson alleges that she submitted an employment application for full-time employment with Caterpillar, at its Decatur Facility, on or around May 2023. *Id*. ¶ 43. Dotson alleges that on our around May 23, 2023, "Caterpillar directly or indirectly solicited, requested, or required Ms. Dotson to disclose her family medical history as a condition of employment." *Id*. ¶ 44. On or around that same day, Dotson also alleges that Caterpillar directly or indirectly solicited, requested, or required her to disclose her family medical from outside providers but failed to warn her that Caterpillar was not entitled to genetic information contained within the records. *Id*. ¶ 45. During a post-offer physical at the Caterpillar Decatur facility, Dotson also alleges that she was asked "to prepare handwritten responses to a 'Post Offer Medical Questionnaire' which, among other things, asked about her medical history, including hypertension, cancer, diabetes, and cardiac issues, among other ailments." *Id*. ¶ 47. Dotson maintains that, at the time that Caterpillar purportedly requested the past medical records, she was never informed that Caterpillar was not entitled to any genetic information within such records. *Id*. ¶ 49. Caterpillar allegedly did not inform her, "either verbally or in writing, to redact or refrain from providing genetic information." *Id*. ¶ 50.

However, the Post Offer Medical Questionnaire that Dotson completed that day contains the same clear statement that Branson's Questionnaire contained, instructing the employee not to provide family medical history.  *See* Compl. ¶ 47; ***see also*** **Exhibit B,** containing Dotson's signature**.**

### E.     The Claims in the Complaint

The Complaint asserts two claims. In Count I, Plaintiffs claim that Caterpillar violated Section 25(c)(1) of GIPA because they were asked to obtain medical documentation directly from their doctors without Caterpillar first advising them that they should not provide genetic information. *Id*. ¶ 72. Plaintiffs maintain that Caterpillar failed to direct them, either verbally or in

writing, not to provide genetic information when requested to provide medical records from outside physicians. *Id*. ¶ 75. Therefore, according to Plaintiffs, Caterpillar "knew, or reasonably should have known, that soliciting or requesting family medical history from an employee in Illinois violated GIPA" and that "its action in violating GIPA were willful." *Id*. ¶ 78.

Count II, brought only by Branson, alleges that Section 25(e) of GIPA was violated because he was asked to provide his family medical history in furtherance of a workplace wellness program without first obtaining written authorization from Branson. *Id*. ¶¶ 83, 86.

Importantly, after the examinations occurred, both Plaintiffs were placed into the same Caterpillar positions for which they were hired. *Id.* ¶¶ 39, 52.

Plaintiffs allege that Caterpillar also violated the aforementioned subsections of GIPA with respect to the putative class members. *Id*. ¶¶ 61-68. Plaintiffs allege that they "and the proposed Class Members were aggrieved by [Caterpillar's] violations of their statutory protected rights to privacy in their genetic information, as set forth in GIPA, when [Caterpillar]:" (1) directly or indirectly solicited or requested them to disclose their genetic information as a condition of ongoing employment or a condition of a pre-employment application" (Count I) and "used their genetic information in furtherance of a workplace wellness program without obtaining written authorization to do so" (Count II). *Id*. ¶¶ 76, 87.

III.   **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007) (citation omitted). Further, the factual allegations in the complaint must be sufficient to raise the

possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1955)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1955). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 127 S.Ct. at 1955.

In considering a motion to dismiss, the Court may also consider documents that are central to Plaintiffs' claim. *See Advanced Physical Med. of Yorkville, Ltd. v. Allied Benefit Sys., Inc.*, No. 22-cv-02972, 2023 WL 2631723, *4 n.2 (N.D. Ill. Mar. 24, 2023) (citation omitted) ("District courts, however, have discretion to consider certain documents that are referred to in the complaint, authentic, and central to plaintiff's claims without converting the motion to dismiss to a motion for summary judgment.") Consequently, then, the Court may also "consider documents attached to a defendant's motion to dismiss, if those documents 'are referenced to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Trochuk v. Patterson Companies, Inc.*, 851 F. Supp. 2d 1147, 1153 (S.D. Ill. 2012) (quoting *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 718 n.4 (7th Cir. 2003). Because the Complaint references "paperwork" signed by each Plaintiff (*see* Compl. ¶¶ 34, 47), their medical paperwork that was indisputably completed as part of the post-offer examination is incorporated into the Complaint and this Court has discretion to consider it on a motion to dismiss. (*See* **Exhibits A and B,** containing Plaintiffs' signatures**).**

Critically, where the complaint and documents incorporated therein establish that the plaintiff cannot state a cause of action, the complaint should be dismissed *with prejudice*. *See*

9

*Akinlemibola v. Penn. Higher Ed. Assistance,* No. 16-cv-5291, 2016 WL 4191755, at *3 (N.D. Ill. Aug. 9, 2016) (dismissing lawsuit with prejudice where the face of the complaint, when analyzed with the documents attached thereto, result in any amendment being futile); *Rose v. Vanity Fair Brands, LP*, No. 13-cv-167, 2013 WL 1752705, at *4 (N.D. Ill. Apr. 23, 2013) (citing *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 922 (7th Cir. 2007)) (dismissing lawsuit with prejudice where plaintiff fails to establish nexus between claim and injury, such that amendment would be futile).

## IV.   ARGUMENT

### A.   Family medical history and medical conditions are not genetic information under GIPA.

Even if we presume it happened, an applicant's post-hire disclosure of a family member's assumed medical diagnosis is simply not the type of genetic information the Illinois legislature intended to protect under GIPA. As noted, Plaintiffs allege that Caterpillar violated GIPA Section 25(c)(1) because it solicited "family medical history" and failed to direct them, "either verbally or in writing, not to provide genetic information when requested to provide medical records from outside physicians." *Id*. ¶ 75. Branson also alleges that Caterpillar violated Section 25(e) of GIPA when it obtained Branson's family medical history in furtherance of a workplace wellness program. *Id*. ¶¶ 82-85.

However, Plaintiffs' mere conclusory statements equating medical conditions or family medical history to "genetic information" are insufficient to state a claim as a matter of law. In *Bell v. PSS World Medical, Inc.*, No. 12-CV-381, 2012 WL 6761660, at *2 (M.D. Fla. Dec. 7, 2012), for example, the plaintiff alleged her employer violated GINA by, *inter alia*, disclosing her "confidential information" and "confidential medical conditions." The defendant filed a motion to dismiss, arguing that the "plaintiff's minimal factual allegations related to her GINA claim [were]

insufficient because not all confidential medical information is genetic information protected by GINA." *Id*. The court agreed. It held that the plaintiff "failed to properly allege a valid claim under GINA" because she ""failed to provide any basis, factual or otherwise, for the Court to reasonably infer that her hyperthyroidism, the 'confidential information,' or the 'confidential medical conditions' equate to genetic testing and/or genetic information." *Id*. at *3. *Bell* demonstrates that, at a minimum, a plaintiff must allege facts demonstrating that the information at issue is genetic information. *Id.*; *see also Tedrow v. Franklin Twp. Cmty. Sch. Corp.*, No. 1:21-CV-453, 2023 WL 3602712 (S.D. Ind. May 23, 2023) (dismissing GINA claim where plaintiff showed the employer requested medical information but failed to allege that the information fit GINA's definition of genetic information); *Graves v. Brookfield Suites Hotel & Convention Ctr.*, No. 11-CV-01060, 2012 WL 3941774 (E.D. Wis. Sept. 10, 2012) (dismissing GINA claim because the complaint did not describe "any genetic information about [the plaintiff] that was disclosed to [the] defendant"); *Dumas v. Hurley Med. Ctr.*, 837 F. Supp. 2d 655 (E.D. Mich. 2011) (dismissing GINA claim where "disclosed information" did not fall under the genetic information definition under GINA).

Here, Plaintiffs fail to establish that the information they allegedly provided is genetic information. As stated, Count I alleges that Caterpillar violated GIPA because it did not direct Plaintiffs, "either verbally or in writing, not to provide genetic information when requested to provide medical records from outside physicians." Compl. ¶ 75. However, Caterpillar requesting an applicant to obtain their own medical records from outside physicians does not by itself constitute the solicitation of genetic information. The case of *Green v. Whataburger Rests. LLC*, No. 5:17-CV-243, 2018 WL 6252532 (W.D. Tex. 2018) is instructive on this issue. In dismissing the plaintiff's GINA claim, the court held that "Plaintiff d[id] not allege any plausible factual support that would allow the Court to infer that either her or her daughter's 'medical history' or

'genetic information' constitutes 'genetic testing' or 'genetic information' ...." and therefore dismissed the claims. *Id*. at *2. The same result is required here.

Count II also fails because Branson does not establish that the "medical history" provided equates to "genetic information" covered under GIPA. Courts have recognized that there is "a clear distinction" between medical conditions such as epilepsy, Huntington's Disease, multiple sclerosis, COVID-19, acquired immunodeficiency syndrome ("AIDS"), and genetic information unlawfully used by an employer. Only genetic information can be the basis for a claim under GIPA. *See Munnerlyn v. Installed Building Products, LLC, et al.*, No. 1:20-CV-225, 2020 WL 2528547 (W.D. Tx. May 18, 2020) (holding that epilepsy does not qualify as genetic information under GINA); *Duignan v. City of Chicago*, 275 F. Supp. 3d 933 (N.D. Ill. 2017) (holding that Huntington's disease does not qualify as genetic information); *Poore v. Peterbilt of Bristol, LLC.*, 852 F. Supp. 2d 727 (W.D. Va. 2012) (holding that multiple sclerosis diagnosis does not qualify as genetic information); *Baum v. Dunmire Prop. Mgmt., Inc.*, No. 21-CV-00964, 2022 WL 889097 (D. Colo. 2022) (holding that COVID-19 diagnosis does not qualify as genetic information); *Conner-Goodgame v. Wells Fargo Bank*, No. 2:12-CV-03426, 2013 WL 5428448 (N.D. Ala. 2013) (holding that AIDS diagnosis does not qualify as genetic information). Here, Plaintiffs' conclusory allegations establish that the information sought was *not* "genetic information" protected from disclosure in GIPA and thus Plaintiffs fail to state a claim.

**B.    Even if family medical history constitutes genetic information, it was not solicited *as a condition of employment,* as required to be actionable under GIPA.[3]**

Plaintiffs' claims also fail because they have not established in other than conclusory

---

[3] Although Section 25(c)(1) of GIPA also prohibits the misuse of genetic information during the "preemployment application" process, 410 ILCS 513/25(c)(1), there is no dispute that Caterpillar administered the post-offer health examination after Plaintiffs had accepted the Company's offer of employment. *See* Compl. ¶¶ 33, 46.

12

fashion that their obtaining of a certain employment position was contingent on their providing family medical history to the medical examiner or obtaining family medical history from an outside physician.

Section 25(c)(1) of GIPA provides that an employer shall not directly or indirectly:

**solicit, request, require** or purchase **genetic testing or genetic information** of a person or a family member of the person, or administer a genetic test to a person or a family member of the person **_as a condition of_ employment, preemployment application,** labor organization membership, or licensure;

GIPA, 513/25(c)(1) (emphasis added). "As a condition of" means that without it, there would be no clearance provided for Plaintiffs to begin working in the positions for which they had been hired. *See, e.g., Erdelt v. U.S.*, 715 F.Supp. 278, 281 (D.N.D. 1989) (finding that plaintiff was required to accept the lodging (residency) as a condition of employment); *Post v. Commissioner of Internal Revenue*, No. 15355-17S, 2021 WL 1911699, at \*2 (T.C. May 12, 2021) ("As a condition of employment, petitioner was required to maintain legal insurance"); *Mazera v. Varsity Ford Mgmt. Svcs., LLC*, 565 F.3d 997, 1002-3 (6th Cir. 2009) (concluding that the arbitration provision was a requirement for employment.)

Here, Plaintiffs were specifically instructed, in writing, *not* to provide family medical history or any other genetic information to Caterpillar when they filled out and signed their Post Offer Medical Questionnaires. *See* Exs. A and B.[4] Despite this, Plaintiffs maintain that, on the same day that they signed the Post Offer Medical Questionnaire, Caterpillar violated GIPA when it did not separately instruct them that they should not provide genetic information from their medical records from outside physicians. Compl. ¶ 72. "When allegations in a complaint conflict with exhibits attached to a motion to dismiss that are considered, the exhibits control when they

---

[4] Because the paperwork, attached to this motion as Exhibits A and B, is referenced in, and central to, Plaintiffs' claims, the Court may rely upon the exhibits when it considers Defendant's motion to dismiss. *See Trochuk v. Patterson Companies, Inc.*, 851 F. Supp. 2d 1147, 1153 (S.D. Ill. 2012) (citation omitted).

reveal facts that foreclose recovery as a matter of law." *Soto v. City of Chicago*, No. 20 C 1805, 2020 WL 6321939, *2 n.3 (N.D. Ill. Oct. 28, 2020) (citing *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 873 F. Supp. 111, 123 (N.D. Ill. 1995), *aff'd*, 67 F.3d 605 (7th Cir. 1995)). Taking Plaintiffs' allegations as true, at most Plaintiffs voluntarily provided Caterpillar with genetic information, but it was certainly not "solicit[ed], request[ed], [or] require[d]" and, thus, violated no statute.

Even if asked by a wayward examiner (which Caterpillar flatly denies), there is no allegation or indication that the family medical history was required to be provided in order to proceed with placement in the positions for which Plaintiffs had been hired. Indeed, telling an applicant *not* to provide the information makes it clear that the provision of genetic information could *not* have been a condition of any part of the employment process for Plaintiffs. In any event, nowhere in GIPA does it state that a notice be provided more than once – much less twice on the same day. Rather, to the extent Plaintiffs nonetheless volunteered information which had no bearing on their employment, it must be considered inadvertent, which is not actionable under GIPA. *See* GIPA, 513/25(g) ("[I]nadvertantly requesting family medical history by an employer … does not violate this Act.")

Moreover, GIPA expressly counsels that employers should treat genetic information "consistent with federal law," including GINA. (*See* GIPA, 513/25(a)). Federal regulations promulgated under GINA provide a safe harbor that "absolves employers from liability when an unlawful requirement or request for genetic information is inadvertent." 29 C.F.R. § 1635.8(b)(1)(i)(B) ("If a covered entity uses language such as the following, any receipt of genetic information . . . will be deemed inadvertent."). Caterpillar's questionnaire contains the required language. Accordingly, that same safe harbor should apply here to claims brought under GIPA. *See Tedrow v. Franklin Twp. Cmty. Sch. Corp.*, No. 1:21-CV-453, 2023 WL 3602712 at *27 (S.D.

14

Ind. May 23, 2023) ("The safe harbor absolves employers from liability when an unlawful requirement or request for genetic information is inadvertent."). Therefore, the Court should dismiss Plaintiffs' Count I with prejudice.

### C. Branson's Purported State Law Claims And Remedies Under Count II Are Preempted By ERISA.

The wellness program requirements Plaintiff Branson alleges were not followed are provided pursuant to an ERISA plan. Accordingly, Plaintiff's state law claim related to this benefit under the plan is preempted by ERISA. *Di Joseph v. Standard Ins. Co.*, 776 F. App'x. 343, 347 (7th Cir. 2019) (unpublished) (affirming dismissal of state law claims as ERISA preempts common law claims relating to ERISA plan); *Tomczyk v. Blue Cross & Blue Shield of Wis.*, 715 F. Supp. 914, 917-918 (E.D. Wisc. 1989), *aff'd*, 951 F.2d 771 (7th Cir. 1991) (same).

### 1. ERISA Preempts All Claims Related To An Employee Benefit Plan.

ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144. ERISA's preemption provision is "virtually unique." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 25 n.6 (1983). "State laws" mentioned in § 514 include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). ERISA preempts a state law to the extent such law "relates to" an ERISA plan – i.e., "has a connection with or reference to" such plan. 29 U.S.C. § 1144(a); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). ERISA's preemption provision cannot "be interpreted to pre-empt only state laws dealing with the subject matter covered by ERISA – reporting, disclosure, fiduciary responsibility and the like." *Shaw*, 463 U.S. at 98. A state law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id*. at 96-97. Where a state law claim cannot be resolved without an interpretation of the contract

governed by federal law, the state claims should be dismissed based on preemption. *See Rice v. Panchal*, 65 F.3d 637, 643 (7th Cir. 1995).

In addition, 29 U.S.C. §1132, provides an "exclusive federal cause of action for resolution of such [recovery of benefits] disputes." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). The United States Supreme Court has recognized that ERISA's exclusive civil enforcement mechanism would be undermined if ERISA-plan beneficiaries "were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50-52 (1987); *see also Metro. Life*, 481 U.S. at 64-5. Thus, to effectuate Congress' intent that ERISA occupy the field of benefit plan regulation, the Supreme Court has recognized that ERISA preempts all state decisional law, whether consistent or inconsistent with specific provisions of ERISA. *Shaw*, 463 U.S. at 98-99. To hold otherwise, the Court has said, would undermine a primary purpose of the statute, *i.e.*, to ensure that regulation of employee benefit plans is exclusively a federal concern. *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 740 (1985). The Court has reaffirmed that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 201 (2004). Common law claims that relate to the denial of benefits pursuant to the terms of an employee benefit plan, the administration of such a plan, or the representations of an administrator or fiduciary of such a plan are preempted, regardless of whether the plaintiff is seeking payment of benefits or some other form of relief. *See, e.g., Pilot Life*, 481 U.S. at 41.

Here, Plaintiff Branson's GIPA claim unquestionably "relate[s] to [an] employee benefit plan." 29 U.S.C. § 1144(a). Caterpillar provided Plaintiff Branson, a Caterpillar employee, with a wellness benefit under a benefit program governed by ERISA, and he alleges that it violated state

law—GIPA—in doing so. (*See* Exs. C, D). The Plan meets all the criteria for an ERISA plan, namely it is: "(1) a plan, fund, or program (2) [that has been] established or maintained (3) by an employer . . . (4) for the purpose of providing ... benefits . . . (5) to participants or their beneficiaries." *Kanne v. Conn. Gen. Life Ins. Co.,* 867 F.2d 489, 491-92 (9th Cir. 1988), *cert. denied*, 492 U.S. 906 (1989); *see also* 29 U.S.C. § 1002(1). The Plan also contains all of the earmarks of an ERISA plan. (*See also* references to ERISA in the Program plan document, Exhibit C at pp. 67, 99, 100; Exhibit D at pp. 33, 126, 128-29). As the Plan is governed by ERISA, the Complaint indisputably "relates to" Caterpillar's interpretation, administration and application of the subject ERISA plan.

The Seventh Circuit has repeatedly found that state law claims, like Plaintiff's, relate to an ERISA governed plan and are therefore preempted by ERISA. *See, e.g., Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 795 (7th Cir. 1996) (holding breach of contract claims are preempted by ERISA); *Smith v. Blue Cross & Blue Shield United of Wis.*, 959 F.2d 655, 657-58 (7th Cir. 1992) (holding plaintiff's bad faith claims are clearly preempted by ERISA); *Mondovi Dairy Sys., Inc. Emp. Benefit Plan v. Blue Cross & Blue Shield United of Wis.*, No. 15-CV-826, 2016 WL 109965, at *4 (E.D. Wis. Jan. 8, 2016) (holding that both breach of contract and bad faith claims are preempted by ERISA). Plaintiff Branson's claim alleging a violation of GIPA's wellness program requirements is preempted by ERISA and should be dismissed.

### D. Plaintiffs Have Not Adequately Alleged That Caterpillar Violated GIPA Intentionally or Recklessly.

Plaintiffs fail to allege facts showing that Caterpillar's purported conduct was intentional or reckless, as required to state a claim for statutory damages under GIPA. *See* 410 ILCS 513/40. Plaintiffs have alleged no facts from which this Court could infer that Caterpillar had knowledge of GIPA's requirements or made statements about purposefully not complying with the law, or

17

anything with respect to Caterpillar's state of mind, as Plaintiffs have pled nothing regarding Caterpillar's alleged degree of fault, recklessly *or* intentionally. Rather, in conclusory fashion, Plaintiffs vaguely allege that Caterpillar "intentionally and/or recklessly requested Plaintiffs' genetic information in the form of their family medical histories in violation of Illinois law." (*See* Compl. ¶¶ 57-58.) They further allege that, despite the Post Offer Medical Questionnaire informing prospective employees to refrain from providing genetic information, Caterpillar was reckless and/or intentional in its violation of GIPA because Caterpillar did not provide the same warning when requesting medical information from outside training providers which, to be clear, was at the same time that Plaintiffs underwent the post-offer examination. (*Id.* ¶ 58.) Specific to Count II, Branson also alleges that Caterpillar's conduct was reckless because, even though Plaintiffs signed the Post Offer Medical Questionnaire, Branson did not provide authorization for participate in a *voluntary* wellness program and provide genetic information. (*Id.* ¶ 59.) And to round out their conclusory and contradictory allegations, Plaintiffs vaguely assert that "Caterpillar's violations were willful because it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of GIPA." (*Id.* ¶ 60.) These conclusory and contradictory statements are nothing more than just parroting the statutory language and fall short of sufficiently alleging that Caterpillar's alleged violations were intentional and/or reckless. *See Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 807 (7th Cir. 2021) ("At the motion to dismiss stage, plaintiffs must set forth 'adequate factual detail to lift their claims from mere speculative possibility to plausibility.'"); *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 840 (N.D. Ill. 2020) ("Raw conclusions are not entitled to a presumption of truth.") (citations omitted).

This Court's decision in *Kukovec v. Estée Lauder Co., Inc.*, No. 22-CV-1988, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022) (Shah, J.), is instructive on this very issue. *Kukovec* analyzed

whether the plaintiff adequately alleged damages under BIPA. (*Id*. at *8). Like GIPA, BIPA also provides for statutory penalties for negligent violations, and heightened penalties for reckless or intentional violations. (BIPA, 740 ILCS 14/20). There, this Court held as follows:

> I agree with defendant that plaintiff hasn't adequately alleged recklessness or intent. States of mind can be alleged generally, Fed. R. Civ. P. 9(b), but "a plaintiff still must point to details sufficient to render [the] claim plausible." * * * The complaint lacks those details. Plaintiff doesn't mention defendant's state of mind until the very end of the complaint, where she requests statutory damages. And no other facts in the complaint point to recklessness or intent—e.g., knowledge of BIPA's requirements or statements about purposefully not complying with the law.

*Kukovec*, 2022 WL 16744196, at *8 (citation omitted). Consistent with the Court's decision in *Kukovec*, Plaintiffs here fail to allege anything more than rote parroting—that Caterpillar "knew, or reasonably should have known" about GIPA (Compl. ¶ 60)—and fail to allege any facts that demonstrate Caterpillar's "knowledge of [the statute]'s requirements or statements about purposefully not complying with the law." *Kukovec*, 2022 WL 16744196, at *8. Instead, Plaintiffs point to the Post Offer Medical Questionnaire as a basis for alleging that Caterpillar's purported violations of GIPA were intentional and/or reckless. But, as discussed at length above, the fact that Plaintiffs signed the questionnaires, being on notice and having full knowledge that the disclosure of genetic information was not required, their reliance on the questionnaire is entirely contradictory. Therefore, Plaintiffs' claim of intentional and reckless conduct should be dismissed. *Id*.

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, Defendant Caterpillar Inc. respectfully requests that the Court dismiss Plaintiffs' First Amended Class Action Complaint with prejudice and award such other relief that the Court deems just and fair.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing was filed with the Court's electronic case filing system (ECF) on January 22, 2024, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.


<u>*s/ Ada W. Dolph*                          </u>

20