## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KERRY BRANSON and SHELLEY DOTSON, individually and on behalf of themselves and all others similarly situated, | Case No. 1:23-CV-14329 |
| Plaintiffs, | **Hon. Manish S. Shah** |
| v. | |
| CATERPILLAR INC., | |
| Defendant. | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

Plaintiffs Kerry Branson and Shelley Dotson ("**Plaintiffs**"), by and through their counsel, respectfully submit this Response in Opposition to Defendant Caterpillar Inc's ("**Defendant**") Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint (the "**Motion**").

## I.    INTRODUCTION

On November 17, 2023, Plaintiffs filed their First Amended Class Action Complaint (the "**FAC**", Dkt. No. 17). The FAC states plausible claims that Defendant violated the Illinois Genetic Information Privacy Act, 410 ILCS 513/25 ("**GIPA**") by making an overly broad request for medical records that – due to its breadth – encompassed any genetic information within such records (Count I); and by requesting genetic information in furtherance of a workplace wellness program without obtaining written authorization to do so (Count II).

During the hiring process to work for Defendant, prospective employees are required to attend a preemployment physical after they receive an offer for employment. The physicals are conducted at Defendant's facility by Defendant's in-house medical staff. Prior to their physicals,

Plaintiffs were subjected to a request for health-related information via a health history questionnaire. FAC, ¶¶ 34, 47. After the physicals, Defendant made a *second* request for health-related information from Plaintiffs by requesting Plaintiffs' medical records with outside physicians. FAC, ¶¶ 36, 49. This second request is the source of the violation in Count I.

In the Motion, Defendant argues that Plaintiffs fail to state a claim that the second request for medical records was unlawful because the first request (the questionnaire) asks that genetic information to be omitted from the written responses thereto. However, the two distinct requests were separate events. When Defendant made the second request for Plaintiffs' records, Defendant should have instructed Plaintiffs that any genetic information in the records must be redacted prior to production. The fact that Defendant gave this warning for the first request, but then failed to give it for the second, shows that Defendant's failure was not just negligent, but also reckless. As such, Count I plausibly states a claim that Defendant violated Section 25(c) of GIPA.

Next, Defendant argues that Count II of the FAC (Defendant's alleged unauthorized request for genetic information in furtherance of a workplace wellness program) is preempted by the Employee Retirement Income Security Act of 1974 ("**ERISA**"). But the Seventh Circuit has made clear that ERISA preemption is an affirmative defense upon which Defendant bears the burden of proof and cannot be the basis for dismissal under Rule 12. Defendant's attempt to raise the affirmative defense of ERISA preemption in the Motion is improper, as it should be raised in its answer to the FAC. Moreover, the Caterpillar Program explicitly states that it "shall be interpreted and administered to comply with the requirements of GINA." *See* Motion, Exhibit D, p. 78 of 201.

Thus, the Court should deny Defendant's Motion and permit Plaintiffs and the putative class to pursue their claims based on Defendant's unlawful requests for genetic information.

## II. PLAINTIFFS PROPERLY STATE THEIR CLAIM THAT DEFENDANT IMPROPERLY REQUESTED GENETIC INFORMATION IN THEIR MEDICAL RECORDS

Defendant made two distinct and separate requests for medical information during the hiring process. First, before Plaintiffs' preemployment physicals, Defendant requested medical information on its "Post Offer Medical Questionnaire" form. Second, after the physicals, Defendant requested medical information by asking for medical records from outside providers. The FAC properly states a claim that Defendant violated Section 25(c) of GIPA by making this second request because Defendant knew it to be overly broad – the instructions for the Medical Questionnaire confirm that Defendant knew it should warn Plaintiffs to refrain from providing genetic information when making these requests in order to reduce the likelihood of obtaining protected genetic information. Yet, when making the second request, Defendant gave no such instruction. Because Defendant failed to warn Plaintiffs not to provide medical records containing genetic information, this second request was overly broad and constitutes a violation of GIPA.

### A. Factual Background

Plaintiffs each received an offer of employment from Defendant that was conditioned upon successfully completing a preemployment physical examination conducted at Defendant's facility by its in-house medical staff. FAC, ¶ 33, 46. Prior to the physical examination, Defendant requested Plaintiffs' medical information by requiring them to prepare responses to a "Post Offer Medical Questionnaire" form. FAC, ¶ 34, 47. After the examination, Defendant made a second distinct request for Plaintiffs' information by requesting them to provide copies of their medical records from outside providers. FAC, ¶ 36, 49. When Defendant made this second request for information in the form of medical records, Plaintiffs had no way of knowing that they should refrain from providing their genetic information to Defendant in connection with this request.

3

Defendant never informed Plaintiffs that it was not entitled to any genetic information within such records; nor did Defendant instruct Plaintiffs to redact or refrain from providing genetic information within such records. FAC, ¶¶ 36, 37, 49, 50.

**B. GIPA Prohibits Defendant from Requesting Plaintiffs' Genetic Information**

Illinois enacted GIPA in 1998. In setting forth its intent in passing GIPA, the Legislature explained that the statute would "limit [] the use or disclosure of, **and requests for**, protected health information to the minimum necessary." 410 ILCS 513/5(5) (emphasis added). GIPA was amended in 2008 to harmonize the statute with its federal counterpart, the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff, et seq. ("**GINA**"). The 2008 amendments to GIPA increased the protections provided for employees by adding the language in Section 25.

Section 25 of GIPA explicitly states what employers can and cannot do with regard to genetic information. Section 25(a) of GIPA provides that companies that employ individuals in Illinois "shall treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law, including but not limited to [GINA.]" Section 25(c) states "[a]n employer … shall not directly or indirectly … solicit, request, [or require] genetic information … as a condition of employment, [or] preemployment application." 410 ILCS 513/25(c)(1).

GIPA and GINA both adopt the broad definition of "genetic information" from 45 C.F.R.160.103, the regulations pertaining to the Health Insurance Portability and Accountability Act. 42 U.S.C. § 2000ff(4)(A)(iii); 410 ILCS 513/10; *see* 45 C.F.R. § 160.103. Thus, "genetic information" includes information about the manifestation of a disease or disorder in family members of an individual. *See* 45 C.F.R. § 160.103. Finally, "family member" means, with respect to an individual, individuals related to the individual. 410 ILCS 513/10. Thus, to sufficiently plead a violation of GIPA Section 25(c)(1), a plaintiff need only allege that (1) there was a request for

4

information about the manifestation of a disease in a family member related to the individual subject to the request and (2) the request was a condition of employment and/or preemployment application.

Here, both elements have been met. Per the FAC, Defendant requested Plaintiffs' medical records, including records that contain genetic information. *See* FAC, ¶¶ 72-75. By failing to instruct Plaintiffs to redact genetic information in the records, the request inherently included a request for genetic information. Defendant's medical staff are licensed medical professionals, and thus it is reasonable to infer that they were well aware of the fact that it is standard industry practice to include genetic information in the form of family medical histories on medical reports.[1]

Further, this request was a condition of employment because Defendant required Plaintiffs to produce these records in order to be hired. *See* FAC, ¶ 38, 50. In fact, Defendant required each of the Plaintiffs to present for a second examination after the records were produced, and only then approved Plaintiffs for employment.[2] "[C]onditions of employment" include "such matters as hiring, firing, wages, discipline, supervision, direction, scheduling, seniority, overtime, work assignments, and the manner and method of work performance." *Weis Builders, Inc. v. Int'l Union, Local Union No. 150*, 2017 U.S. Dist. LEXIS 16647, at *11 (N.D. Ill. Feb. 7, 2017). The physician findings forms from these second physicals confirm that Defendant could have refused to approve Plaintiffs for employment based upon the review of their medical records; thus, the request for Plaintiffs' medical records clearly are a condition of employment because they relate to hiring and

---

[1] *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8493894/. "Several professional organizations have recently made recommendations that general practitioners (GPs) routinely, and opportunistically, collect family health history for three generations."

[2] Redacted copies of the physician findings for these second examinations are attached as **Exhibit A**. Mr. Branson's second examination was conducted on March 7, 2019, three days after his first physical; Ms. Dotson's second examination was conducted on May 24, 2023, the day after her first physical.

work assignments. Accordingly, the FAC properly states a claim that Defendant violated Section 25(c) by requesting medical records containing genetic information as a condition of employment.

### C. Analogous GINA Caselaw Confirms that the FAC Properly Alleges an Unlawful Request Claim

Plaintiffs' claims under Section 25(c)(1) of GIPA are a matter of first impression; as such, Defendant looks to GIPA's federal counterpart, GINA, for caselaw. However, even a basic analysis of the holdings in the cases cited by Defendant shows that they are inapposite here.

For example, in *Munnerlyn v. Installed Bldg. Prod., LLC*, 2020 WL 2528547 (W.D. Tex. Jun. 15, 2020), cited by Defendant, the court dismissed GINA claims because the plaintiffs alleged that the company sought information about conditions that had manifested in the plaintiffs themselves, rather than the plaintiffs' family members. The court in *Munnerlyn* granted the defendant's motion to dismiss because the plaintiff only alleged that his employer sought information about the manifestation of a disease in **himself**, as opposed to the manifestation of a disease in his **family members**, and therefore never sought genetic information prohibited by GINA.[3] As the court noted, "[t]he basic intent of GINA is to prohibit employers from making a predictive assessment concerning an individual's propensity to get an inheritable genetic disease or disorder based on the occurrence of an inheritable disease or disorder in a family member." *Id*. at *5 (citing *Poore v. Peterbilt of Bristol, L.L.C.*, 852 F. Supp. 2d 727, 730 (W.D. Va. 2012)).

In its analysis of Mr. Munnerlyn's discrimination claim (a wholly distinct claim from the unlawful requests at issue here), the court noted: "An employer, however, does not violate GINA through 'the use, acquisition, or disclosure of medical information that is not genetic information about a manifested disease, disorder, or pathological condition of an employee or member,

---

[3] The claim in *Munnerlyn* was a discrimination claim, not an unlawful request claim which the Plaintiffs allege here. GINA has a similar separation of requirements to GIPA, where GINA subsection (a) prohibits discrimination based on genetic information and subsection (b) prohibits unlawful requests for such information. 42 U.S.C. § 2000ff-1.

including a manifested disease, disorder, or pathological condition that has or may have a genetic basis.'" *Munnerlyn*, 2020 WL 2528547, at *6, citing 42 U.S.C. § 2000ff-9 (emphasis added).

Here, unlike in *Munnerlyn*, Defendant did not make a request that was limited to the Plaintiffs' own personal medical records. Instead, Defendant requested medical records via an overly broad request that, in light of the absence of any limitations thereon, would – and typical do – include information regarding the manifestation of various conditions in Plaintiffs' family members. FAC, ¶¶ 72-75. Without a warning or instruction that would otherwise limit the universe of medical records sought, Plaintiffs have no way of knowing to refrain from providing protected genetic information. Thus, there can be no dispute that Defendant requested genetic information as defined by GIPA.

The cases that Defendant relies on are also distinguishable because Defendants have primarily selected discrimination cases, rather than cases in which plaintiffs were subjected to illegal requests for genetic information. Conversely, here, the FAC alleges that Defendant inquired about the manifestation of diseases or disorders in Plaintiffs' family members and viewed the manifestation of various conditions for the purpose of evaluating the risk that its employees may have inherited these genetic conditions in an effort to avoid risk and/or liability for workplace injuries. FAC, ¶¶ 54-56. In doing so, Defendant was attempting to use the manifestation of genetic conditions in Plaintiffs' family members to predict whether Plaintiffs may have inherited such conditions. And, because Plaintiffs are not alleging a discrimination claim, there is no need for Plaintiffs to allege that Defendant misused, discriminated, or took any adverse action against them based on their responses to the unlawful request.

For example, Defendant's reliance on *Bell v. PSS World Med., Inc.*, 2012 WL 6761660 (M.D. Fla. 2012) is misplaced. In *Bell*, the plaintiff alleged the defendant discriminated against her

on the basis of genetic information because the plaintiff was afflicted with a Hyperthyroidism condition which exhibited itself in severe chronic migraines. *Id.* at *8. The plaintiff also alleged the defendant had improperly disclosed "confidential information" regarding "confidential medical conditions" in violation of GINA. The *Bell* court dismissed the plaintiff's complaint because it found she had "failed to provide any basis, factual or otherwise, for the Court to reasonably infer that her hyperthyroidism, the 'confidential information,' or the 'confidential medical conditions' equate to genetic testing and/or genetic information. Unlike *Bell*, the Plaintiffs here have alleged that the information requested by Defendant was genetic information because it was not narrowly tailored to preclude production of records containing information regarding diseases which had manifested in their family members.

Defendant's citation to *Tedrow v. Franklin Twp. Cmty. Sch. Corp.,* No. 1:21-CV-453 RLM-MG, 2023 U.S. Dist. LEXIS 89617, at *80 (S.D. Ind. May 23, 2023), is similarly misplaced. *See* Motion, p. 11. Defendant asserts that the GINA claim in *Tedrow* was dismissed because the plaintiff failed to *allege* that the information at issue met GINA's definition of genetic information. Motion, p. 11. In reality, the court in *Tedrow* denied the defendant's motion to dismiss the GINA claim. *See Tedrow*, No. 1:21-CV-453 RLM-MG, 2022 U.S. Dist. LEXIS 45553, at *16 (S.D. Ind. Mar. 14, 2022) ("Mr. Tedrow alleges that the fitness-for-duty examiner sought genetic information"). Instead, the decision that Defendant cites was made at the summary judgment stage, after it was determined through discovery that the defendant did not obtain genetic information despite the complaint's allegations to the contrary. *Tedrow*, 2023 U.S. Dist. LEXIS 89617, at *80 (S.D. Ind. May 23, 2023). Thus, the cited *Tedrow* decision has nothing to do with the pleading standard, and if anything supports Plaintiffs' instant action by confirming Plaintiffs' properly state facts to support their unlawful request claims.

8

For more instructive authority, the Court should look to GINA cases pertaining to unlawful requests, such as *EEOC v. Grisham Farm Prods.*, 191 F. Supp. 3d 994 (W.D. Mo. 2016), wherein the court held that the defendant had violated 42 U.S.C. § 2000ff-1(b) by simply asking a prospective employee if he had consulted a doctor in the previous two years or discussed future diagnostic testing. *Id.* at 998. The plaintiff refused to respond to these questions. *Id.* at 995. The court reasoned that these questions would require an applicant to reveal genetic information and thus constituted an illegal request. *Grisham*, 191 F. Supp. 3d 994 (W.D. Mo. 2016); *see also EEOC v. Dolgencorp, LLC*, 2022 U.S. Dist. LEXIS 132466, *38 (N.D. Ala. 2022) (granting the plaintiff's motion for partial summary judgment as to liability for a GINA claim because "Dollar General's agent … asked … job candidates whether their grandparents, parents, or children had significant medical problems, in violation of 42 U.S.C. § 2000ff-1(b)."); *Jackson v. Regal Beloit Am., Inc.*, 2018 U.S. Dist. LEXIS 103682, *41-43 (E.D. Ky. 2018) (denying an employer's motion for summary judgment on an unlawful request claim where the plaintiff "refused to turn over her genetic information…" and although the defendant took no adverse employment action against the plaintiff, "Jackson's GINA claim arises from § 2000ff-1(b)" and "Because Jackson has put forward proof that the medical records requested contained protected 'genetic information' in the form of her family history … she has proven that Regal made an unlawful request for genetic information.").

These cases confirm that a plaintiff properly alleges an unlawful request claim even when no genetic information was provided in response to the request. The request in and of itself constitutes a violation.

### III.   PLAINTIFFS ARE NOT REQUIRED TO PLEAD THAT THE INADVERTENT EXCEPTION DOES NOT APPLY

Defendant also argues that the FAC fails to state a claim because – according to Defendant – Defendant should be excused from liability because its violation of GIPA was inadvertent. Analogous caselaw confirms the defense of inadvertence is an affirmative defense that should be raised – if even applicable – in the context of a motion for summary judgment. Nevertheless, Defendant has failed to show that its unlawful request for Plaintiffs' protected medical records was inadvertent.

#### A. Analogous Caselaw Confirms the Inadvertent Request Defense Should be Determined on a Motion for Summary Judgment

Although there is no Illinois caselaw evaluating GIPA's inadvertent request exception, the federal counterpart in GINA has been analyzed by the courts in the context of overly broad medical records requests. For example, in *Jackson*, *supra*, an employee alleged that her employer violated GINA when its agent requested her to provide medical records for review related to a diagnosis of colon cancer. The records sought included "all medical records" related to her diagnosis, treatment, prognosis, testing, and medications related to her condition. 2018 U.S. Dist. LEXIS 103682, at *4- 5. When the employee refused to do so, the employer informed her that she could experience an adverse employment action if she did not comply. *Id.*, at *6. The employee filed suit alleging a violation of GINA, and the employer filed a motion for summary judgment on the claim on the basis that the genetic information request was inadvertent. *Id.*, at *44-45. The court denied the employer's motion for summary judgment on the issue because it found that the defendant failed to prove that the request was narrowly tailored to limit the likelihood of obtaining genetic information in response to the request.

The *Jackson* court held that, for the employer to prove the request was inadvertent, it must show that "its request for medical information was not likely to result in [the employer] obtaining genetic information. *Id.*, at *46. The court rejected the employer's argument that the request for medical records was narrowly tailored: "A review of Dr. Haskell's request, which identified Jackson's 'medical condition of concern' as 'surgery — all medical records' and sought medical records containing Jackson's current diagnosis, treatment, medications, restrictions, limitations, prognosis, any relevant tests, and 'any additional information that [Jackson's] medical provider [thought] would help' make the medical recommendation, reveals an extremely broad request." *Id.* at *46-47.

The court found that any "broad response" the employee would have provided in response to the medical records request "would have been elicited by Dr. Haskell's 'overly broad' request. Because Dr. Haskell's request for Jackson's medical information was not 'tailored' to avoid requesting genetic information, Regal's request was 'likely to result in a covered entity obtaining genetic information' and was not 'inadvertent.'" *Id.* The court accordingly found that Regal had violated GINA by making an unlawful request for Jackson's genetic information, and Jackson was entitled to partial summary judgment on her GINA claim.

Likewise, *Montgomery v. Union Pacific R.R.*, No. C-17-00201-TUC-RM, 2018 WL 6110930 (D. Ariz., Nov. 21, 2018) confirms that the inadvertent request issue is properly determined via a motion for summary judgment. In *Montgomery*, the plaintiff underwent a post-offer medical examination; following the examination, the defendant requested the plaintiff to provide medical records from outside physicians to assist with its medical assessment.. *Id.*, at *8. "Defendant's request did not contain a warning advising Plaintiff's physicians to redact or exclude Plaintiff's genetic or family health information." *Id.* The court denied the defendant's request for

11

summary judgment because "Plaintiff's claim is that Defendant unlawfully requested medical records without instructions to redact family history" and the defendant "has failed to show its request was unlikely to result in the receipt of genetic information." *Montgomery*, 2018 WL 6110930 at *26.

These cases highlight that Defendant is mistaking a standard for an affirmative defense for a substantive pleading requirement. As the Seventh Circuit has noted, "an affirmative defense must be raised in the answer, not by motion." *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022) (citing *Vasquez v. Indiana Univ. Health, Inc.*, 40 F.4th 582, 588 (7th Cir. 2022)). "Affirmative defenses do not justify dismissal under Rule 12(b)(6)." *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003); *see Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). Moving for judgment on the pleadings under Rule 12(c) is the more appropriate way to address an affirmative defense. *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). "Observing the distinction is necessary to allocate correctly the burdens of pleading and proof," and "serves an important notice function." *H.A.L. N.Y. Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020); *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1971)).

### B. Defendant does not Meet its Burden of Showing the Inadvertent Request Defense does not Apply

The Equal Employment Opportunity Commission ("**EEOC**") is the federal agency charged with enforcing GINA. The agency has made clear that, under GINA's identical prohibition of unlawful requests for genetic information, when an employer requests health-related information, "it should warn the employee and/or health care provider from whom it requested the information not to provide genetic information"; to take advantage of the inadvertent request defense, the employer "must do what is reasonably necessary to ensure that the warning is understood by

employees … This is best accomplished by providing the warning **each time** health-related information is requested."[4] (emphasis added). EEOC guidance reiterates that Defendant should have informed Plaintiffs to refrain from producing medical records containing genetic information at the time it requested their records from outside providers: "if an employer lawfully requests access to an applicant's or employee's medical records … the employer [should] include warning language like that provided for in EEOC's regulations implementing Title II of GINA on any release to ensure that acquisition of any genetic information in response to the request will be considered inadvertent."[5]

In the Motion, Defendant concedes that it did not warn Plaintiffs when it made its second request that no records containing genetic information should be provided. As such, Defendant has offered no evidence that the inadvertent request defense applies to Plaintiffs' Section 25 claims because, even if Defendant warned Plaintiffs not to provide genetic information on their responses to the Medical Questionnaire form, Defendant knowingly failed to do so when it made the subsequent and distinct request for their medical records.

## IV.   THE FAC PROPERLY STATES A CLAIM THAT DEFENDANT FAILED TO OBTAIN AUTHORIZATION FOR THE USE OF GENETIC INFORMATION IN FURTHERANCE OF A WORKPLACE WELLNESS PROGRAM

Next, Defendant argues that Count II of the FAC should be dismissed because Mr. Branson's claim that Defendant failed to obtain proper authorization for the use of genetic information in furtherance of a workplace wellness program is preempted by ERISA. However, Defendant yet again places the cart before the horse – ERISA preemption is an affirmative defense to state-law claims; as such, this Motion is an improper vehicle for this defense. If Defendant seeks

---

[4] *See* https://www.eeoc.gov/laws/guidance/questions-and-answers-small-businesses-eeoc-final-rule-title-ii-geneticinformation.

[5] *See* https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-226.

to assert the affirmative defense of ERISA preemption – and if it is even applicable – Defendant must raise it in its answer to the FAC.

### A. Factual Background

On or around October 10, 2019, after Mr. Branson was hired by Defendant, he underwent a physical examination conducted by the company's medical staff as part of its workplace wellness program. FAC, ¶ 40. During this examination, Defendant requested Mr. Branson to complete a "Caterpillar Health Screening History and Review" form which requested Mr. Branson's genetic information in the form of diseases which had manifested in his family members. *Id.* Specifically, the form stated: "Please list any family history (parents or siblings) of coronary artery disease, diabetes, or cancer and age of onset[.]" *Id.* Mr. Branson never provided prior knowing, voluntary, written authorization to Defendant for the use of his genetic information in furtherance of the workplace wellness program. FAC, ¶ 41.

### B. The FAC Properly States a Claim that Defendant Violated Section 25(e) of GIPA by Improperly Using Mr. Branson's Genetic Information

Pursuant to Section 25(e) of GIPA, an employer shall not use genetic information or genetic testing in furtherance of a workplace wellness program benefiting employees unless:

(1) health or genetic services are offered by the employer,

(2) the employee provides written authorization in accordance with Section 30 of this Act,

(3) only the employee or family member if the family member is receiving genetic services and the licensed health care professional or licensed genetic counselor involved in providing such services receive individually identifiable information concerning the results of such services, and

(4) any individually identifiable information is only available for purposes of such services and shall not be disclosed to the employer except in aggregate terms that do not disclose the identity of specific employees. An employer shall not penalize an employee who does not disclose his or her genetic information or does not choose to participate in a program requiring disclosure of the employee's genetic information.

410 ILCS 513/25(e).

14

GINA contains an identical prohibition for such use of genetic information.[6] Pursuant to 42 U.S.C. § 2000ff-1(b)(2), it is unlawful for an employer to request genetic information with respect to an employee or a family member of the employee except where:

(A)    health or genetic services are offered by the employer, including such services offered as part of a wellness program;

(B)    the employee provides prior, knowing, voluntary, and written authorization;

(C)    only the employee (or family member if the family member is receiving genetic services) and the licensed health care professional or board certified genetic counselor involved in providing such services receive individually identifiable information concerning the results of such services; and

(D)    any individually identifiable genetic information provided under subparagraph (C) in connection with the services provided under subparagraph (A) is only available for purposes of such services and shall not be disclosed to the employer except in aggregate terms that do not disclose the identity of specific employees.

Here, the information requested from Mr. Branson on Defendant's Health Screening History and Review form falls squarely within GIPA's and GINA's shared definition of genetic information. Defendant's request for "any family history (parents or siblings) of coronary artery disease, diabetes, or cancer and age of onset" is undeniably a request for genetic information in the form of the manifestation of an inheritable disease in Mr. Branson's family members. Mr. Branson never provided prior knowing, voluntary, written authorization to Defendant for the use of his genetic information in furtherance of Defendant's workplace wellness program. FAC, ¶ 41. Accordingly, the FAC properly states a claim that Defendant violated Section 25(e) by using his genetic information in furtherance of a workplace wellness program without proper authorization to do so.

Moreover, Defendant cannot deny that it was well aware of the fact that its workplace wellness program was subject to GINA – and therefore, via Section 25(a), GIPA. The Program

---

[6] As acknowledged by Defendant, Section 25(a) of GIPA requires it to treat genetic information in a manner consistent with the requirements of GINA.

undeniably establishes that any workplace wellness program is subject to GINA. *See* Motion, Exhibit C, p. 70. Under Article V of the Program, the section pertaining to medical expense benefits, section 5.8 states that any such benefits shall be administered to comply with the requirements of GINA.

> **5.8     GINA.** In accordance with the Genetic Information Nondiscrimination Act of 2008 ("GINA"), in providing Medical Expense Benefits, the Program shall not discriminate on the basis of genetic information. The Program shall be interpreted and administered to comply with the requirements of GINA.

"Wellness benefits" are included within Article V. *See* Motion, p. 5. As such, it is obvious that Defendant is simply grasping at straws to shirk liability for Count II of the Complaint by claiming that GIPA is preempted.

### C.    ERISA Preemption is an Affirmative Defense and thus Improperly Raised in a Rule 12(b)(6) Motion to Dismiss

Defendant does not argue that the FAC fails to properly state a claim for violation of Section 25(e) of GIPA. Instead, Defendant only argues that the claim is preempted by ERISA. But it is well-settled that this argument is improperly before the Court.

"Preemption under section 1144(a) of ERISA is a federal defense to state-law claims, otherwise known as 'conflict preemption,' as opposed to 'complete preemption' under section 1132(a), which creates federal jurisdiction." *Smith v. Lutheran Life Ministries*, 2021 U.S. Dist. LEXIS 239971, at *2 (N.D. Ill. Dec. 16, 2021); *see also Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 601 (7th Cir. 2008) ("[c]onflict preemption, unlike complete preemption, actually is a true preemption doctrine[.]"). Preemption, however, is 'an affirmative defense upon which the defendants bear the burden of proof." *Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005). "Affirmative

16

defenses do not justify dismissal under Rule 12(b)(6)." *Id.*, at \*16 (citing *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003)).

Courts in this Circuit have steadfastly rejected the attempts by defendants to raise the issue of federal preemption in a Rule 12(b)(6) motion to dismiss. For example, in *Taylor v. BW Wings Mgmt., LLC*, No. 1:22-CV-0106-HAB-SLC, 2023 U.S. Dist. LEXIS 186054, at \*9 (N.D. Ind. Oct. 17, 2023), the defendant sought to dismiss a state law claim under ERISA's conflict preemption provision. However, the court denied the motion to dismiss in reliance upon the jurisprudence of the Seventh Circuit. "Not only is preemption an affirmative defense, but the Seventh Circuit has acknowledged that it follows from this structure and from the plain language of Rule 8(c)(1) that an affirmative defense must be raised in the answer, not by motion." *Id.* (citing *Luna Vanegas*, *supra*) (internal quotations omitted). "Given that preemption is an affirmative defense that must be raised in an answer and not in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Defendant's preemption argument is not properly before the Court." *Id.*

There is a "narrow and pragmatic exception for a plaintiff who has pleaded herself out of court," but Defendant does not allege Mr. Branson has done so here and has therefore waived this argument. *See Williams v. City of Chicago*, No. 22-cv-1084, 2022 U.S. Dist. LEXIS 154948, \*6 (N.D. Ill. Aug. 29, 2022) (declining to consider affirmative defense of immunity under Rule 12(b)(6), where such a consideration would be "procedurally improper," would require ignoring the "clear pronouncement" of the Seventh Circuit, and the defendants did not argue the plaintiff pled out of court for purposes of disregarding the difference between Rule 12(b)(6) and (c)); *see also Wilson v. CooperSurgical, Inc.*, No. 3:22-cv-1651-DWD, 2023 U.S. Dist. LEXIS 170825, at \*17-18 (S.D. Ill. Sep. 25, 2023) (same).

Defendant's Motion improperly requests dismissal on the grounds of ERISA preemption. In doing so, Defendant asks this Court to ignore the well-established precedence of the Seventh Circuit without justification. This request should be rejected.

## V. PLAINTIFFS SUFFICIENTLY ALLEGE THAT DEFENDANT ACTED RECKLESSLY AND/OR INTENTIONALLY

As this Court noted in *Kukovec v. Estée Lauder Co., Inc.*, No. 22-CV-1988, 2022 WL 16744196, at *20 (N.D. Ill. Nov. 7, 2022), a defendant's state of mind can be alleged generally; a plaintiff must simply point to details sufficient to render the claim plausible. GIPA was amended in 2008 to prohibit Defendant's alleged conduct. If the allegations of the FAC are true – as the Court must assume at this stage – Defendant has made no effort to comply with its requirements over the past fifteen years. See FAC, ¶¶ 54-60.

The FAC here stands in contrast to the complaint in *Kukovec*. In *Kukovec*, the Court found that the complaint lacked details sufficient to render the claim of recklessness and/or intentional conduct plausible. 2022 U.S. Dist. LEXIS 202212, at *20 (N.D. Ill. Nov. 7, 2022) ("Plaintiff doesn't mention defendant's state of mind until the very end of the complaint, where she requests statutory damages. And no other facts in the complaint point to recklessness or intent.") Here, on the other hand, Plaintiffs allege that the reckless and/or intentional nature of Defendant's violations of GIPA is evidenced by the instruction page included by Defendant for the Medical Questionnaire form. Clearly, Defendant was well aware of the fact that it was not permitted to request genetic information from its employees. It knew that it was obligated to inform Plaintiffs that such information should not be provided. The fact that it included the safe harbor language on the Medical Questionnaire form demonstrates that it was aware of EEOC guidance regarding the issue, and thus was aware that it was also required to provide a similar warning each and every time it made subsequent requests for genetic information pursuant to the guidance referenced above.

18

However, Defendant deliberately chose not to do so. This is particularly clear with respect to the forms used in furtherance of Defendant's workplace wellness program, which undeniably request genetic information, and with which Defendant affirmatively elected not to include any required warning or notice.

Defendant cannot deny that it was aware of its obligation to refrain from requesting genetic information. Nonetheless, this is precisely what the company did. Plaintiffs do not simply mention Defendant's state of mind at the very end of the FAC where they request statutory damages (as was the case in *Kukovec*). Instead, they point to specific facts which plausibly raise the inference that Defendant's alleged conduct was reckless and/or intentional.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: (i) denying Defendant's Motion in its entirety; and (ii) granting such further and additional relief as this Court deems reasonable and just.  To the extent that the Court grants Defendant's motion in whole or in part, Plaintiffs respectfully request that they be granted leave to amend.

Dated: February 27, 2024                     Respectfully submitted,

*/s/ Kyle D. McLean*
Kyle D. McLean (SBN 6344126)
SIRI & GLIMSTAD LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
T. (213) 376-3739
E. kmclean@sirillp.com

David J. DiSabato
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
T. 212-532-1091
E. ddisabato@sirillp.com

Edward A. Wallace

Mark R. Miller
Molly C. Wells
WALLACE MILLER
150 N. Wacker Drive, Suite 1100
Chicago, IL 60606
T. (312) 261-6193
E. eaw@wallacemiller.com
 mrm@wallacemiller.com
 mcw@wallacemiller.com

COUNSEL FOR PLAINTIFF AND THE PUTATIVE CLASS

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 27, 2024 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

*/s/ Kyle D. McLean*