IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KERRY BRANSON and SHELLEY DOTSON, individually and on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CATERPILLAR INC., <br><br> Defendant. | Case No. 2023-cv-14329 <br><br> District Court Judge Manish S. Shah |

**DEFENDANT'S REPLY IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**INTRODUCTION**

The dangers of allowing a plaintiff to proceed on a complaint based primarily on conclusory allegations are highlighted here, where Plaintiffs' First Amended Complaint makes clear that there is no viable cause of action. First, Plaintiffs' Count I has been whittled down to arguing only that a request for specific medical records which Plaintiffs allege "typically" contain genetic information *could* have caused Plaintiffs to provide genetic information—but here it indisputably did not. Indeed, Plaintiffs have alleged as far as they can—that there was *but a risk of a violation of GIPA that did not come to fruition*. No amendment can save Count I from dismissal and it should be dismissed with prejudice. Second, Plaintiff Branson's Count II presses the Court to impose a state law requirement onto the administration of an ERISA-governed plan. However, it is well-settled that "ERISA preempts any state law that . . . 'interferes with nationally uniform plan administration.'" *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016). Accordingly, Count II must also be dismissed, with prejudice.

**I. COUNT I FAILS BECAUSE A REQUEST FOR "MEDICAL RECORDS" THAT NEITHER SOLICITS NOR ELICITS GENETIC INFORMATION IS NOT A VIOLATION OF GIPA.**

**A. Plaintiffs were made aware that they should not provide genetic information when retrieving medical records from their outside treating physicians.**

Plaintiffs were apprised of Caterpillar's desire to *not* solicit genetic information; accordingly, if they misinterpreted Caterpillar's request for additional specific medical records as seeking genetic information, that fault (and liability) lies with them. Both Plaintiffs signed their Post Offer Medical Questionnaires on the same day as their respective post-offer medical examinations, which contain a GINA statement prominently featured on the first page. *See* Mem. in Support of MTD ("Memo."), Dkt. 12, p. 6, Exs. A and B. The GINA statement instructs that "we ask you not to provide any genetic information when responding to this request for medical information." *Id.* It goes on to explain that "'[g]enetic information,' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, . . . ." *Id*. Nonetheless, Plaintiffs attempt to pivot Count I away from the post-offer examination itself and instead focus squarely on the accompanying request for medical records from outside treating physicians. Specifically, Plaintiffs argue that Caterpillar did not "warn Plaintiffs not to provide medical records containing genetic information, [and therefore] this second request was overly broad and constitutes a violation of GIPA." Response ("Resp."), Dkt. 36, p. 3.

Plaintiffs rely on two "guides" as a basis for arguing that a GINA-type statement "should" be provided "each time health-related information is requested." Resp., p. 12-13.[1] Setting aside

---

[1] Quoting https://www.eeoc.gov/laws/guidance/quetions-and-answers-small-businesses-eeoc-final-rule-title-ii-geneticinformation; *id*., p. 13, citing https://www.eeoc.gov/foia/eeoc-informal-letter-226.

that a guide is just that—guidance—and not law—more critical is the fact that the request for medical records was in fact part of the same examination. Plaintiffs do not dispute that they were asked to provide medical records on the same day as (and immediately following) the physical examination. *See* Compl., ¶¶ 36, 49 ("After the physical was completed, Caterpillar's medical staff made an additional request for medical information from [Plaintiffs] by requesting [they] provide copies of past medical records."). As stated, the post offer medical questionnaires were signed the same day as Plaintiffs' examinations. Memo, Exs. A and B. Therefore, the fact remains that, on the day that the violation of GIPA allegedly occurred, Plaintiffs were advised "not to provide any genetic information when responding to this request for medical information." *Id*. Accordingly, Plaintiffs can hardly allege that the request for "medical records" was equivalent to a request for genetic information.

**B. Plaintiffs' claim also fails because the request was for *medical records regarding reported surgeries*—not "genetic information"—and because Plaintiffs did not in fact provide any "genetic information" in response to the request.**

GIPA precludes "solicit[ing], request[ing], require[ing] or purchas[ing] genetic testing or genetic information of a person or a family member of a person … as employment, preemployment application …" GIPA, 513/25(c)(1). Defendant's request to Plaintiffs for "past medical records" regarding surgeries reported by each plaintiff during the initial examination is not a solicitation or request for genetic information and therefore fails to state a claim for a violation of GIPA. And to emphasize this point, neither Plaintiff in fact provided genetic information in response to that request for "past medical records." The mere "risk" that something could have occurred (but did not) is insufficient to state a claim for relief *at all*, let alone under GIPA.

The case of *Tracy v. Elekta, Inc.,* 667 F. Supp. 3d 1276 (N.D. Ga. 2023) is instructive on the dismissal of a GIPA claim related to the speculative disclosure of genetic information. In *Tracy*, a plaintiff brought a putative class action lawsuit (the "class plaintiff") against defendants Elekta,

3

Inc. and Northwestern Memorial Hospital relating to a ransomware attack and data breach involving Elekta's cloud based system that hosts Northwestern's oncology-related data, and another plaintiff brought the same claims individually (the "individual plaintiff"). *Id*. at 1279-80. Among those claims were a claim under GIPA wherein the plaintiffs argued that "the Court can plausibly infer that the compromised data likely contained [genetic information]." *Id*. at 1288. Plaintiffs further argued that, **"based on the type of information** Northwestern gathers and Elekta's general business model, Plaintiffs' [genetic information] was leaked as part of the breach …" *Id*. (emphasis added.) However, the court noted that, during oral argument, plaintiffs conceded that only the individual plaintiff "alleged that his [genetic information] was *actually* provided during his treatment and is included in his medical records." *Id*. (emphasis in original.) With respect to the class plaintiff, the court held that "there is no allegation that [she] provided her [genetic information] to Northwestern during her course of treatment, [such that] it is ***overly speculative to allow her claim for relief.***" *Id*. (emphasis added.) Similar to the class plaintiff in *Tracy*, whose GIPA claim was dismissed as "overly speculative," Plaintiffs here also speculate that genetic information might have been included in the medical records. *See* Resp., p. 7, citing Compl., ¶¶ 72-75 ("Instead, Defendant requested medical records via an overly broad request that, in light of the absence of any limitations thereon, **would – and typical (sic.) do – include information regarding the manifestation of various conditions in Plaintiffs' family members."**) (emphasis added.) Such speculation does not survive basic pleading standards.

Moreover, Plaintiffs' attempt to distinguish Caterpillar's reliance on *Bell* on this issue is not persuasive. As Plaintiffs point out in their response brief, in *Bell v. PSS World Med., Inc.*, 2012 WL 6761660 (M.D. Fla. 2012), the court dismissed the plaintiff's complaint because it found she had "failed to provide any basis, factual or otherwise, for the Court to reasonably infer that her

hyperthyroidism, the 'confidential information,' or the 'confidential medical conditions' equate to genetic testing and/or genetic information." Resp., p. 8, quoting *Bell*, 2012 WL 6761660, at *3. In an attempt to distinguish *Bell*, Plaintiffs argue "that the information requested by Defendant was genetic information because it was not narrowly tailored to preclude production of records containing information regarding diseases which had manifested in their families." *Id*. In short, Plaintiffs provide even less factual basis than in *Bell* "for the Court to reasonably infer" that an allegedly overbroad medical records request "equate[s] to genetic testing and/or genetic information."

The cases upon which Plaintiffs rely, *EEOC v. Grisham Farm Prods.*; *EEOC v. Dolgencorp*; and *Jackson v. Regal Beloit* do not apply here. First, *Gresham Farm Prods.* is a case where there was an outright request by the employer for information related to diagnostic testing. *See EEOC v. Grisham Farm Prod.*, 191 F. Supp. 994, 998 (W.D. Mo. 2016) ("Grisham Farm's application requires applicants to … identify whether 'future … diagnostic testing … [has] been recommended or discussed' with a medical examiner."). Here, and unlike in *Girsham Farm Prods.*, Plaintiffs do not, and cannot allege, that specific diagnostic testing, or questions relating to the same, were solicited or requested through the request for outside medical records.

In *EEOC v. Dolgencorp*, the court granted summary judgment in favor of the EEOC based on "Dollar General's agent … ask[ing] … job candidates whether their grandparents, parents, or children had significant medical problems." 2022 U.S. Dist. LEXIS 132466, at *40 (N.D. Ala. 2022). Unlike what is alleged by Plaintiffs in this case, *Dolgencorp* involved inquiries into "significant medical problems" of *specific relatives* of the applicant. And like *Grisham Farm Prod.*, the claimant in *Dolgencorp* was denied employment, which is not alleged by Plaintiffs in this case. *Id*. at *1 (claimant was "one of the unsuccessful job applicants ….").

Finally, *Jackson v. Regal Beloit* involves a then-current employee who went on leave following a diagnosis of colon cancer and underwent surgery. 2018 WL 3078760, at *1 (E.D. Ky. 2018). Following her return to work, the former employee was instructed that she needed to undergo a medical screening and, during the screening, she refused to discuss her colon cancer or surgery with the company physician. *Id*. *2. The physician provided her with a medical records authorization form, stating that the records specific to her surgery must be received within two weeks and, until received, the employee "may be unable to perform any work related duties until [she] provide[s] the requested information." *Id*. As a result of refusing to provide information specific to her colon cancer and surgery, the former employee was displaced from her position, to a lower position. *Id*. at *3. Unlike *Jackson*, Plaintiffs in this instant case do not allege, and cannot allege, that they refused to provide documentation, that the documentation was required for them to begin work, or that their job assignment was premised on a review and assessment of medical records.[2] In fact, both Plaintiffs expressly allege that they were hired by Caterpillar. Compl., ¶¶ 39, 52.

For these reasons, Count I fails as a matter of law.

**C. Plaintiffs misconstrue Caterpillar's 'inadvertent' argument.**

Plaintiff argues that Caterpillar should not be excused from liability because its violation of GIPA was inadvertent. Resp., p. 10. However, Caterpillar is not arguing that *its* violation was inadvertent, or that it violated GIPA in any way. Instead, Caterpillar argues that, because Plaintiffs were informed in writing by the GINA notice to not provide genetic information, any purported

---

[2] Plaintiffs' claims are also distinguishable from *Jackson* because, in *Jackson*, the employer sought medical records specific to plaintiff's cancer-related surgery. *Id*. at *2. Here, the records sought were regarding Branson's reported meniscus (knee) surgery and Dotson's reported foot (bunion) surgery.

6

genetic information received thereafter would be inadvertent, given that Plaintiffs were aware not to provide such information. Memo, p. 20. Again, Plaintiffs' Count I is premised on the speculative and presumptive contents of the medical records that were requested. It is not premised on the actual contents of specific records that were sought or received. Therefore, to the extent that the contents of the medical records *would have* contained genetic information, such receipt of said information could only be considered inadvertent.

Indeed, GIPA provides that "inadvertently requesting family medical history by an employer, employment agency, labor organization, and licensing agency does not violate this Act." 410 ILCS 513/25(g). Further, because GIPA expressly incorporates GINA (410 ILCS 513/25(a), providing that employers should treat genetic information "consistent with federal law"), this Court must apply the safe harbor provision in GINA. The GINA safe harbor provision "absolves employers from liability when an unlawful requirement or request for genetic information is inadvertent." 29 C.F.R. § 1635(b)(1)(i)(B) ("If a covered entity uses language such as the following, any receipt of genetic information … will be deemed inadvertent."). Therefore, unwitting offers or requests of genetic information are not what the legislatures intended to prevent.

Interpreting and applying GINA's safe harbor provision, the court in *Tedrow v. Franklin Township Cmty. Sch. Corp.*, concluded that an inadvertent request or receipt of genetic information does not impose liability on an employer. *Tedrow v. Franklin Twp. Cmty. Sch. Corp.*, 2023 WL 3602712, at *27 (S.D. Ind. 2023), on reconsideration in part, 2023 WL 6036009 (S.D. Ind. 2023). In *Tedrow*, the plaintiff-employee was required to submit to a health examination to determine his ability to perform the essential functions of his role. *Id*. at *2. The plaintiff alleged that in the course of the examination, genetic information was requested and received by his employer or its agent in violation of GINA. *Id*. at *2-4. The defendant argued that it only requested medical

7

information (generally) and did not request or receive protected genetic information. *Id*. at *27. To the extent that the defendant received any protected genetic information, it was the result of the plaintiff's inadvertent disclosure. *Id*. The court agreed and reasoned that the inadvertent request or receipt of such information does not impose liability on the employer. *Id*. Accordingly, and here too, any inadvertently requested or received genetic information does not impose liability on Caterpillar under GIPA.[3]

## II. COUNT II IS COMPLETELY PREEMPTED BY ERISA, A DETERMINATION THAT CAN AND SHOULD BE MADE BY THE COURT ON DEFENDANT'S MOTION TO DISMISS.

There is no ambiguity in ERISA's mandate that it **"shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"** governed by ERISA. 29 U.S.C. § 1144 (emphasis added). However, as a last ditch effort to save his claim involving wellness benefits offered *exclusively* under an ERISA-governed plan, Plaintiff Branson argues that his claim is merely "conflict" preempted by ERISA and thus the preemption review must wait. Resp., pp. 16-17. He is wrong.

Well-settled case law tells us that a state law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). Moreover, the U.S. Supreme Court has time and again

---

[3] In their Response, Plaintiffs argue that *Tedrow* is inapplicable because it was decided in the context of a motion for summary judgment, not a motion to dismiss. Resp., p. 8. Accordingly, Plaintiffs argue that, because the GINA safe harbor was not decided at the initial pleading phase, it "confirm[s] Plaintiffs' (sic.) properly state facts to support their unlawful request (sic.) claims." *Id*. Plaintiffs' argument puts form over substance. Similar to *Tedrow*, Plaintiffs only allege that, "[a]fter the physical was completed, Caterpillar's medical staff made an additional request for medical information from [Plaintiffs] by requesting [they] provide copies of *past medical records.*" Compl., ¶¶ 36, 49 (emphasis added). Caterpillar's reliance on *Tedrow* is to show the Court that, in instances where a plaintiff alleges that only general medical information is requested, which is what Plaintiffs allege here, and not specific to genetic information, courts have held that the GINA safe harbor provision is applicable.

reaffirmed that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 201 (2004). Plaintiff Branson's claim regarding improper administration of wellness benefits inexorably "relates to" the only company employee benefit plan under which wellness benefits are offered— the Caterpillar Inc. Employee Health, Life and Disability Benefit Program ("Plan"). The Plan is indisputably a benefit plan governed by ERISA. Accordingly, there is no other outcome other than Plaintiff's claim is completely preempted.

The case of *Doe v. Aetna Inc.*, No. 16 C 8390, 2017 WL 118417 (N.D. Ill. 2017) is instructive on the breadth of ERISA's complete preemption powers over state law claims implicating, as here, the manner in which the benefits are administered. In *Doe*, the plaintiff sued the defendants alleges that they had disclosed her medical records in violation of two Illinois statutes—the Mental Health and Development Disabilities Confidentiality Act, 740 ILCS 11/1 et seq. and the AIDS Confidentiality Act, 410 ILCS 305/1 et. seq. *Id.* at *1. The court analyzed whether the state law claims were completely preempted by ERISA. It noted that the "purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans" to protect the interests of participants and their beneficiaries. *Id.* at *2 (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)). To that end, the court reasoned that Supreme Court precedent provides that, "ERISA preempts any state law that 'governs . . . a central matter of plan administration or interferes with nationally uniform plan administration." *Id.* at *2 (citing *Gobeille*, 136 S. Ct. at 943). Like here, the plaintiff argued that she was not seeking a claim for benefits and therefore, her claim was not within the scope of ERISA's enforcement provision, a factor in determining complete preemption. "ERISA, however, cannot fairly be construed through such a narrow scope,"

the court held. "Where, as here, a state law claim 'duplicates, supplements or supplants the ERISA civil enforcement remedy,' it is preempted." *Id.* at \*3 (quoting *Davila*, 542 U.S. at 209).

Here, to entertain Plaintiff Branson's state law claim is akin to evaluating whether ERISA's detailed disclosure and administration requirements should be supplanted by a state law requirement that is contained nowhere in ERISA or this ERISA Plan. If the Court determines that the claim is not preempted, every ERISA-governed benefit plan in the country that operates in Illinois will be required to administer its wellness plan differently only in Illinois, requiring "(2) the employee provide[] written authorization" where no such written authorization is required under ERISA. As the Supreme Court has repeatedly stated, "ERISA is, we have observed, a `comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system." *Varity Corp. v. Howe*, 516 U.S. 489 (1996) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 251 (1993) (quoting *Nachman Corp. v. Pension Benefit Guaranty Corporation*, 446 U.S. 359, 361 (1980)). It should not be disturbed here, particularly where Plaintiff Branson does not argue that his participation in the wellness program was involuntary, only that his "written authorization" was not obtained.

Plaintiff Branson's claim under Count II is completely preempted by ERISA and should be dismissed.

### III. PLAINTIFFS' BASIS FOR ALLEGING RECKLESS OR INTENTIONAL VIOLATIONS OF GIPA IS INSUFFICIENT AS A MATTER OF LAW.

Plaintiffs make two arguments to support their allegations that Caterpillar violated GIPA recklessly or intentionally – neither are availing.

First, Plaintiffs half-heartedly argue that "GIPA was amended in 2008 to prohibit Defendant's alleged conduct." Resp., p. 18. That alone is insufficient to maintain an allegation of reckless or intentional violations of GIPA. If it could, then this Court would never have reached

its conclusion in *Kukovec* and struck plaintiff's claim for reckless or intentional violations under the Illinois Biometric Information Privacy Act – a statute that was enacted in 2008. *See Kukovec v. Estee Lauder Co., Inc.*, 2022 WL 16744196, at *8 (N.D. Ill. 2022) (Shah, J.) ("Plaintiff doesn't mention defendant's state of mind until the very end of the complaint, where she requests damages. And no other facts in the complaint point to reckless or intent – e.g., knowledge of BIPA requirements or statements about purposefully not complying with the law."). Here, Plaintiffs do not, and cannot, allege that Caterpillar had knowledge of GIPA or that it purposefully disregarded the statute. That is purely speculative and cannot be maintained just by arguing that Caterpillar should have known about GIPA because it was amended in 2008.

Second, Plaintiffs make the incredible argument that because the initial questionnaire contained a statement that an applicant "should *not* provide genetic information … [which includes] an individual's family medical history, the results of an individual's or family member's genetic tests …" (Memo., Exs. A and B, emphasis added), that Defendant was aware of and intentionally violated GIPA. Resp., pp. 18-19. Knowing of GINA, and working to ensure compliance with that statute, does not establish that Defendant was aware of and intentionally violating another statute. Plaintiffs' allegations continue to consist of only conclusory allegations. *See, e.g., Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996) ("A conclusory allegation of reckless, however, is insufficient to defeat a motion to dismiss."); *see also Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019) (dismissing BIPA claim for damages based on intentional and reckless conduct where complaint's allegations concerning such conduct did "nothing to distinguish this case from every possible BIPA case where the defendant is alleged to have failed to meet the strictures of Section 15"); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing BIPA claim for statutory damages because plaintiff's "abstract statements regarding

11

damages" were insufficient to establish that the defendant "acted recklessly or intentionally").

## CONCLUSION

For these reasons, and for the reasons set forth in its Memorandum of Law in Support of its Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 29), Caterpillar Inc. respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint *with prejudice*.

DATED: March 19, 2024              Respectfully submitted,

                                   CATERPILLAR INC.


                                   By: */s/ Ada W. Dolph*
                                         One of Its Attorneys

Ada W. Dolph
adolph@seyfarth.com
Paul J. Yovanic Jr.
pyovanic@seyfarth.com
Ala D. Salameh
asalameh@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:   (312) 460-5000
Facsimile:   (312) 460-7000