UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KERRY BRANSON and SHELLEY DOTSON, <br><br> Plaintiffs, <br><br> v. <br><br> CATERPILLAR, INC., <br><br> Defendant. | No. 23 CV 14329 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiffs Kerry Branson and Shelley Dotson applied to work as material handlers for defendant Caterpillar, Inc. They received conditional employment offers requiring them to complete preemployment physical examinations at Caterpillar's on-site medical offices. As part of the physical examinations, plaintiffs filled out medical questionnaires asking about their medical histories. Defendant also made separate requests for their past medical records. After being hired, Branson participated in a workplace wellness program that offered a physical examination. Branson filled out a form that asked about his family's medical history of certain conditions. Plaintiffs seek to represent a class and bring claims under Illinois's Genetic Information Privacy Act alleging that these requests for information violated provisions of the Act. Branson and Dotson allege a violation of Section 25(c)(1), which prohibits employers from requesting genetic information of an individual or their family members as a part of a preemployment application. Branson also alleges a violation of Section 25(e), which prohibits employers from using genetic information

in furtherance of a workplace wellness program. Caterpillar moves to dismiss the amended complaint. For the reasons discussed below, the motion is granted in part and denied in part.

I.   **Legal Standards**

A complaint must contain "a short and plain statement" showing that the plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

II.   **Facts**

Kerry Branson and Shelley Dotson applied to work as material handlers at Caterpillar, Inc. [17] ¶¶ 30, 43.[1] They received employment offers conditioned upon successfully completing preemployment physical examinations at Caterpillar's on-site medical offices in Decatur, Illinois. *Id.* ¶¶ 33, 46. During their examinations, Caterpillar's medical staff instructed plaintiffs to complete a "Post Offer Medical Questionnaire," which asked, among other things, questions about their medical history, including hypertension, cancer, diabetes, and cardiac issues. *Id.* ¶¶ 34, 47.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiffs' amended complaint, [17].

The form included a section advising plaintiffs about the Genetic Information Nondiscrimination Act and asking that they "not provide any genetic information when responding to this request for medical information." *See* [29-1], [29-2]. After completing the paperwork and physical examinations, the medical staff made an additional request to plaintiffs for copies of their past medical records. [27] ¶¶ 36, 49. The staff did not direct plaintiffs either verbally or in writing to redact or refrain from providing genetic information on the medical records. *Id.* ¶¶ 37, 50. Caterpillar hired Branson and Dotson as material handlers after they completed all the required steps in the hiring process. *Id.* ¶¶ 39, 52.

While working for Caterpillar, Branson participated in a physical examination as a part of a workplace wellness program. [17] ¶ 40. During the examination, medical staff had Branson fill out a form, "Caterpillar Health Screening History and Review." *Id.* The form stated: "Please list any family history (parents or siblings) of coronary artery disease, diabetes, or cancer and age of onset[.]" *Id.* Branson disclosed his family's medical history, including family members' diagnoses on the form. *Id.* Branson did not otherwise authorize Caterpillar to collect this information. *Id.* ¶ 41.

Branson and Dotson bring this suit alleging violations of the state's Genetic Information Privacy Act. [17].[2] Branson and Dotson allege violations of

---

[2] The court has subject matter jurisdiction over the state-law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), which creates federal jurisdiction if "(1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant; and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate." *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017). CAFA jurisdiction is satisfied because plaintiffs allege that the class includes more than 100 class members; minimal diversity is met because plaintiffs are citizens of Illinois and defendant is

Section 25(c)(1) of the Act. *Id.* ¶¶ 69–79. Branson alleges a violation of Section 25(e) of the Act. *Id.* ¶¶ 80–90.

**III. Analysis**

    **A.    Requests for Genetic Information under Section 25(c)(1)**

The Genetic Information Privacy Act regulates the use and disclosure of genetic information. 410 ILCS 513/5(2); *see also Bridges v. Blackstone, Inc.*, 66 F.4th 687, 688 (7th Cir. 2023). The Illinois General Assembly amended GIPA in 2008 to mirror provisions of the federal Genetic Information Nondiscrimination Act applying to employers. *See* 410 ILCS 513(25)(a) ("An employer… shall treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law, including but not limited to the Genetic Information Nondiscrimination Act of 2008") *and* 42 U.S.C. § 2000ff–1. Under Section 25(c)(1) of GIPA, an employer may not "solicit, request, [or] require… genetic information of a person or a family member of the person… as a condition of employment [or] preemployment application." 410 ILCS 513/25(c)(1). GIPA's definition of "genetic information" is borrowed from the Health Insurance Portability and Accountability Act. *Id.* at 513/10. Genetic information includes, 45 C.F.R § 160.103:

    (i)    The individual's genetic tests;
    (ii)   The genetic tests of family members of the individual;
    (iii)  The manifestation of a disease or disorder in family members of such individual; or

---

a citizen of Delaware and Texas; and the amount in controversy alleged exceeds $5,000,000. [17] ¶¶ 10–13.

> (iv) Any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual.

Section 40 provides a private right of action for "any person aggrieved" by a violation of the Act. 410 ILCS 513/40(a).

Defendant argues that medical conditions and family medical history do not constitute genetic information. [29] at 16–18. GINA defines genetic information to include an individual's genetic tests, which "means an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes."[3] 42 USC § 2000ff(7)(A). GINA distinguishes between medical information not covered by the statute and genetic information that is protected. An employer does not violate the statute, 42 U.S.C. § 2000ff–9:

> based on the use, acquisition, or disclosure of medical information that is not genetic information about a manifested disease, disorder, or pathological condition of an employee or member, including a manifested disease, disorder, or pathological condition that has or may have a genetic basis.

The statute clarifies that non-genetic medical information about a manifested disease, disorder, or pathological condition of an employee is not protected, even if those conditions have a genetic basis. The exclusion of non-genetic medical information about a manifested disease, disorder, or pathological condition only applies as to the individual employee; it does not apply as to an employee's family members. GINA is concerned with employers who make a "predictive assessment concerning an individual's propensity to get an inheritable genetic disease or disorder

---

[3] GINA's definition of "genetic information" omits the fourth category in the HIPAA definition. *Compare* 45 C.F.R § 160.103 *with* 42 U.S.C. § 2000ff-4(A).

5

based on the occurrence of an inheritable disease or disorder in [a] family member." *Poore v. Peterbilt of Bristol, L.L.C.*, 852 F.Supp.2d 727, 730 (W.D. Va. 2012) (citing H.R.Rep. No. 110–28, pt. 3, at 70 (2007), 2008 U.S.C.C.A.N. 112, 141). Defendant cites cases where other courts have found medical conditions like epilepsy or Huntington's disease do not constitute genetic information under GINA, *see* [29] at 18, but these cases involved an individual's own conditions or diagnoses. *See Munnerlyn v. Installed Bldg. Prod., LLC*, No. 1:20-CV-225-LY, 2020 WL 2528547, at *3 (W.D. Tex. May 18, 2020), *report and recommendation adopted as modified*, No. A-20-CV-00225-LY, 2020 WL 10056135 (W.D. Tex. June 15, 2020) (dismissing GINA claim based on plaintiff's epilepsy diagnosis); *Duignan v. City of Chicago*, 275 F.Supp.3d 933, 939 (N.D. Ill. 2017) (dismissing GINA claim based on plaintiff's Huntington's disease diagnosis). A disease or disorder that would not be considered genetic information as it pertains to an individual could still be protected genetic information if it manifests in their family members because of its possible use as an impermissible proxy.

The state statute's text and federal regulations interpreting GINA's parallel provisions make clear that genetic information includes family medical history. The EEOC, the agency charged with enforcing the employment provisions of GINA, defines "family medical history" as "information about the manifestation of disease or disorder in family members of the individual." *See* 29 C.F.R § 1635.3(b); (c)(iii) ("The manifestation of disease or disorder in family members of the individual (family medical history)..."). Some courts have also interpreted "manifestation of a disease or disorder" in family members to be limited to those that implicate inheritability. *See,*

6

*e.g., McKnight v. United Airlines, Inc.*, No. 23-CV-16118, 2024 WL 3426807, at *3 (N.D. Ill. July 16, 2024) ("A family member's viral infection or broken bone might in some sense be considered a 'disease or disorder,' but such medical conditions are generally not connected with the kind of genetic information GIPA is meant to regulate; they shed no light on another family member's propensity for those conditions."). But that interpretation is contrary to GIPA's text. The statute does not limit the category of "family medical history" to diseases or disorders that implicate inheritability. Genetic information under GIPA includes: an individual's genetic tests, the genetic tests of their family members, and the "manifestation of a disease or disorder" in their family members. 45 C.F.R § 160.103 (listing fourth category). The category of genetic information that relates to an individual's family members is not limited to genetic testing. While medical information about an employee's own diseases and disorders is not protected under GINA if it is not genetic information, *see* 42 U.S.C. § 2000ff–9, there's no similar limitation on medical information about the diseases and disorders of an employee's family members. And the regulations equate the term "family medical history" in the definition of "manifestation of disease or disorder" in family members. 29 C.F.R § 1635.3(b). A request for an employee's family medical history, even without explicit reference to a disease or disorder suggesting genetic predisposition, is a request for genetic information under GIPA. *See* EEOC Final Rule on Title II of the Genetic Information Nondiscrimination Act of 2008, 75 Fed. Reg. 68915 (Nov. 9, 2010) (explaining the agency's decision not to include the word "inheritable" before "disease or disorder" in the regulation's

7

definition of "family medical history" given the plain language of the statute and other compliance and enforcement considerations); *but see Conner-Goodgame v. Wells Fargo Bank, N.A.*, No. 2:12-CV-03426-IPJ, 2013 WL 5428448, at *11 (N.D. Ala. Sept. 26, 2013) (rejecting an interpretation of GINA that would "provide more protection to an employee's family member's information than to the actual employee's information" as an absurd result).

Defendant argues that its request for medical records did not violate GIPA because any request was inadvertent. A "request" for genetic information includes "making requests for information about an individual's current health status in a way that is likely to result in a covered entity obtaining genetic information." 29 C.F.R § 1635.8.(a). Exceptions apply when a request is inadvertent. *Id.* § 1635.8(b)(1). A request is inadvertent if it "directs the individual and/or health care provider from whom it requested medical information (in writing, or verbally, where the covered entity does not typically make requests for medical information in writing) not to provide genetic information" but still results in genetic information being disclosed in response. *Id.* § 1635.8(b)(1)(i)(A). The regulation provides an example of safe-harbor language that makes any disclosure of genetic information in response to a request inadvertent.[4] *See id.* § 1635.8(b)(1)(i)(B). In other words, an employer can

---

[4] Here's the example: "The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's

8

avoid liability by properly warning an individual to withhold genetic information in responding to a request for medical information. Defendant included the safe-harbor language in the post-offer medical questionnaire, but plaintiffs allege that the request for medical records after the physical examination was a separate request that should have come with its own warning. [36] at 2. Even though the request for medical records was made on the same day, it is plausible that plaintiffs would view these as separate requests and not associate the warning on the medical questionnaire with the request for medical records. The safe-harbor language included in the questionnaire does not relieve defendant from liability.

Defendant contends that its request for medical records did not constitute a request for plaintiffs' family medical history.[5] [41] at 3. Even without safe-harbor language, a request may be inadvertent if an employer properly limits the request to non-genetic information but receives an overly broad response. *See* 29 C.F.R. § 1635.8(b)(1)(i)(C) (offering example of inadvertent receipt "where an overly broad response is received in response to a tailored request for medical information"). Plaintiffs say that the request—not the response—was overbroad and therefore necessarily included family medical history. The inquiry here is whether defendant's request for medical records was "likely to result in a covered entity obtaining genetic

---

family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services."

[5] Defendant says that the records it sought were regarding Branson's reported knee surgery and Dotson's reported foot surgery. *See* [41] at 6 n.2. Plaintiffs' amended complaint does not allege these facts, and there's no record of how the request was worded or phrased.

9

information." *Id.* § 1635.8(a). Plaintiffs say that it is "standard industry practice" to include somebody's family medical histories on a medical report. [36] at 5. Without knowing about what, if any, limitations applied to the medical-records request, it is reasonable to infer that defendant's request was likely to result in records that included family medical history and therefore included genetic information protected by GIPA. Defendant's motion to dismiss the claim under Section 25(c)(1), limited to the post-exam request for medical records, is denied.

### B. Workplace Wellness Program under Section 25(e)

Under Section 25(e) of GIPA, an employer may not use genetic information "in furtherance of a workplace wellness program" unless the health or genetic services are offered by the employer, the employee provides written authorization, and individually identifiable information is protected. 410 ILCS 513/25(e). Defendant doesn't argue that its request for Branson's family medical history met these conditions, but it argues that his claim under Section 25(e) is preempted by the Employee Retirement Income Security Act, which regulates employee benefit plans. [29] at 21–23; [41] at 8–10.

The scope of ERISA preemption is broad. *See Halperin v. Richards*, 7 F.4th 534, 540 (7th Cir. 2021) (citing *California Div. of Labor Standards Enf't v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316, 324 (1997)). Complete preemption and conflict preemption are governed by separate provisions. *See* 29 U.S.C. § 1332 (ERISA § 502) *and* 29 U.S.C. § 1144 (ERISA § 514). The former is "really a jurisdictional rather than a preemption doctrine." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd.*

10

*Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008). It effectively displaces a state-law cause of action and converts it into a federal claim. *Id.* A state-law claim is completely preempted "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)" and "there is no other independent legal duty that is implicated by a defendant's actions." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).

Branson is not bringing his claim as a beneficiary, nor is he seeking to clarify plan terms or recover benefits. *See Franciscan Skemp*, 538 F.3d at 601. He could not have brought his GIPA claim under ERISA. And GIPA implicates an independent legal duty for an employer to properly request and safeguard genetic information obtained in furtherance of a workplace wellness program. Complete preemption is inapplicable here.

Unlike complete preemption, conflict preemption is a "true preemption doctrine." *Id.* ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (ERISA § 514(a)). A state law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983). A law may be exempt from preemption under Section 514(d) of ERISA, which provides that Section 514(a) shall not "be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(d) (ERISA § 514(d)).

Preemption is an affirmative defense, and a plaintiff is not required to plead around it. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir.

11

2019). Dismissal under Rule 12(b)(6) is appropriate only when a plaintiff has pleaded himself out of court. *Id.* Defendant says this wellness exam was a part of the company's employee health, life, and disability benefit program, which is governed by ERISA.[6] [29] at 10–11. Branson alleges that the physical examination was a part of Caterpillar's workplace wellness program. [17] ¶ 40. Section 25(e) of GIPA prohibits the use of genetic information "in furtherance of a workplace wellness program." 410 ILCS 513/25(e). To the extent that a workplace wellness program under GIPA is a part of an employer benefit plan, Section 25(e) "relates" to a plan and is therefore preempted by ERISA. Not all workplace wellness programs are tied to group health plans, but some are. *See* EEOC Final Rule on Employer Wellness Programs and the Genetic Information Nondiscrimination Act, 81 Fed. Reg. 31144 n.14 (May 17, 2016) (amending 29 C.F.R. § 1635) (describing a wellness program that may need to be ERISA compliant). As pled in the amended complaint and based on the undisputed assertion that the wellness program fell under the company's ERISA plan, Branson's claim under Section 25(e) of GIPA is preempted by ERISA.

## C. Intentional or Reckless Violation

GIPA awards statutory damages of $2,500 for negligent violations of the Act and $15,000 (or whichever is greater of actual damages) for intentional or reckless violations. *See* 410 ILCS 513/40. Defendant says plaintiffs fail to allege intentional or

---

[6] On a 12(b)(6) motion, I may consider documents that are both referred to in the complaint and central to its claims. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Defendant attaches the plan documents to its motion to dismiss, and plaintiffs do not dispute their accuracy or object to their consideration at this Rule 12(b)(6) stage.

reckless violations as required to state a claim for statutory damages under GIPA. [29] at 23–25. Plaintiffs allege that defendant was aware of GIPA's requirements (as evidenced by the safe-harbor provision in the medical questionnaire form), but defendant did not comply with the Act in its other requests. [36] at 18. This is sufficient to allege knowledge. In any case, plaintiffs' prayer for relief is not tied to any one theory, *see* [17] at 21, and they are entitled to whatever relief is available for claims they prevail on. *See* Fed. R. Civ. P. 54(c).

## IV. Conclusion

Defendant's motion to dismiss, [28], is granted in part and denied in part. Plaintiffs' claims under Section 25(c) survive. Branson's claim under Section 25(e) is dismissed without prejudice.[7]

ENTER:

Manish S. Shah
United States District Judge

Date: August 14, 2024

---

[7] *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) (plaintiffs should be given at least one opportunity to amend after an initial dismissal). Because not all workplace wellness plans relate to an ERISA plan, it is conceivable that plaintiffs could state a claim under GIPA Section 25(e) that is not preempted.