**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KERRY BRANSON, SHELLEY DOTSON, DONALD BLOCK, and TINA HARDEN, individually and on behalf of themselves and all others similarly situated, | Case No. 1:23-cv-14329 |
| Plaintiffs, | |
| v. | Hon. Manish S. Shah |
| CATERPILLAR INC., | |
| Defendant. | |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Defendant Caterpillar Inc. ("Defendant" or "Caterpillar"), hereby submits its answer and

affirmative defenses to Plaintiffs' Second Amended Class Action Complaint ("SAC").

**COMPLAINT ¶1:**

Unlocking the human genetic code came with it the potential for hitherto unfathomable medical development. It permitted individuals to learn in detail the possibilities that were hidden within their genome. For the first time, women can now learn whether they are predisposed to get breast cancer; families can trace their genetic lineage back thousands of years, and law enforcement can use DNA samples to identify criminals.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 1. To the extent that an answer is required, Paragraph 1 is denied.

**COMPLAINT ¶2:**

However, all of this information can only be obtained if people are willing to allow sharing of genetic information, and that is only possible if people know that their genetic information will not be used against them in future employment, insurance or other situations. For example, few women would want to learn about a predisposition to breast cancer if that meant that they could be barred from certain jobs or prevented from obtaining life insurance.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2. To the extent that Paragraph 2 contains an allegation against Defendant, Paragraph 2 is denied.

**COMPLAINT ¶3:**

The Illinois Legislature enacted GIPA in 1998 with the goal to protect Illinois residents from having their genetic information being used against them in employment settings.

**ANSWER:**

Defendant admits that Illinois Legislature enacted GIPA in 1998. Answering further, the cited statute speaks for itself and, accordingly, Defendant denies Paragraph 3 to the extent that it is inconsistent with the cited statute.

**COMPLAINT ¶4:**

Consistent with this goal, GIPA provides strong legal protections to ensure that Illinois residents can take advantage of the knowledge that can be gained from obtaining personal genetic information, without fear that this same information could be used against them by employers.

**ANSWER:**

Paragraph 4 contains conclusions of law for which no answer is required, and therefore is denied. Answering further, the cited statute speaks for itself and, accordingly, Defendant denies Paragraph 4 to the extent that it is inconsistent with the cited statute.

**COMPLAINT ¶5:**

Among its other valuable protections, GIPA prohibits employers from learning or using genetic information in making employment decisions. GIPA bars employers from asking about employees or potential employees' genetic information, prevents employers from obtaining this information from third parties, and forbids employers from using such information to affect the terms and conditions of employment.

**ANSWER:**

Paragraph 5 contains conclusions of law for which no answer is required, and therefore is denied. Answering further, the cited statute speaks for itself and, accordingly, Defendant denies Paragraph 5 to the extent that it is inconsistent with the cited statute.

**COMPLAINT ¶6:**

To accomplish this goal, GIPA employs a comprehensive definition of "genetic information" that includes information regarding an individual's family medical history.

**ANSWER:**

Paragraph 6 contains conclusions of law for which no answer is required, and therefore is denied. Answering further, the cited statute speaks for itself and, accordingly, Defendant denies Paragraph 6 to the extent that it is inconsistent with the cited statute.

**COMPLAINT ¶7:**

Despite GIPA's prohibitions, some companies in Illinois still ask their employees or applicants to provide protected family medical history when making hiring determinations and job assignments in blatant violation of the law.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7. To the extent that an answer is required, Paragraph 7 is denied. Answering further, to the extent that Paragraph 7 contains an allegation against Defendant, Paragraph 7 is denied.

**COMPLAINT ¶8:**

Defendant chose to repeatedly disregard Illinois' genetic privacy laws by asking its employees to provide genetic information in the form of family medical history to assist the companies in making employment decisions.

**ANSWER:**

Paragraph 8 is denied.

**COMPLAINT ¶9:**

Accordingly, Plaintiffs seek on behalf of themselves, and all of Defendant's other similarly situated employees in the state, an order: (i) requiring Defendant to cease the unlawful activities discussed herein; and (ii) awarding actual and/or statutory damages to Plaintiffs and the members of the proposed Class.

**ANSWER:**

Defendant denies that Plaintiffs have any viable claims against Defendant or that they, or the putative class, are entitled to any relief, and deny that class certification is appropriate.

**COMPLAINT ¶10:**

Plaintiff Kerry Branson is and was at all relevant times of employment with Defendant, an individual citizen of the State of Illinois. Mr. Branson currently resides in Decatur, Illinois.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10. To the extent that an answer is required, Paragraph 10 is denied.

**COMPLAINT ¶11:**

Plaintiff Shelley Dotson is and was at all relevant times of employment with Defendant, an individual citizen of the State of Illinois. Ms. Dotson currently resides in Decatur, Illinois.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11. To the extent that an answer is required, Paragraph 11 is denied.

**COMPLAINT ¶12:**

Plaintiff Donald Block is and was at all relevant times of employment with Defendant, an individual citizen of the State of Illinois. Mr. Block currently resides in Peoria, Illinois.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12. To the extent that an answer is required, Paragraph 12 is denied.

**COMPLAINT ¶13:**

Plaintiff Tina Harden is and was at all relevant times of employment with Defendant, an individual citizen of the State of Illinois. Ms. Harden currently resides in Streator, Illinois.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13. To the extent that an answer is required, Paragraph 13 is denied.

**COMPLAINT ¶14:**

Defendant is a Delaware corporation. Caterpillar is headquartered in Irving, Texas and conducts business throughout this District, the State of Illinois, and the United States. Upon information and belief, Caterpillar employs over 1,000 employees within the State of Illinois. Caterpillar operates throughout Illinois across numerous locations, including "key offices" in Chicago, Peoria, Aurora, East Peoria, and Mossville. [Footnote omitted] Caterpillar also operates a component manufacturing facilities at 27th & Pershing Road, Decatur, IL 62525 (the "Decatur Facility"), 299 Sanford Street #201, East Peoria, IL 61611 (the "East Peoria Facility"), and 1300 4th Park Road, Pontiac, IL 61764 (the "Pontiac Facility").

**ANSWER:**

Defendant admits that it is a Delaware corporation with its headquarters in Irving, Texas. Answering further, Defendant admits that it conducts business in the State of Illinois and that it currently employs more than 1,000 employees across the State of Illinois. Except as admitted, Paragraph 14 and its footnote are denied.

**COMPLAINT ¶15:**

This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

**ANSWER:**

Defendant admits that this Court has subject matter jurisdiction over this matter, including under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

**COMPLAINT ¶16:**

The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

**ANSWER:**

The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the

parties are diverse and the amount in controversy exceeds the requisite threshold.

**COMPLAINT ¶17:**

This Court has jurisdiction over the Defendant because it conducts business in this District, and a substantial part of the unlawful events and practices which give rise to this action occurred in this District.

**ANSWER:**

Defendant admits that this Court has jurisdiction over this matter. Except as admitted,

Paragraph 17 is denied.

**COMPLAINT ¶18:**

This Court may exercise jurisdiction over the Defendant because it has sufficient minimum contacts in Illinois and purposefully avails itself of the markets within Illinois through the manufacture, processing and distribution of their products, and hiring of employees, thus rendering jurisdiction by this Court proper and necessary.

**ANSWER:**

Defendant admits that this Court has jurisdiction over this matter. Except as admitted,

Paragraph 18 is denied.

**COMPLAINT ¶19:**

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this judicial district and because Defendant has conducted the unlawful practices at issue in this action within this judicial district and has done business within this judicial district. Venue is also proper in this court pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to the Court's personal jurisdiction with respect to this action.

**ANSWER:**

Defendant admits that venue is proper. Except as admitted, Paragraph 19 is denied.

**COMPLAINT ¶20:**

During the 1990s, the U.S. government poured billions of dollars into the Human Genome Project in an attempt to map the entire human genetic code. When President Clinton announced the first successful "rough draft" of the Project in 2000, he hailed it as one of the great achievements of human history, and said: "Today we are learning the language with which God created life[.] " [Footnote omitted]

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 20. To the extent that an answer is required, Paragraph 20 and its footnote

are denied.

**COMPLAINT ¶21:**

However, like any great leap in human understanding, learning the meaning of people's genetics came with many concerns. One movie released around this time, the dystopian science fiction movie Gattaca, attempted to show how this new technology could be abused. The movie conjured a not-too-distant future where genetic discrimination was rampant. In the movie, companies segregated people based on their genetic profiles, those with better genetic profiles (i.e., genetically engineered humans) were eligible for professional employment, while others with less desirable genetics (e.g., susceptibility to heart disease or cancer) were unemployable or relegated to menial jobs. Since its release, the film has been regularly used in schools to show the possible misuses of genetic information. [Footnote omitted]

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 21. To the extent that an answer is required, Paragraph 21 and its footnote

are denied.

**COMPLAINT ¶22:**

Illinois stood at the forefront of protecting its citizens from the abuse of this technology when it first passed GIPA in 1998. According to the Illinois Legislature, the intent of GIPA is to encourage the public to embrace genetic testing by eliminating any perception that genetic information gleaned from those tests (such as family medical history) could later be demanded from and/or used against them. Limiting "requests for [] protected health information to the minimum necessary to accomplish an intended purpose ... is a key component of health information privacy." 410 ILCS 513/5(5).

**ANSWER:**

Defendant admits that Plaintiffs purport to paraphrase 410 ILCS 513/5(1)-(5). Answering

further, the cited statute speaks for itself and, accordingly, Defendant denies Paragraph 22 to the

extent that it is inconsistent with the cited statute.

**COMPLAINT ¶23:**

The Illinois Legislature amended GIPA in 2008 to increase its protections and harmonize
Illinois state law with the then-recently passed Federal Genetic Information Nondiscrimination
Act of 2008 ("GINA"), 110 P.L. 233; see also 42 U.S.C. § 2000ff. The 2008 amendments to GIPA
sought to further bar the practices of employers relating to the use of genetic information of
employees, including such employees' family medical history.

**ANSWER:**

Defendant admits that the Illinois legislature amended GIPA in 2008. Answering further,

the cited statutes speak for themselves and, accordingly, Defendant denies Paragraph 23 to the

extent that it is inconsistent with the cited statutes.

**COMPLAINT ¶24:**

During discussions of the 2008 GIPA amendments, the Illinois Legislature recognized the
importance of safeguarding family medical history due to the fact that it is akin to knowledge of
genetic predispositions:

> I hope the [legislature] understands the importance of [family medical history]; it's
> becoming more and more important. Back in `96 or `97, I had a third generation
> ovarian cancer survivor that came to me with this issue.... If a woman has ... the
> gene that causes breast cancer, she can have up to an 84 percent probability that she
> will develop breast cancer sometime in her life ... it's important that we help people
> be able to know that information and know they won't be discriminated against in
> their employment .... Quite honestly, with genetic information we have today, we
> could identify a pool of people that ... no one would want to employ. [GIPA] helps
> guarantee that we don't have that kind of discrimination occur.

Illinois House Transcript, 2008 Reg. Sess. No. 276, pp. 33-34.

**ANSWER:**

Defendant admits that Plaintiffs purport to quote portions of Illinois House Transcript, 2008 Reg. Sess. No. 276, pp. 33-34. Answering further, the transcript cited speaks for itself and, accordingly, Defendant denies Paragraph 24 to the extent that it is inconsistent with the transcript.

**COMPLAINT ¶25:**

In passing GIPA, the Illinois Legislature was clear that it was expanding on the protections offered by federal law under GINA. As such, GIPA provides as a baseline that employers "shall treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law, including but not limited to [GINA]." 410 ILCS 513/25(a). Thus, an employer that acts in contravention of GINA violates Section 25(a) of GIPA.

**ANSWER:**

Paragraph 25 is denied.

**COMPLAINT ¶26:**

Thereafter, to accomplish the Illinois Legislature's goal of ensuring that individuals can learn their genetic information without fear of such information being demanded from them by prospective employers, GIPA bars employers from directly or indirectly requesting or using genetic information in hiring, firing, demoting, or in determining work assignment or classifications of applicants or employees. Specifically, GIPA states: "An employer ... shall not directly or indirectly do any of the following:

(1) solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, ... as a condition of employment, preemployment application...;

(2) affect the terms, conditions, or privileges of employment, preemployment application, ... or terminate the employment, ... of any person because of genetic testing or genetic information with respect to the employee or family member...;

(3) limit, segregate, or classify employees in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee as an employee because of genetic testing or genetic information with respect to the employee or a family member, ...; and

(4) retaliate through discharge or in any other manner against any person alleging a violation of this Act or participating in any manner in a proceeding under this Act.

410 Ill. Comp. Stat. 513/25(c).

**ANSWER:**

Defendant admits that Plaintiffs purport to quote portions of 410 ILCS 513/25(c). Answering further, the cited statute speaks for itself and, accordingly, Defendant denies Paragraph 26 to the extent that it is inconsistent with the cited statute.

**COMPLAINT ¶27:**

GIPA adopted Congress' definition of "genetic information" that includes not just the narrow results of an individual's genetic tests, but also information regarding "[t]he manifestation of a disease or disorder in family members of such individual[.]" 410 ILCS 513/10; see 45 C.F.R. § 160.103.

**ANSWER:**

Defendant admits that Plaintiffs purport to quote portions of 410 ILCS 513/10. Answering further, the cited statute speaks for itself and, accordingly, Defendant denies Paragraph 27 to the extent that it is inconsistent with the cited statute.

**COMPLAINT ¶28:**

Even if an employer otherwise obtains genetic information lawfully, it still may not use or disclose the genetic information in violation of GIPA. 410 ILCS 513/25(j). "Disclosure" is defined as "the release, transfer, provision of access to, or divulging in any manner of information outside the entity holding the information." 410 ILCS 513/10; 45 CFR 160.103.

**ANSWER:**

Paragraph 28 is denied.

**COMPLAINT ¶29:**

In order to enforce these and other requirements, GIPA provides individuals with a broad private right of action, stating: "Any person aggrieved by a violation of this Act shall have a right of action ... against an offending party." 410 ILCS 513/40(a). Under this private right of action, a party may recover, for each violation: (a) $2,500 or actual damages, whichever is greater, for a negligent violation, or $15,000 or actual damages, whichever is greater, for a willful violation; (b) reasonable attorneys' fees; and (c) "[s]uch other relief, including an injunction, as the ... court may deem appropriate." *Id.*

**ANSWER:**

Defendant admits that Plaintiffs purport to quote portions of 410 ILCS 513/40(a). Answering further, the cited statute speaks for itself and, accordingly, Defendant denies Paragraph 29 to the extent that it is inconsistent with the cited statute.

**COMPLAINT ¶30:**

Plaintiffs are not required to allege or prove actual damages in order to state a claim under GIPA, and they can seek statutory damages under GIPA as compensation for the violation of their rights by Defendant. See Rosenbach v. Six Flags Ent. Corp., 2019 IL 123186, at ¶ 40, 432 Ill. Dec. 654, 129 N.E.3d 1197 (holding by the Illinois Supreme Court that "an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under [the Biometric Information Privacy Act ("BIPA")] in order to qualify as an `aggrieved person' under BIPA"); see also Bridges v. Blackstone Grp., Inc., 2022 U.S. Dist. LEXIS 121205, at *8 (S. D. Ill. July 8, 2022) (holding that it is appropriate to apply BIPA's definition of "aggrieved person" used by the Rosenbach court to alleged violations of GIPA).

**ANSWER:**

Paragraph 30 contains conclusions of law for which no answer is required, and therefore is denied.

**COMPLAINT ¶31:**

Thus, GIPA provides valuable privacy rights, protections, and benefits to the citizens of Illinois and provides those citizens with the means to aggressively enforce those rights.

**ANSWER:**

Paragraph 31 contains conclusions of law for which no answer is required, and therefore is denied.

**COMPLAINT ¶32:**

In or around March 2019, Mr. Branson submitted an application for the full-time, permanent position of Material Handler at the Decatur Facility.

**ANSWER:**

Defendant admits that in or around March 2019, Branson submitted an application for the

full-time position of Material Handler at Caterpillar's Decatur Facility. Except as admitted,

Paragraph 32 is denied.

**COMPLAINT ¶33:**

On or around March 4, 2019, during the application and hiring process, Caterpillar directly or indirectly solicited, requested, or required Mr. Branson to disclose his family medical history as a condition of employment.

**ANSWER:**

Paragraph 33 is denied.

**COMPLAINT ¶34:**

Specifically, on or around March 4, 2019, an individual who upon information and belief was an employee of Caterpillar indirectly or directly solicited, requested, or required Mr. Branson to disclose his family medical history as a condition of employment by requiring Mr. Branson to provide preexisting medical records from outside providers but failing to warn Mr. Branson that Caterpillar was not entitled to genetic information contained within such records.

**ANSWER:**

Paragraph 34 is denied.

**COMPLAINT ¶35:**

On or around March 4, 2019, Mr. Branson received an offer of employment conditioned upon successfully completing a pre-employment physical. The physical was conducted at the Decatur Facility by Caterpillar's in-house medical staff.

**ANSWER:**

Defendant admits that Branson received an offer of employment conditioned upon

completing a post-offer medical examination on or around March 4, 2019, and that the examination

was conducted at the Decatur facility. Except as admitted, Paragraph 35 is denied.

**COMPLAINT ¶36:**

On or around March 4, 2019, Mr. Branson presented to the Decatur Facility for the physical. Mr. Branson met with an individual from Caterpillar's security staff and was directed to

Caterpillar's medical offices at the Decatur Facility. The medical offices were organized similar to an emergency room at a hospital and contained a central waiting room with a nurse's station as well as multiple examination rooms. Caterpillar's medical staff at the central nursing station requested medical information from Mr. Branson by requiring him to prepare handwritten responses to a "Post Offer Medical Questionnaire" form which, among other things, asked about his medical history, including hypertension, cancer, diabetes, and cardiac issues, among other ailments. After completing the paperwork, Mr. Branson was directed to meet with a member of Caterpillar's medical staff one-on-one in a physical examination room within the medical offices at the Decatur Facility.

**ANSWER:**

Defendant admits that Branson presented to the Decatur facility for a medical examination on or about March 4, 2019. Defendant further admits that as part of that examination, Branson handwrote responses to a "Post-Offer Medical Questionnaire." Except as admitted, Paragraph 36 is denied.

**COMPLAINT ¶37:**

After completing the physical portions of the examination, the medical staff verbally asked Mr. Branson questions about his medical conditions and history. When asking these questions, the medical staff had a file in front of them on their desk and made handwritten notes on the papers in the file as they asked these questions.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37. To the extent that an answer is required, Paragraph 37 is denied.

**COMPLAINT ¶38:**

After the physical was completed, Caterpillar's medical staff made an additional request for medical information from Mr. Branson by requesting Mr. Branson to provide copies of past medical records. The medical staff prepared an internal "Report of Medical Evaluation" form which confirmed that the staff member requested medical records from Mr. Branson. At the time that Caterpillar's medical staff requested such records, the Caterpillar employee never informed Mr. Branson that Caterpillar was not entitled to any genetic information within such records.

13

**ANSWER:**

Defendant admits that a request for additional medical records was made to Branson during

the same appointment during which Branson was examined. Except as admitted, Paragraph 38 is

denied.

**COMPLAINT ¶39:**

Mr. Branson was not directed by the medical staff, or anyone else from Caterpillar, either
verbally or in writing, to redact or refrain from providing genetic information on the medical
records required to be produced to Caterpillar.

**ANSWER:**

Paragraph 39 is denied.

**COMPLAINT ¶40:**

The request for the production of medical records was a condition of employment and/or
pre-employment application because Caterpillar required Mr. Branson to provide these records in
order to be hired.

**ANSWER:**

Paragraph 40 is denied.

**COMPLAINT ¶41:**

Mr. Branson was hired by Caterpillar for the Material Handler position after completing
all required steps in the hiring process. Mr. Branson's job duties involved strenuous physical labor.
His job duties included performing a variety of functions to check, receive, and verify accuracy of
Caterpillar's product, checking, storing, disbursing or filling orders for parts, materials, tools,
equipment and supplies, and working with various source documents to verify the accuracy and
conditions of parts. Mr. Branson was a member of The United Automobile, Aerospace and
Agricultural Implement Workers of America (the "UAW"), and his employment was subject to
the Caterpillar-UAW Central Labor Agreement.

**ANSWER:**

Defendant admits that Branson was hired as a material handler and that his job duties

included performing a variety of functions to check, receive, and verify accuracy of Defendant's

product checking, storing, disbursing or filling orders for parts, materials, tools, equipment and

supplies, and working with various source documents to verify the accuracy and conditions of

parts. Defendant further admits that Branson was a member of The United Auto, Aerospace and

Agricultural Implement Workers of America ("UAW") and subject to the applicable Caterpillar-

UAW collective bargaining agreement. Except as admitted, Paragraph 41 is denied.

**COMPLAINT ¶42:**

Also, on or around October 10, 2019, Mr. Branson underwent a physical examination by Caterpillar's medical staff as part of Caterpillar's workplace wellness program. During this workplace wellness program examination, Caterpillar's medical staff requested Mr. Branson to complete a "Caterpillar Health Screening History and Review" form. This form requested Mr. Branson's genetic information in the form of diseases which had manifested in his family members. Specifically, the form stated: "Please list any family history (parents or siblings) of coronary artery disease, diabetes, or cancer and age of onset[.]" In response, Mr. Branson disclosed genetic information, including conditions that his family members had been diagnosed with. Mr. Branson would not have volunteered his family members' medical histories if the medical staff had not asked Mr. Branson to do so.

**ANSWER:**

Defendant admits that, on or around October 10, 2019, Branson voluntarily underwent a

medical examination as part of Defendant's workplace wellness program, which is part of a benefit

plan governed by ERISA. Answering further, Defendant admits that, as part of the workplace

wellness program, Branson completed a form titled "Caterpillar Health Screening History and

Review." Answering further, the form speaks for itself and, accordingly, Defendant denies

Paragraph 42 to the extent that it is inconsistent with the form. Except as admitted or otherwise

answered, Paragraph 42 is denied.

**COMPLAINT ¶43:**

Mr. Branson did not provide prior, knowing, voluntary, and written authorization to Caterpillar for the use of his genetic information in furtherance of the workplace wellness program.

**ANSWER:**

Paragraph 43 is denied.

**COMPLAINT ¶44:**

Mr. Branson left Caterpillar's employment at the Decatur Facility in or around March 2023.

**ANSWER:**

Paragraph 44 is denied.

**COMPLAINT ¶45:**

In or around May 2023, Ms. Dotson submitted an application for the full-time, permanent position of Material Handler at the Decatur Facility.

**ANSWER:**

Defendant admits that in or around May 2023, Dotson submitted an application for the full-time position of Material Handler at Caterpillar's Decatur Facility. Except as admitted, Paragraph 45 is denied.

**COMPLAINT ¶46:**

On or around May 23, 2023, during the application and hiring process, Caterpillar directly or indirectly solicited, requested, or required Ms. Dotson to disclose her family medical history as a condition of employment.

**ANSWER:**

Paragraph 46 is denied.

**COMPLAINT ¶47:**

Specifically, on or around May 23, 2023, an individual who upon information and belief was an employee of Caterpillar directly or indirectly solicited, requested, or required Ms. Dotson to disclose her family medical history as a condition of employment by requiring Ms. Dotson to provide preexisting medical records from outside providers but failing to warn Ms. Dotson that Caterpillar was not entitled to genetic information contained within such records.

**ANSWER:**

Paragraph 47 is denied.

**COMPLAINT ¶48:**

On or around May 23, 2023, Ms. Dotson received an offer of employment conditioned upon successfully completing a pre-employment physical. The physical was conducted at the Decatur Facility by Caterpillar's in-house medical staff.

**ANSWER:**

Defendant admits that Dotson received an offer of employment conditioned upon completing a post-offer medical examination on or around May 23, 2023, at the Decatur facility. Except as admitted, Paragraph 48 is denied.

**COMPLAINT ¶49:**

On or around May 23, 2023, Ms. Dotson presented to the Decatur Facility for the physical. Ms. Dotson met with an individual from Caterpillar's security staff and was directed to Caterpillar's medical offices at the Decatur Facility. The medical offices were organized similar to an emergency room at a hospital and contained a central waiting room with a nurse's station as well as multiple examination rooms. Caterpillar's medical staff at the central nursing station requested medical information from Ms. Dotson by requiring her to prepare handwritten responses to a "Post Offer Medical Questionnaire" form which, among other things, asked about her medical history, including hypertension, cancer, diabetes, and cardiac issues, among other ailments. After completing the paperwork, Ms. Dotson was directed to meet with a member of Caterpillar's medical staff one-on-one in a physical examination room within the medical offices at the Decatur Facility.

**ANSWER:**

Defendant admits that Dotson presented to the Decatur Facility for a post-offer medical examination on or about May 23, 2023. Defendant further admits that as part of the examination, Ms. Dotson handwrote responses to a "Post-Offer Medical Questionnaire." Except as admitted, Paragraph 49 is denied.

**COMPLAINT ¶50:**

After completing the physical portions of the examination, the medical staff verbally asked Ms. Dotson questions about her medical conditions and history. When asking these questions, the medical staff had a file in front of them on their desk and made handwritten notes on the papers in the file as they asked these questions.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50. To the extent that an answer is required, Paragraph 50 is denied.

**COMPLAINT ¶51:**

After the physical was completed, Caterpillar's medical staff made an additional request for medical information from Ms. Dotson by requesting Ms. Dotson to provide copies of past medical records. The medical staff prepared an internal "Report of Medical Evaluation" form which confirmed that the staff member requested medical records from Ms. Dotson. At the time that Caterpillar's medical staff requested such medical records, the Caterpillar employee never informed Ms. Dotson that Caterpillar was not entitled to any genetic information within such records.

**ANSWER:**

Defendant admits that a request for additional medical records was made to Dotson during the same appointment at which Ms. Dotson was examined. Except as admitted, Paragraph 51 is denied.

**COMPLAINT ¶52:**

Ms. Dotson was not directed by the medical staff, or anyone else from Caterpillar, either verbally or in writing, to redact or refrain from providing genetic information on the medical records required to be produced to Caterpillar.

**ANSWER:**

Paragraph 52 is denied.

**COMPLAINT ¶53:**

This request for the production of medical records was a condition of employment and/or pre-employment application because Caterpillar required Ms. Dotson to provide these records in order to be hired.

**ANSWER:**

Paragraph 53 is denied.

**COMPLAINT ¶54:**

Ms. Dotson was hired by Caterpillar for the Material Handler position after completing all required steps in the hiring process. Ms. Dotson's job duties involved strenuous physical labor. Her job duties included performing a variety of functions to check, receive, and verify accuracy of Caterpillar's product, checking, storing, disbursing or filling orders for parts, materials, tools, equipment and supplies, and working with various source documents to verify the accuracy and conditions of parts.

**ANSWER:**

Defendant admits that Dotson was hired as a material handler and that her job duties included performing a variety of functions to check, receive, and verify accuracy of Defendant's product checking, storing, disbursing or filling orders for parts, materials, tools, equipment and supplies, and working with various source documents to verify the accuracy and conditions of parts. Except as admitted, Paragraph 54 is denied.

**COMPLAINT ¶55:**

Ms. Dotson left Caterpillar's employment at the Decatur Facility in or around June 2023.

**ANSWER:**

Paragraph 55 is admitted.

**COMPLAINT ¶56:**

In or around January 2023, Mr. Block submitted an application for the full-time, permanent position of Assembly and Test Specialist at the East Peoria Facility.

**ANSWER:**

Defendant admits that Block worked as an Assembly and Test Specialist at the East Peoria Facility. Except as admitted, Paragraph 56 is denied.

**COMPLAINT ¶57:**

On or around January 4, 2023, during the application and hiring process, Caterpillar directly or indirectly solicited, requested, or required Mr. Block to disclose his family medical history as a condition of employment.

**ANSWER:**

Paragraph 57 is denied.

**COMPLAINT ¶58:**

Specifically, on or around January 4, 2023, an individual who upon information and belief was an employee of Caterpillar indirectly or directly solicited, requested, or required Mr. Block to disclose his family medical history as a condition of employment by requiring Mr. Block to provide preexisting medical records from outside providers but failing to warn Mr. Block that Caterpillar was not entitled to genetic information contained within such records.

**ANSWER:**

Paragraph 58 is denied.

**COMPLAINT ¶59:**

On or around January 4, 2023, Mr. Block received an offer of employment conditioned upon successfully completing a pre-employment physical. The physical was conducted at the East Peoria Facility by Caterpillar's in-house medical staff.

**ANSWER:**

Defendant admits that on January 4, 2023, Block received an offer of employment

conditioned upon completing a post-offer medical examination, and that Block underwent the post-

offer examination at the East Peoria facility. Except as admitted, Paragraph 59 is denied.

**COMPLAINT ¶60:**

On or around January 4, 2023, Mr. Block presented to the East Peoria Facility for the physical. Caterpillar's medical staff requested medical information from Mr. Block by requiring him to prepare handwritten responses to a "Post Offer Medical Questionnaire" form which, among other things, asked about his medical history, including hypertension, cancer, diabetes, and cardiac issues, among other ailments. After completing the paperwork, Mr. Block was directed to meet with a member of Caterpillar's medical staff one-on-one in a physical examination room within the medical offices at the East Peoria Facility.

**ANSWER:**

Defendant admits that Block presented to the Decatur Facility for a post-offer medical

examination on or about January 4, 2023. Defendant further admits that as part of the l

examination, Ms. Dotson handwrote responses to a "Post-Offer Medical Questionnaire." Except

as admitted, Paragraph 60 is denied.

**COMPLAINT ¶61:**

After completing the physical portions of the examination, the medical staff verbally asked Mr. Block questions about his medical conditions and history. When asking these questions, the medical staff had a file in front of them on their desk and made handwritten notes on the papers in the file as they asked these questions.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 61. To the extent that an answer is required, Paragraph 61 is denied.

**COMPLAINT ¶62:**

After the physical was completed, Caterpillar's medical staff made an additional request
for medical information from Mr. Block by requesting Mr. Block to provide copies of past medical
records. At the time that Caterpillar's medical staff requested such records, the Caterpillar
employee never informed Mr. Block that Caterpillar was not entitled to any genetic information
within such records.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 62. To the extent that an answer is required, Paragraph 62 is denied.

**COMPLAINT ¶63:**

Mr. Block was not directed by the medical staff, or anyone else from Caterpillar, either
verbally or in writing, to redact or refrain from providing genetic information on the medical
records required to be produced to Caterpillar.

**ANSWER:**

Paragraph 63 is denied.

**COMPLAINT ¶64:**

The request for the production of medical records was a condition of employment and/or
pre-employment application because Caterpillar required Mr. Block to provide these records in
order to be hired.

**ANSWER:**

Paragraph 64 is denied.

**COMPLAINT ¶65:**

Also, on or around January 10, 2023, Mr. Block attended orientation for new hires at the
East Peoria Facility. During this orientation, Caterpillar's human resources staff requested Mr.
Block to complete a digital health history form. This form requested Mr. Branson's genetic
information in the form of inheritable diseases with a genetic predisposition that had manifested
in his family members. Specifically, the form requested Mr. Block to disclose whether his mother,
father, or grandparents had manifested inheritable conditions including cancer, diabetes, and

cardiac disease. In response, Mr. Block disclosed genetic information, including conditions that his family members had been diagnosed with. Mr. Block only provided his family members' medical histories because Caterpillar asked Mr. Branson to do so via the digital form.

**ANSWER:**

Paragraph 65 is denied.

**COMPLAINT ¶66:**

Mr. Block did not provide prior, knowing, voluntary, and written authorization to Caterpillar for the use of his genetic information in furtherance of the workplace wellness program.

**ANSWER:**

Paragraph 66 is denied.

**COMPLAINT ¶67:**

Mr. Block left Caterpillar's employment at the East Peoria Facility in or around May 2023.

**ANSWER:**

Defendant admits that Block left Caterpillar's employment at the East Peoria facility in May 2023. Except as admitted, Paragraph 67 is denied.

**COMPLAINT ¶68:**

In or around December 2020, Ms. Harden submitted an application for the full-time, permanent position of Machine Operator at the Pontiac Facility.

**ANSWER:**

Defendant admits that Ms. Harden works at the Pontiac Facility. Except as admitted, Paragraph 68 is denied.

**COMPLAINT ¶69:**

On or around January 4, 2020, during the application and hiring process, Caterpillar directly or indirectly solicited, requested, or required Ms. Harden to disclose her family medical history as a condition of employment.

**ANSWER:**

Paragraph 69 is denied.

**COMPLAINT ¶70:**

On or around January 4, 2020, Ms. Harden received an offer of employment conditioned upon successfully completing a pre-employment physical. Ms. Harden was instructed by a member of Caterpillar's human resources staff to attend a physical as a requirement of the hiring process. The physical was conducted at Streator OSF, located at 111 Spring Street, Streator, IL 61364, by a third-party medical provider. After completing the physical, Caterpillar's human resources staff once again called Ms. Harden and requested her to disclose whether her inheritable medical conditions with a genetic predisposition including hypertension, cancer, diabetes, and cardiac issues, among other conditions, had manifested in her family members, including her mother, father, and grandparents. In response, Ms. Harden disclosed her family medical history to the Caterpillar employee over the phone.

**ANSWER:**

Paragraph 70 is denied.

**COMPLAINT ¶71:**

Ms. Harden was not directed by the human resources staff, or anyone else from Caterpillar, either verbally or in writing, to redact or refrain from providing genetic information in response to the request.

**ANSWER:**

Paragraph 71 is denied.

**COMPLAINT ¶72:**

This request for the production of medical records was a condition of employment and/or pre-employment application because Caterpillar required Ms. Harden to answer the questions about her family medical history in order to be hired.

**ANSWER:**

Paragraph 72 is denied.

**COMPLAINT ¶73:**

Ms. Harden was hired by Caterpillar for the Machine Operator position after completing all required steps in the hiring process.

**ANSWER:**

Defendant admits that Harden was hired by Caterpillar. Except as admitted, Paragraph 73 is denied.

**COMPLAINT ¶74:**

After Ms. Harden obtained employment with Caterpillar, she was once again asked to provide her genetic information in the form of her family medical history during a work-related physical examination. The physical was conducted at the Pontiac Facility by Caterpillar's in-house medical staff. During this examination, Caterpillar's medical staff requested Ms. Harden disclose her genetic information in the form of inheritable conditions with genetic predispositions which had manifested in her family members. Specifically, Ms. Harden was given paperwork to complete that asked whether diabetes, cancer, or cardiac disease had manifested in her parents. In response, Ms. Harden disclosed genetic information, including conditions that her family members had been diagnosed with. Ms. Harden only volunteered her family members' medical histories because Caterpillar's medical staff asked her to do so.

**ANSWER:**

Paragraph 74 is denied.

**COMPLAINT ¶75:**

Ms. Harden did not provide prior, knowing, voluntary, and written authorization to Caterpillar for the use of her genetic information in furtherance of the workplace wellness program.

**ANSWER:**

Paragraph 75 is denied.

**COMPLAINT ¶76:**

Ms. Harden's examination did not relate to any ERISA plan and thus is not subject to ERISA preemption.

**ANSWER:**

Paragraph 76 is denied.

**COMPLAINT ¶77:**

Based on Plaintiffs' experiences, they believe that, during the hiring process, Caterpillar asks employees and/or prospective employees to provide medical records from outside providers to Caterpillar as a condition of employment and/or as part of its hiring process but fails to inform those individuals that genetic information should be redacted from any records provided.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 77. To the extent that an answer is required, Paragraph 77 is denied.

**COMPLAINT ¶78:**

Plaintiffs understand, on information and belief, that Caterpillar, or agents on its behalf, requests these records for the purpose of evaluating the risk that the individual may have inherited genetic conditions from family members, and then improperly uses that information when making its hiring decisions and staffing assignments.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 78. To the extent that an answer is required, Paragraph 78 is denied.

**COMPLAINT ¶79:**

On information and belief, Caterpillar also requests genetic information from employees participating in a workplace wellness program in the form of family medical histories as part of an effort to avoid risk and/or liability for workplace injuries and/or deaths caused by genetic conditions, including but not limited to hypertension, cancer, heart conditions, diabetes, and stroke, which Caterpillar believes could be inherited and that could be exacerbated by workplace conditions, especially if these conditions are high-stress and/or physically demanding. Caterpillar does not obtain written authorizations from such employees for the use of this genetic information.

**ANSWER:**

Paragraph 79 is denied.

**COMPLAINT ¶80:**

Caterpillar was or should have been aware of its obligations under GIPA. Nevertheless, Caterpillar intentionally and/or recklessly requested Plaintiffs' genetic information in the form of their family medical histories in violation of Illinois law.

**ANSWER:**

Paragraph 80 is denied.

**COMPLAINT ¶81:**

The reckless and/or intentional nature of Caterpillar's violations of GIPA is evidenced by the instruction page for Caterpillar's "Post Offer Medical Questionnaire" form given to prospective employees during their pre-employment physicals. The form instructs prospective employees to refrain from providing genetic information in such individuals' handwritten responses on the history questionnaire in this form. However, Caterpillar did not provide this warning when it made an additional request for medical information in the form of medical records from outside treating providers.

25

**ANSWER:**

Paragraph 81 is denied.

**COMPLAINT ¶82:**

Moreover, Caterpillar failed to obtain written authorization from employees participating in its workplace wellness program for the use of genetic information in furtherance of the program, despite the fact that it was aware that it was prohibited from requesting this information as evidenced by the "Post Offer Medical Questionnaire" instructions.

**ANSWER:**

Paragraph 82 is denied.

**COMPLAINT ¶83:**

As a result, Caterpillar's violations were willful because it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of GIPA.

**ANSWER:**

Paragraph 83 is denied.

**COMPLAINT ¶84:**

**Proposed Class Definition:** Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following class (the "Class") of similarly situated individuals, defined as follows:

**ANSWER:**

Defendant admits that Plaintiffs purport to bring this lawsuit on behalf of themselves and

a class of similarly situated individuals. Defendant denies that Plaintiffs can meet the requirements

to certify a class and that Plaintiffs or the putative class suffered any actual harm or are entitled to

any damages or other relief.

**COMPLAINT ¶85:**

The Class brought by Plaintiffs consists of:

All individuals in Illinois, within five years prior to the filing of this action, (1) who applied for employment with Defendant or were employed by Defendant, and (2) from whom Defendant, or an agent acting on behalf of Defendant, requested and/or obtained genetic information, including family medical history, in connection with

the person's application for employment or the person's employment with Defendant.

Excluded from the class are Defendant's officers and directors, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

**ANSWER:**

Defendant admits that Plaintiffs purport to bring this lawsuit on behalf of themselves and a class of similarly situated individuals. Defendant denies that Plaintiffs can meet the requirements to certify a class and that Plaintiffs or the putative class suffered any actual harm or are entitled to any damages or other relief.

**COMPLAINT ¶86:**

Plaintiffs reserve the right to modify this class definition as they obtain relevant information, including employment records, through discovery.

**ANSWER:**

Defendants deny that Plaintiffs reserve the right to modify the class definition, except to the extent modification is permitted by applicable laws or court order.

**COMPLAINT ¶87:**

**Numerosity:** The exact number of class members is unknown and is not available to Plaintiffs at this time, but Defendant employs over 1,000 people in Illinois, and it is believed that all or most of those individuals will fall within the proposed Class. Therefore, it is clear that individual joinder in this case is impracticable. Proposed Class members can easily be identified through Defendant's employment records.

**ANSWER:**

Paragraph 87 is denied.

**COMPLAINT ¶88:**

**Common Questions:** There are several questions of law and fact common to the claims of Plaintiffs and the proposed Class members, and those questions predominate over any questions that may affect individual proposed Class members. Common questions include, but are not limited to, the following:

a.    whether Defendant, or an agent acting on behalf of Defendant, solicited, requested, captured or collected genetic information of prospective employees;

b. whether Defendant, or an agent acting on behalf of Defendant, solicited, requested, captured or collected genetic information of existing employees;

c. whether Defendant requested genetic information by asking the Class members to disclose the manifestation of inheritable medical conditions with genetic predispositions in the individuals' family members;

d. whether Defendant's solicitation, request, collection, or use of genetic information constituted a violation of GIPA; and

e. whether Defendant's solicitation, request, collection, or use of genetic information constituted a violation of GIPA by failing to treat genetic information in a manner consistent with GINA.

**ANSWER:**

Paragraph 88, including each of its sub-sections, is denied.

**COMPLAINT ¶89:**

**Typicality:** Plaintiffs' claims are typical of the claims of the proposed Class members. Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

**ANSWER:**

Paragraph 89 is denied.

**COMPLAINT ¶90:**

**Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

**ANSWER:**

Paragraph 90 is denied.

**COMPLAINT ¶91:**

**Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Even if proposed Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits

of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

**ANSWER:**

Paragraph 91 is denied.

## COUNT I

**COMPLAINT ¶92:**

Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**ANSWER:**

Defendant incorporates the foregoing allegations as if fully set forth herein.

**COMPLAINT ¶93:**

Defendant is a corporation that directly or indirectly employs individuals within the State of Illinois and therefore meets the definition of an "employer" under 410 ILCS 513/10.

**ANSWER:**

Paragraph 93 contains conclusions of law for which no answer is required, and therefore is

denied.

**COMPLAINT ¶94:**

Family medical history includes the "manifestation or possible manifestation of a disease or disorder in a family member of [an] individual" and is incorporated into the definition of "genetic information" under 410 ILCS 513/10 and 45 C.F.R. § 160.103.

**ANSWER:**

Defendant admits that Paragraph 94 purports to quote portions of 410 ILCS 513/10 and 45

C.F.R. § 160.103. Answering further, the cited statutes speak for themselves and, accordingly,

Defendant denies Paragraph 94 to the extent that it is inconsistent with the cited statutes.

**COMPLAINT ¶95:**

Plaintiffs were individually asked to provide their family medical history as a condition of employment during the application and hiring process to work for Defendant in the form of prior medical records from outside treating physicians.

**ANSWER:**

Paragraph 95 is denied.

**COMPLAINT ¶96:**

Defendant, or an agent acting on its behalf, solicited, requested, or required Plaintiffs to disclose family medical history as a condition of employment during the application and hiring process to work for Defendant.

**ANSWER:**

Paragraph 96 is denied.

**COMPLAINT ¶97:**

Defendant directly solicited or requested Plaintiffs to disclose family medical histories after completing a pre-employment physical and interview as a condition of employment during the application and hiring process to work for Defendant.

**ANSWER:**

Paragraph 97 is denied.

**COMPLAINT ¶98:**

Defendant failed to direct Plaintiffs, either verbally or in writing, not to provide genetic information when requested to provide medical records from outside physicians.

**ANSWER:**

Paragraph 98 is denied.

**COMPLAINT ¶99:**

Plaintiffs and the proposed Class members were aggrieved by Defendant's violations of their statutorily protected rights to privacy in their genetic information, as set forth in GIPA, when Defendant directly or indirectly solicited or requested them to disclose their genetic information as a condition of ongoing employment or a condition of a pre-employment application.

**ANSWER:**

Paragraph 99 is denied.

**COMPLAINT ¶100:**

By indirectly or directly soliciting or requesting Plaintiffs and the proposed Class members to provide their genetic information as described herein, Defendant violated Plaintiffs' and the proposed Class members' rights to privacy in their genetic information as set forth in GIPA.

**ANSWER:**

Paragraph 100 is denied.

**COMPLAINT ¶101:**

Because Defendant knew, or reasonably should have known, that soliciting or requesting family medical history from an employee in Illinois violated GIPA, its actions in violating GIPA were willful.

**ANSWER:**

Paragraph 101 is denied.

**COMPLAINT ¶102:**

On behalf of themselves and the proposed Class members, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the proposed Class by requiring Defendant to comply with GIPA as described herein; (3) statutory damages of $15,000 or actual damages, whichever is greater, for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2) or, in the alternative, statutory damages of $2,500 or actual damages, whichever is greater, for each negligent violation of GIPA pursuant to 410 ILCS 513/40(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(3).

**ANSWER:**

Defendant denies that Plaintiffs have any viable claim against Defendant or that they, or

the putative class, are entitled to any relief, and deny that class certification is appropriate.

## COUNT II

**COMPLAINT ¶103:**

Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**ANSWER:**

Defendant incorporates the foregoing answers as if fully set forth herein.

**COMPLAINT ¶104:**

Defendant is a corporation that directly or indirectly employs individuals within the State of Illinois, and therefore, it met the definition of an "employer" under GIPA (410 ILCS 513/10) and GINA (42 U.S.C. § 2000ff(2)).

**ANSWER:**

Paragraph 104 contains conclusions of law for which no answer is required, and therefore

is denied.

**COMPLAINT ¶105:**

As an employer, Defendant is required by GIPA to "treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law, including but not limited to [GINA.]" 410 ILCS 513/25(a).

**ANSWER:**

Paragraph 105 contains conclusions of law for which no answer is required, and therefore

is denied.

**COMPLAINT ¶106:**

GINA provides that: "It shall be an unlawful employment practice for an employer to request, require, or purchase genetic information with respect to an employee or a family member of the employee[.]" 42 U.S.C. § 2000ff(2).

**ANSWER:**

Defendant admits that Paragraph 106 purports to paraphrase 42 U.S.C. § 2000ff(2).

Answering further, the cited statute speaks for itself and, accordingly, Defendant denies Paragraph

106 to the extent that it is inconsistent with the cited statute.

**COMPLAINT ¶107:**

GINA defines "genetic information" as including "the manifestation of a disease or disorder in family members" of an individual. 42 U.S.C. § 2000ff(4).

**ANSWER:**

Defendant admits that Paragraph 107 purports to paraphrase 42 U.S.C. § 2000ff(4). Answering further, the cited statute speaks for itself and, accordingly, Defendant denies Paragraph 107 to the extent that it is inconsistent with the cited statute.

**COMPLAINT ¶108:**

Plaintiffs and the Class were employees of and/or applied for employment with Defendant, and thus are "employees" as defined by GINA. 42 U.S.C. § 2000ff(2).

**ANSWER:**

Paragraph 108 contains conclusions of law for which no answer is required, and therefore is denied.

**COMPLAINT ¶109:**

During physicals for Plaintiffs and the Class, Defendant, or an agent acting on its behalf, requested and required Plaintiffs and the Class to provide their genetic information in the form of their family medical history in violation of GINA section 42 U.S.C. 200Off-1(b).

**ANSWER:**

Paragraph 109 is denied.

**COMPLAINT ¶110:**

Defendant's violations of GINA were not inadvertent because Defendant purposefully requested and required Plaintiffs and the Class members to disclose their genetic information for the purposes of evaluating whether they would manifest inheritable conditions with a genetic predisposition after they underwent the physical examinations. Defendant knew that its requests for genetic information at the physicals were likely to result in Plaintiffs and the Class members providing their genetic information in response to the requests.

**ANSWER:**

Paragraph 110 is denied.

**COMPLAINT ¶111:**

Defendant failed to direct Plaintiffs and the Class members, either verbally or in writing, not to provide genetic information when requested to provide their information regarding their family medical histories.

**ANSWER:**

Paragraph 111 is denied.

**COMPLAINT ¶112:**

Plaintiffs and the Class members did not provide prior, knowing, voluntary, and written authorization to Defendant for the use of their genetic information in furtherance of the wellness program.

**ANSWER:**

Paragraph 112 is denied.

**COMPLAINT ¶113:**

Defendant did not request and require Plaintiffs and the Class members to disclose their genetic information in order to comply with any requirements under the Illinois family and medical leave laws.

**ANSWER:**

Defendant admits that it did not request or require Plaintiffs and the Class members to disclose any genetic information, to comply with any requirements under the Illinois family and medical leave laws, or for any other reason. Except as admitted, Paragraph 113 is denied.

**COMPLAINT ¶114:**

Defendant never disclosed to Plaintiffs and the Class members in writing that the request for genetic information was part of a program for genetic monitoring of toxic substances in the workplace.

**ANSWER:**

Paragraph 114 is denied.

**COMPLAINT ¶115:**

Plaintiffs and the Class members were aggrieved by Defendant's violations of their statutorily protected rights in their genetic information, as set forth in GINA, when Defendant directly or indirectly requested and required them to disclose their genetic information.

**ANSWER:**

Paragraph 115 is denied.

**COMPLAINT ¶116:**

By indirectly or directly soliciting or requesting Plaintiffs and the proposed Class members to provide their genetic information as described herein, Defendant treated genetic information in a manner inconsistent with GINA 42 U.S.C. 2000ff-1(b). As such, Defendant's requests violated Plaintiffs' and the Class members' rights to privacy in their genetic information as set forth in Section 25(a) of GIPA.

**ANSWER:**

Paragraph 116 is denied.

**COMPLAINT ¶117:**

Because Defendant knew, or reasonably should have known, that soliciting or requesting family medical history and/or genetic services from an employee in Illinois violated GINA and/or GIPA, its actions in violating Section 25(a) were reckless and/or intentional.

**ANSWER:**

Paragraph 117 is denied.

**COMPLAINT ¶118:**

On behalf of themselves and the Class members, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the proposed Class by requiring Defendant to comply with GIPA and GINA as described herein; (3) statutory damages of $15,000 or actual damages, whichever is greater, for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2) or, in the alternative, statutory damages of $2,500 or actual damages, whichever is greater, for each negligent violation of GIPA pursuant to 410 ILCS 513/40(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(3).

**ANSWER:**

Defendant denies that Plaintiffs have any viable claim against Defendant or that they, or

the putative class, are entitled to any relief, and deny that class certification is appropriate.

## COUNT III

**COMPLAINT ¶119:**

Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**ANSWER:**

Defendant incorporates the foregoing answers as if fully set forth herein.

**COMPLAINT ¶120:**

GIPA provides: "Despite lawful acquisition of genetic testing or genetic information under subsections (e) through (i) of this Section, an employer, employment agency, labor organization, and licensing agency still may not use or disclose the genetic test or genetic information in violation of this Act." 410 ILCS 513/25(j).

**ANSWER:**

Defendant admits that Plaintiffs purport to paraphrase 410 ILCS 513/25(j). Answering

further, the cited statute speaks for itself and, accordingly, Defendant denies Paragraph 120 to the

extent that it is inconsistent with the cited statute.

**COMPLAINT ¶121:**

Defendant is a corporation that directly or indirectly employs individuals within the State of Illinois and therefore meets the definition of an "employer" under 410 ILCS 513/10.

**ANSWER:**

Paragraph 121 contains conclusions of law for which no answer is required, and therefore

is denied.

**COMPLAINT ¶122:**

Family medical history includes the "manifestation or possible manifestation of a disease or disorder in a family member of [an] individual" and is incorporated into the definition of "genetic information" under 410 ILCS 513/10 and 45 C.F.R. § 160.103.

**ANSWER:**

Defendant admits that Paragraph 122 purports to quote portions of 410 ILCS 513/10 and

45 C.F.R. § 160.103. Answering further, the cited statute and regulation speak for themselves and,

accordingly, Defendant denies Paragraph 122 to the extent that it is inconsistent with the cited

statutes.

**COMPLAINT ¶123:**

Disclosure means "the release, transfer, provision of access to, or divulging in any manner of information outside the entity holding the information" under 410 ILCS 513/10 and 45 C.F.R. § 160.103.

**ANSWER:**

Defendant admits that Paragraph 123 purports to quote portions of 410 ILCS 513/10 and 45 C.F.R. § 160.103. Answering further, the cited statute and regulation speak for themselves and, accordingly, Defendant denies Paragraph 123 to the extent that it is inconsistent with the cited statutes.

**COMPLAINT ¶124:**

Use means "with respect to individually identifiable health information, the sharing, employment, application, utilization, examination, or analysis of such information within an entity that maintains such information" under 410 ILCS 513/10 and 45 C.F.R. § 160.103.

**ANSWER:**

Defendant admits that Paragraph 124 purports to quote portions of 410 ILCS 513/10 and 45 C.F.R. § 160.103. Answering further, the cited statute and regulation speak for themselves and, accordingly, Defendant denies Paragraph 124 to the extent that it is inconsistent with the cited statutes.

**COMPLAINT ¶125:**

Plaintiff Branson was asked to provide his family medical history by Defendant and provided his genetic information to Defendant.

**ANSWER:**

Paragraph 125 is denied.

**COMPLAINT ¶126:**

Defendant, or an agent acting on its behalf, disclosed and/or used Mr. Branson's genetic information by sharing, releasing, transferring, providing access to, and/or divulging Mr. Branson's family medical history with Cority, a third-party outside entity.

**ANSWER:**

Paragraph 126 is denied.

**COMPLAINT ¶127:**

In response to a request for Mr. Branson's medical records, Defendant provided documentation establishing that Defendant requested and received Mr. Branson's medical files from Cority. See Exhibit A (providing that Defendant "Recd cority file" in response to the request).

**ANSWER:**

Paragraph 127 is denied.

**COMPLAINT ¶128:**

Cority is an entity outside of Caterpillar that provides occupational health software to employers. Cority's software allows employers such as Caterpillar to "gain one-stop access to an employee's complete medical history" and provides "business intelligence and analytics tools available to build an accurate picture of health & wellness in your business." [Footnote omitted]

**ANSWER:**

Defendant admits that Cority is an entity outside of Caterpillar and that it provides

occupational health software to employers. Except as admitted, Paragraph 128 is denied.

**COMPLAINT ¶129:**

Caterpillar utilizes Cority software to track its employees' health. [Footnote omitted] By sharing the medical files of its employees, including Mr. Branson, Caterpillar shared, released, transferred, provided access to, and/or divulged such individuals' genetic information with Cority. As such, Caterpillar used and/or disclosed the genetic information of Mr. Branson and the proposed Class members in violation of 410 ILCS 513/25(j).

**ANSWER:**

Paragraph 129 is denied.

**COMPLAINT ¶130:**

Caterpillar did not obtain written consent or authorization from Mr. Branson or the proposed Class members for disclosure of their genetic information to outside third-parties, such as Cority. Cority maintains audit logs and records each time medical records are viewed, and thereby will demonstrate that unauthorized individuals accessed the genetic information of Mr. Branson and the proposed Class members. [Footnote omitted]

**ANSWER:**

Paragraph 130 is denied.

**COMPLAINT ¶131:**

Mr. Branson and the proposed Class members were aggrieved by Defendant's violations of their statutorily protected rights to privacy in their genetic information, as set forth in GIPA, when Defendant used and/or disclosed their genetic information by releasing medical records containing their genetic information with Cority while failing to obtain written authorization to do so.

**ANSWER:**

Paragraph 131 is denied.

**COMPLAINT ¶132:**

Because Defendant knew, or reasonably should have known, that providing family medical history obtained from Illinois employees and then disclosing that information to a third-party, without written authorization, violated GIPA, its actions in violating GIPA were willful.

**ANSWER:**

Paragraph 132 is denied.

**COMPLAINT ¶133:**

On behalf of Mr. Branson and the proposed Class members, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the proposed Class by requiring Defendant to comply with GIPA as described herein; (3) statutory damages of $15,000 or actual damages, whichever is greater, for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2) or, in the alternative, statutory damages of $2,500 or actual damages, whichever is greater, for each negligent violation of GIPA pursuant to 410 ILCS 513/40(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 410 ILCS 513/40(3).

**ANSWER:**

Defendant denies that Plaintiff has any viable claim against Defendant or that he, or the

putative class, are entitled to any relief, and deny that class certification is appropriate.

**PLAINTIFFS' PRAYER FOR RELIEF:**

Wherefore, Plaintiffs, individually and on behalf of the proposed Class of similarly situated individuals, pray for an Order as follows:

A.   Finding this action satisfies the prerequisites for maintenance as a class action set forth in Federal Rule of Civil Procedure 23 and certifying the proposed Class as defined herein;

B.        Designating and appointing Plaintiffs as representatives of the proposed Class and Plaintiffs' undersigned counsel as Class Counsel;

C.        Declaring that Defendant's actions, as set forth above, violate GIPA;

D.        Awarding Plaintiffs and the proposed Class members statutory damages of $15,000 or actual damages, whichever is greater, for each intentional and/or reckless violation of GIPA pursuant to 410 ILCS 513/40(2), or statutory damages of $2,500 or actual damages, whichever is greater, for each negligent violation of GIPA pursuant to 410 ILCS 513/40(1);

E.        Declaring that Defendant's actions, as set forth above, were intentional or reckless and/or declaring that Defendant's actions, as set forth above, were negligent;

F.        Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the proposed Class, including an Order prohibiting Defendant from soliciting, requesting and/or requiring genetic information as a condition of employment or in a pre-employment application pursuant to GIPA;

G.        Awarding Plaintiffs and the proposed Class members reasonable attorneys' fees and costs incurred in this litigation pursuant to 410 ILCS 513/40(3);

H.        Awarding Plaintiffs and the proposed Class pre- and post-judgment interest, to the extent allowable; and

I.        Granting all such other and further relief as the Court deems just and appropriate.

**ANSWER:**

Defendant denies that Plaintiffs have any viable claims against Defendant or that they, or the putative class, are entitled to any relief, and deny that class certification is appropriate.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby request a jury trial on all issues so triable.

**ANSWER:**

Defendant admits that Plaintiffs demands a jury trial, but denies that their claims are appropriate for determination by a jury.

### AFFIRMATIVE AND OTHER DEFENSES

Defendant asserts the following defenses without assuming any burdens of production or proof that, pursuant to law, belong to Plaintiffs. Defendant reserves the right to amend its answer

and to assert any additional affirmative defenses or other defenses as may become available or apparent during the court of this litigation.

1.      Plaintiffs Branson and Harden filed this complaint after the applicable statute of limitations expired, and as such their action is time barred. Specifically, Plaintiffs Branson and Harden contend to have suffered the alleged injuries more than four years prior to commencing this action (or Harden joining this action), and there was no valid reasons for them to delay because they knew or should have known about their purported injuries at the time they occurred.

2.      Any recovery on Plaintiffs' SAC, or any purported cause of action alleged therein, is barred in that Plaintiffs are estopped by their conduct to claim any right to damages or relief against Defendant. Specifically, Plaintiffs Branson and Harden contend to have suffered the alleged injuries nearly four years prior commencing this action, and there was no valid reason for their delay. Plaintiffs Branson and Harden's delay in commencing this litigation have significantly prejudiced Defendant's ability to investigate his claims and defend itself in this action, and Plaintiffs Branson and Harden should be estopped from pursuing this action or receiving any recovery as a consequence of their prejudicial delays.

3.      Any recovery on Plaintiffs' SAC, or any purported cause of action alleged therein, is barred by the doctrine of waiver. Specifically, Plaintiffs Branson and Harden contend to have suffered the alleged injuries four years prior to commencing this action, and there was no valid reason for his delay. Plaintiffs Branson and Harden's delays in commencing this litigation have significantly prejudiced Defendant's ability to investigate Plaintiffs' claims and defend itself in this action. Plaintiffs Branson and Harden should be deemed to have waived his claims as a consequence of their prejudicial delay.

4.      The claims are barred in whole or in part by Defendant's good faith, and its absence of negligent, reckless, or intentional conduct. To the extent that GIPA applies to Defendant's conduct as alleged in the SAC, Defendant is not liable because it relied in good faith upon a reasonable interpretation of GIPA's statutory language.

5.      Plaintiffs' SAC fails to state a claim upon which relief may be granted.

6.      Defendant's alleged actions involving Plaintiffs and the putative class were solely based on legitimate non-discriminatory reasons.

7.      To the extent that Plaintiffs and the putative class allege that any of Defendant's employees, agents, or vendors acted in an unlawful manner, such conduct, if it occurred, was outside the scope of that individual's employment or contractual relationship with Defendant and was undertaken without the knowledge or consent of Defendant. Thus, Defendant is not liable for any such conduct, if it occurred.

8.      Plaintiffs and the putative class cannot sustain their claims because Defendant exercised reasonable care to create, implement, and maintain policies and practices to facilitate full compliance with applicable federal, state, and local laws.

9.      The claims asserted by Plaintiffs and the putative class are, in whole or in part, barred by the applicable doctrines of waiver, laches, estoppel, and unclean hands.

10.     Claims for damages asserted in the SAC are barred in whole or in part by the Due Process Clause of the United States Constitution. Plaintiffs and the putative class members have not suffered any harm as a result of the conduct alleged. The statutory damages potentially available under GIPA are grossly excessive and disproportionate in light of the absence of any injury or harm to Plaintiffs and the alleged putative class members, and therefore any award of statutory damages would violate Defendant's due process rights.

11. To the extent Plaintiffs have stated a claim on which relief may be granted, Plaintiffs have proximately caused, contributed to, or failed to mitigate any and all losses that they claim.

12. The claims in the SAC, or a portion of them, if any, are barred because any damages incurred were caused by intervening or superseding causes, and not as a result of any action or omission of Defendant. Such intervening or superseding causes include but are not limited to any actions or omissions by third parties.

13. Plaintiffs' prayer for relief is barred in whole or in part because the recovery of statutory damages would not be a reasonable estimate of actual damages. Instead, such recovery amounts to a disparate penalty, akin to punitive damages for strict liability, and should be deemed unenforceable.

14. The claims in the SAC are barred, in whole or in part, to the extent they are or become moot as to Plaintiffs and some or all purported class members.

15. The claims in the SAC are barred in whole or in part because any alleged direct or indirect request for genetic information falls within GIPA's inadvertence exception. 410 ILCS 513/25(g). Specifically, Plaintiffs were advised not to provide any genetic information to Caterpillar during their medical examinations.

16. The claims in the SAC are barred in whole or in part because any alleged, inadvertently requested or received genetic information was treated "in a manner that is consistent with the requirements of federal law, including but not limited to the Genetic Information Nondiscrimination Act of 2008, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act of 1993, the Occupational Safety and Health Act

of 1970, the Federal Mine Safety and Health Act of 1977, or the Atomic Energy Act of 1954." 410 ILCS 513/25(a).

17.     The SAC's claims for damages (and certain categories of damages, and the amounts thereof recoverable) are limited by the applicable limits on statutory damages, including but not limited to those limits set forth in GIPA.

18.     Plaintiffs and the alleged putative class may be barred, in whole or in part, from recovery of damages as alleged and prayed for in the SAC by the after-acquired evidence doctrine.

19.     Plaintiffs are not entitled to proceed on behalf of the putative class, nor are they entitled to certification of this action as a class action because they cannot satisfy the requirements of Federal Rule of Civil Procedure 23.

20.     Injunctive relief is barred because Plaintiffs and the members of the alleged putative class have not suffered irreparable harm and there is no real or immediate threat of injury.

21.     Plaintiffs' claims are barred, in whole or in part, because GIPA's statutory definitions of "genetic testing" and "genetic information" are vague in violation of the United States and Illinois Constitutions.

22.     Plaintiff Branson's claims are barred, in whole or in part, to the extent that Cority is a business associate, as defined under Section 31.3 of GIPA.

\*          \*          \*

WHEREFORE, Defendant Caterpillar Inc. hereby prays for judgment as follows:

1.     That Plaintiffs take nothing by reason of their Second Amended Class Action Complaint and that judgment be rendered in favor of Defendant dismissing Plaintiffs' claims with prejudice;

2.      That Defendant be awarded its costs of suit injured herein, including reasonable attorneys' fees; and

3.      For such other relief that the Court deems just and proper.

DATED: February 5, 2025                    Respectfully submitted,

                                           CATERPILLAR INC.


                                           By: */s/ Paul Yovanic, Jr.*
                                                One of Its Attorneys

Ada Dolph
adolph@seyfarth.com
Paul J. Yovanic Jr.
pyovanic@seyfarth.com
Ala D. Salameh
asalameh@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:   (312) 460-5000
Facsimile:    (312) 460-7000

315863651v.2